IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DILLON GAGE INCORPORATED OF DALLAS | § § § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:18-CV-1555-B |
| | § | |
| CERTAIN UNDERWRITERS AT LLOYD'S, SUBSCRIBING TO POLICY NO. EE1701590 | § § § | |
| Defendant. | § | |

---

**APPENDIX FOR DEFENDANT'S BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,

HOLMAN FENWICK WILLAN

*/s/ Gerard J. Kimmitt, II*
Gerard J. Kimmitt, II
Texas Bar No.: 11427500; Federal ID No.: 08454
Susan H. Swanson
Texas Bar No.: 24038955; Federal ID No.:37969
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470
jerry.kimmitt@hfw.com
susan.swanson@hfw.com
**ATTORNEY FOR DEFENDANT, CERTAIN UNDERWRITERS AT LLOYD'S, SUBSCRIBING TO POLICY NO. EE1701590**

1

RUSSELL & WRIGHT, PLLC

/s/ Michael C. Wright
Michael C. Wright
Texas Bar No. 22049807
mwright@rwtrial.com
RUSSELL & WRIGHT, PLLC
15770 Dallas Parkway, Suite 1050
Dallas, Texas 75248
Telephone: (972) 267-8400
Facsimile: (972) 267-8401
**LOCAL COUNSEL FOR DEFENDANT,
CERTAIN UNDERWRITERS AT LLOYD'S,
SUBSCRIBING TO POLICY NO. EE1701590**

## CERTIFICATE OF SERVICE

A true and correct copy of this document was served via the Court's EC/MCF electronic filing services on the following counsel on this 23rd day of April 2019:

/s/ Gerard J. Kimmitt, II
Gerard J. Kimmitt, II

2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DILLON GAGE INCORPORATED OF** | § | |
| **DALLAS** | § | |
| Plaintiff, | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:18-CV-1555-B** |
| | § | |
| **CERTAIN UNDERWRITERS AT** | § | |
| **LLOYD'S, SUBSCRIBING TO POLICY** | § | |
| **NO. EE1701590** | § | |
| Defendant. | § | |

---

### AFFIDAVIT OF GERARD J. KIMMITT, II

---

| | |
|---|---|
| STATE OF TEXAS | § |
| HARRIS COUNTY | § |

Before me, the undersigned notary, on this day personally appeared Gerard J. Kimmitt, II, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

1.      "My name is Gerard J. Kimmitt, II. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.      I am a licensed attorney in the State of Texas and counsel of record for Defendant Certain Underwriters at Lloyd's, Subscribing to Policy No. EE1701590 ("Underwriters" or "Defendant"). As such, I have personal knowledge of this lawsuit, including the documents produced in this lawsuit.

3.      Attached to Defendant's Motion for Summary Judgment are the following exhibits:

1

A.    A true and correct copy of the Affidavit of Gerard J. Kimmitt, II;

B.    A true and correct copy of the Plaintiffs' First Amended Complaint;

C.    A true and correct copy of Defendant's First Amended Answer;

D.    A true and correct copy of JLT Policy No. EE1701590 (UW000092-000133);

E.    A true and correct copy of FRCP 56(c)(1)(A) Stipulations;

F.    A true and correct copy of an email regarding new customer online application submission to Dillon Gage with name listed as Kenneth Bramlett including identifying information, dated January 28, 2018 (DILLON GAGE 000335-000337);

G.    A true and correct copy of PNC Bank check #121 in the amount of $549,000.00 from the joint account of Kenneth and Laurie Bramlett, dated January 29, 2018 (DILLON GAGE 000317-000318);

H.    A true and correct copy of a deposit ticket for check #121 with attached copy of check deposited by Dillon Gage with BBVA Compass, dated January 30, 2018 (CB000001-000002);

I.    A true and correct copy of a Sales Invoice from Dillon Gage to Kenneth Bramlett in the amount of $549,000.00, dated February 12, 2018 (DILLON GAGE 000297);

J.    A true and correct copy of photos of packaging, and summaries of containers, box types, and closing date and time for three packages shipped to Kenneth Bramlett via UPS (DILLON GAGE 000302-000308);

K.    A true and correct copy of page 12 of the Premier Report dated March 21, 2018 setting forth the tracking information for the three (3) packages shipped on February 12, 2018 (DILLON GAGE 000400);

L.    A true and correct copy of a UPS Tracking Summary for three (3) packages shipped on February 12, 2018 (DILLON GAGE 000338-000340);

M.    A true and correct copy of an email from Brian Carnahan to Kenneth Bramlett providing three tracking numbers (DILLON GAGE 000358);

N.    A true and correct copy of records from United Parcel Service, Inc. regarding Dillon Gage Incorporated of Dallas (UPS 47-53);

2

O.     A true and correct copy of an email from Kenneth Bramlett to Brian Carnahan placing a second order with Dillon Gage, dated February 13, 2018 (DILLON GAGE 000374);

P.     A true and correct copy of PNC Bank check # 647, dated February 13, 2018, to Dillon Gage from the joint account of Kenneth and Laurie Bramlett, in the amount of $655,000.00 (DILLON GAGE 000313-000314);

Q.     A true and correct copy of a BBVA Compass deposit slip for PNC Bank check # 647, dated February 13, 2018 (CB000015-000016);

R.     A true and correct copy of a BBVA Compass draft with details of check to Dillon Gage in the amount of $655,000 from February 13, 2018 through March 8, 2018 (CB000152-000153);

S.     A true and correct copy of a Sales Invoice from Dillon Gage to Kenneth Bramlett in the amount of $654,996.50, dated February 22, 2018 (DILLON GAGE 000298);

T.     A true and correct copy of page 11 of the Premier Report dated March 21, 2018 setting forth the UPS tracking information for the five (5) packages shipped on February 22, 2018 (DILLON GAGE 000417);

U.     A true and correct copy of a UPS Tracking Summary for five (5) packages shipped on February 22, 2018 (DILLON GAGE 000320-000333);

V.     A true and correct copy of an affidavit of "Forged/Unauthorized Maker Signature" signed by Laurie Bramlett and related to Check #647, dated February 26, 2018 (DILLON GAGE 000310);

W.    A true and correct copy of a large dollar notification from Compass's vendor indicating that Check #647 was unauthorized (forged counterfeit) and that PNC Bank would be sending it back, dated March 1, 2018 (CB000024-000027);

X.     A true and correct copy of a large dollar notification from BBVA's vendor indicating that Check #121 was unauthorized (forged counterfeit), and that an additional item issued by the same customer to Dillon Gage would be returned to Compass for the same reasons, dated March 8, 2018 (CB000004-000007);

Y.     A true and correct copy of an affidavit of "Forged/Unauthorized Maker Signature" signed by Laurie Bramlett and related to Check #121, dated March 14, 2018 (DILLON GAGE 000309);

3

Z.     A true and correct copy of correspondence from Hedrick Kring PLLC to JLT Specialty Limited regarding "Bramlett packages claim", dated April 16, 2018 (UW000217-000218);

AA.    A true and correct copy of correspondence from ARK to JLT Specialty Ltd regarding "Theft of Gold Coins", dated April 26, 2018 (UW000134-000136);

BB.    A true and correct copy of pages 32-36 of Laurie Bramlett's Deposition Transcript; and

CC.    A true and correct copy of pages 41-46 of Kristopher Vecchio's Deposition Transcript.


FURTHER AFFIANT SAYETH NOT.


Gerard J. Kimmitt, II


SWORN TO and SUBSCRIBED before me by Gerard J. Kimmitt, II on April 23, 2019.


Notary Public in and for
The State of Texas

ANGELA FLORES RODRIGUEZ
My Notary ID # 124608512
Expires April 2, 2020

4

HOUIMAN\473575-1

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DILLON GAGE INCORPORATED OF DALLAS | § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO. 3:18-CV-01555 |
| CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NO. EE1701590 and UPS CAPITAL INSURANCE AGENCY, INC. | § § § § § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S [PROPOSED] FIRST AMENDED COMPLAINT

Plaintiff Dillon Gage Incorporated of Dallas ("Dillon Gage" or "Plaintiff") files its First Amended Complaint ("First Amended Complaint") against Defendants Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590. Through this First Amended Complaint, Dillon Gage adds UPS Capital Insurance Agency, Inc. as a party Defendant.

In support of this First Amended Complaint, Dillon Gage states as follows:

### I.
### NATURE OF THE ACTION

1.      This is an action brought by Dillon Gage against Defendants Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 ("Lloyd's Defendants" or "Underwriters") for their wrongful refusal to pay two claims pursuant to insurance policy number EE1701590 (the "Lloyd's Insurance Policy"), and UPS Capital Insurance Agency, Inc. ("UPS Insurance") (collectively with Lloyd's Defendants, "Defendants"), for their wrongful refusal to pay two claims pursuant to Flexible Parcel Insurance policy number 15914024-10625-4 (the "UPS Policy") (collectively with the Lloyd's Insurance Policy, the "Insurance Policies"), all relating to three

# EXHIBIT A

packages of precious metal coins stolen on February 13, 2018 and five packages of precious metal coins stolen on February 22, 2018.

## II.
## THE PARTIES

2.       Plaintiff Dillon Gage Incorporated of Dallas is a Texas corporation with its principal place of business in Dallas County, Texas.

3.       Defendants Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 is a foreign citizen, located in London, England, having its principal place of business in the United Kingdom. Having already appeared in the above-captioned lawsuit, Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 may be served with Plaintiff's First Amended Complaint through its counsel of record Gerard J. Kimmitt, II, located at 5151 San Felipe, Suite 400, Houston, Texas 77056.   Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 is defined to mean: (1) Ascot Syndicate 1414 ASC; (2) Chubb Syndicate 2488 CGM; (3) Axis Syndicate 1686 AXS; (4) Axis Syndicate 1686 AXS; (5) Arch Syndicate 2012 AAL; (6) Ark Syndicate 4020 ARK; (7) ANV Syndicate 1861 ANV; (8) Atrium Syndicate 609 AUW; (9) Endurance Syndicate 5151 ENH; (10) Apollo Syndicate 1969 APL; (11) Brit Syndicate 298 BRT; (12) MS Amlin Syndicate 2001 AML; (13) Aspen Syndicate 4711 ASP; (14) Liberty Syndicate 4472 LIB; (15) Novae Syndicate 2007 NVA; (16) Markel Syndicate 3000 MKL; (17) Allied World Syndicate 2232 AWH; and (18) Chaucer Syndicate 1084 CSL.

4.       Defendant UPS Capital Insurance Agency, Inc. is a Delaware corporation doing business in Texas whose principal place of business is, upon information and belief, located in Georgia.   Defendant UPS Capital Insurance Agency, Inc. may be served with a citation and Plaintiff's First Amended Complaint via its registered agent for service of process, Corporation

Service Company *d/b/a* CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

### III.
#### JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that:

> (a) Dillon Gage Incorporated of Dallas is a Texas corporation with its principal place of business in Dallas County, Texas;

> (b) Defendants Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 are foreign citizens, located in London, England, having their principal place of business in the United Kingdom;

> (c) UPS Capital Insurance Agency, Inc. is incorporated in Delaware and, upon information and belief, has its principal place of business in Georgia; and

> (d) The amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.00.

6.      This Court has personal jurisdiction over Defendants pursuant to the long-arm statute of Texas and TEX. CIV. PRAC. & REM. CODE § 17.042 and TEX. INS. CODE § 21.42 because, upon information and belief, Defendants:

> (a) are licensed and authorized to do business in Texas;

> (b) are eligible surplus lines insurers in Texas; and/or

> (c) have, within the relevant time period, transacted business in Texas.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) in that this Court occupies the district and division in which Plaintiff's Original Petition was filed.

**PLAINTIFF'S [PROPOSED] FIRST AMENDED COMPLAINT**                    **PAGE 3**

# IV.
## FACTS APPLICABLE TO ALL CLAIMS

8.      Plaintiff is a wholesaler of bullion coins and precious metals products.  Plaintiff purchased the Lloyd's Insurance Policy from JLT Specialty Limited for claims made during the period of May 12, 2017 to May 12, 2018 to cover all risks for Plaintiff's "coins, numismatics, paper money and material of like kind and nature including but not limited to rare coins, bullion coins and the items of a numismatic interest, precious or semi-precious metals . . ." (collectively, "Plaintiff's Coins").  The Lloyd's Insurance Policy covered all risks to Plaintiff's Coins "[w]hilst being shipped via . . . means detailed below . . . within the normal course of transit.  Limits stated are 'any one package' and include conveyances to and from insured shipping services."  United Parcel Service is a covered shipping service with $200,000.00 in coverage per package subject to a deductible of $10,000.00 per loss.

9.      On February 12, 2018, Dillon Gage shipped three packages containing 400 American Gold Eagle coins, two $5.00 gold Liberty coins, and one $10.00 gold Liberty coin collectively worth $549,000.00 to Kenneth Bramlett in Mountain Brook, Alabama via UPS next day air.  After the packages had been picked up by UPS, an unknown person logged into UPS' MyChoice delivery system and rerouted the packages to a UPS location in Birmingham, Alabama.  On February 13, 2018, three minutes after the three packages were delivered to the UPS facility in Birmingham, Alabama, an unknown criminal entered the facility and took the packages.  UPS did not request a method of identification from the criminal, but he was described and captured on a video recording device as being of a different race from Kenneth Bramlett.

10.      Without knowledge that an individual other than Kenneth Bramlett took the packages shipped on February 12, 2018, on February 22, 2018, Dillon Gage shipped five packages containing in the aggregate 475 1 oz. American Gold Eagle coins collectively worth $655,000.00

to Kenneth Bramlett in Mountain Brook, Alabama. As before, after the packages had been picked up by UPS, an unknown person logged into UPS' MyChoice delivery system and rerouted the packages to a Birmingham, Alabama UPS store, where they were stolen by an unknown criminal.

11.     All the packages were covered by the UPS Policy for physical loss of the packages from any cause during the course of their transportation by UPS. Dillon Gage made claims against UPS Insurance on the UPS Policy for the theft of the packages (the "UPS Claims"), which UPS Insurance wrongfully denied by a letter dated May 30, 2018.

12.     On March 12, 2018, Dillon Gage filed two claims with the Lloyd's Defendants (the "Lloyd's Claims") (collectively with UPS Claims, the "Claims"). By a letter dated April 26, 2018, Lloyd's Defendants have refused to pay Dillon Gage's Claims.

## V.
### CAUSES OF ACTION

**Count 1:**     **Breach of Contract**

13.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 12 above, as if the same were set forth in full herein.

14.     The Lloyds' Insurance Policy and UPS Insurance Policy are valid and binding contracts between the respective parties.

15.     Plaintiff suffered two losses of Plaintiff's Coins in transit at UPS. The eight packages were stolen or lost, which are covered perils under the Insurance Policies. Defendants' failure and refusal, as described above, to pay the adequate compensation as they are obligated to do under the terms of the Insurance Policies in question and under the laws of the State of Texas constitutes a breach of Defendants' contract with Plaintiff. As a result of this breach of contract, Plaintiff has suffered the damages that are described in this First Amended Complaint.

**Count 2:**     **Texas Insurance Code Violations**

16.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 15 above, as if the same were set forth in full herein.

17.     Defendants' conduct in investigating, processing, delaying, and/or refusing payment of the Claims constitutes multiple violations of the Texas Insurance Code, and constitutes unfair or deceptive acts or practices in the business of insurance prohibited by Chapter 541, subchapter B of the Texas Insurance Code; and rules and regulations addressed by the Texas Board of Insurance, and defined in section 17.46 of the Texas Business and Commerce Code as follows: (i) failing, under section 541.060(a)(3), to promptly provide Plaintiff a reasonable explanation of the basis for Defendants' denial of the Claims; (ii) refusing, under section 541.060(a)(7), to pay Plaintiff's Claims without conducting a reasonable investigation; (iii) making misrepresentations to Plaintiff, under section 541.060(a)(l) of the Texas Insurance Code, regarding material facts and Insurance Policy provisions relating to the coverage at issue; and, (iv) any and all other acts or conduct which may be uncovered during the discovery phase and/or trial of this lawsuit.

18.     Defendants also committed prohibited practices under section 541.061 of the Texas Insurance Code, including Defendants' material misrepresentations of law and untrue statements of material fact as to coverage under the Insurance Policy.

**Count 3:**     **Prompt Payment Violation**

19.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 18 above, as if the same were set forth in full herein.

20.     Plaintiff promptly and timely notified Defendants of the Claims.

21.     Plaintiff promptly and timely provided documentation requested by Defendants related to the Claims.

22.     Defendants failed to timely pay the Claims.

23.     Accordingly, Defendants are liable to pay Plaintiff's Claims with interest at eighteen percent (18%) per annum, together with reasonable attorneys' fees and costs, pursuant to Chapter 542 of the Texas Insurance Code.

**Count 4:**     **<u>Attorneys' Fees</u>**

24.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 23 above, as if the same were set forth in full herein.

25.     Plaintiff was forced to retain the undersigned attorneys to pursue these causes of action. Therefore, under Texas Business and Commerce Code section 17.50(d), chapters 541 and 542 of the Texas Insurance Code, and Texas Civil Practices and Remedies Code section 38.001, all of Plaintiff's reasonable and necessary attorneys' fees may be recovered.

**VI.**
**<u>CONDITIONS PRECEDENT</u>**

26.     All conditions precedent necessary have occurred or have been performed.

**VII.**
**<u>REQUEST FOR RELIEF</u>**

Considering these premises, Plaintiff respectfully requests that this Court, upon final disposition of this matter, enter judgment against Defendants for the following relief:

(A)     Compensatory damages in an amount to be determined at trial, but not less than $1,194,000.00;

(B)     Pre-judgment and post-judgment interest on all sums at the maximum rate allowed by law;

(C)     Plaintiff's reasonable attorneys' fees and expenses incurred in the filing and prosecution of this action;

**PLAINTIFF'S [PROPOSED] FIRST AMENDED COMPLAINT**                              **PAGE 7**

(D)     All costs of court;

(E)     Any and all costs and reasonable attorneys' fees incurred in any and all related

appeals and collateral actions (if any); and

(F)     Such other relief to which this Court deems Plaintiff is justly entitled.

Respectfully submitted,

*/s/ Laura M. Fontaine*
**Jacob B. Kring**
Texas State Bar No. 24062831
**Laura M. Fontaine**
Texas State Bar No. 24065239

**HEDRICK KRING, PLLC**
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
(Tel.) (214) 880-9600
(Fax) (214) 481-1844
Jacob@HedrickKring.com
Laura@HedrickKring.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's First Amended Complaint has been served on counsel of record for Defendant Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 via electronic mail and first class mail on this 25th day of October 2018.

Gerard J. Kimmitt, II
Susan H. Swanson
HOLMAN FENWICK WILLAN
5151 San Felipe, Suite 400
Houston, Texas 77056
Jerry.Kimmitt@hfw.com
Susan.Swanson@hfw.com

*/s/ Laura M. Fontaine*
Laura M. Fontaine

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DILLON GAGE INCORPORATED OF** | § | |
| **DALLAS** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:18-CV-1555-B** |
| | § | |
| **CERTAIN UNDERWRITERS AT** | § | |
| **LLOYD'S, SUBSCRIBING TO POLICY** | § | |
| **NO. EE1701590** | § | |
|     **Defendant.** | § | |

---

**DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S**
**SUBSCRIBING TO POLICY NO. EE1701590'S FIRST AMENDED ANSWER TO**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

Defendant Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 ("Defendant" or "Underwriters") files this First Amended Answer in response to Plaintiff's First Amended Complaint.

**I.**
**Nature of the Action**

1.    Defendant Underwriters deny that they wrongfully refused to pay two claims pursuant to insurance Policy No. EE1701590. Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations against UPS Capital Insurance Agency, Inc.

**II.**
**The Parties**

2.    Defendant Underwriters admit the allegations in paragraph 2.

3.      Defendant Underwriters admit the allegations in paragraph 3. Underwriters respond that Brit Syndicate is incorrectly identified as "298"; the correct identification is "2987". Underwriters further responds that the two schedules of participating Underwriters in Policy No. EE1701590 includes those Underwriters identified and listed in paragraph 3, in varying percentages as pursuant to the Policy.

4.      Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 4 related to UPS Capital Insurance Agency, Inc.

### III.
### Jurisdiction and Venue

5.      Defendant Underwriters admit that this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a).

       5(a).    Admit.

       5(b).    Admit.

       5(c).    Allegations unknown to Defendant Underwriters.

       5(d).    Admit.

6.      Defendant Underwriters admit that this Court has personal jurisdiction over the Defendants.

7.      Defendant Underwriters admit that venue is proper in this District pursuant to 28 U.S.C. §1446(a).

### VI.
### Facts Applicable to All Claims

8.      Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations that Plaintiff is a wholesaler of bullion coins and precious

metals products. Defendant Underwriters admit the remainder of paragraph 8, to the extent included in Policy No. EE1701590.

9. Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.

10. Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10.

11. Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11.

12. Defendant Underwriters admit that Dillon Gage made a claim against it. Defendant Underwriters deny that by a letter dated April 26, 2018, Underwriters refused to pay Dillon Gage's claims. The letter dated April 26, 2018 stated as follows with respect to coverage under Policy EE1701590, "[a]s we have previously stated, we accept that Dillon Gage has limited coverage for these claims under the Financial Crime – Invalid Payments Extension clause. Regretfully the policy can not provide any further indemnity in this instance."

## V.
## Causes of Action

**Count 1:      Breach of Contract**

13. Defendant Underwriters deny the allegations in paragraphs 13-15 related to Underwriters. Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 13-15 as to UPS.

**Count 2:      Texas Insurance Code Violations**

14. Defendant Underwriters deny the allegations in paragraphs 16-18 related to Underwriters. Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 16-18 as to UPS.

**Count 3:**      **Prompt Payment Violation**

15.      Defendant Underwriters deny the allegations in paragraphs 19-23 related to Underwriters. Defendant Underwriters lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 19-23 as to UPS.

**Count 4:**      **Attorney's Fees**

16.      Defendant Underwriters deny the allegations in paragraphs 24-25.

**VI.**
**Conditions Precedent**

17.      Defendant Underwriters deny the allegations in paragraph 26.

**VII.**
**Request for Relief**

18.      Defendant Underwriters deny the allegations in Plaintiff's Request for Relief.

**VIII.**
**Affirmative and Other Defenses**

19.      Defendant Underwriters deny that they has wrongfully refused to pay two claims relating to three packages of precious metal coins stolen on February 13, 2018, and five packages of precious metal coins stolen on February 22, 2018.

20.      Defendant Underwriters deny that they breached the insurance contract with the Plaintiff. Defendant Underwriters deny that they failed and/or refused to pay adequate compensation as obligated under the terms of the Policy in question and under the laws of the State of Texas.

21.      Defendant Underwriters deny that they breached or violated the Texas Insurance Code as related to the claim now made the basis of this lawsuit.

   a.   Defendant Underwriters deny that they failed to promptly provide Plaintiff a reasonable explanation of the basis for denial of the claims.

b.  Defendant Underwriters deny that they refused to pay Plaintiff claims without conducting a reasonable investigation.

c.  Defendant Underwriters deny that they made material misrepresentations and/or untrue statements of material fact to the Plaintiff regarding material facts and policy provisions related to coverage at issue.

d.  Defendant Underwriters deny that they violated the Prompt Payment of Claims Act and/or that they are now responsible for payment of interest.

22.  Defendant Underwriters allege that any injury or damage suffered by Plaintiff was caused by a chain of events, caused by and attributable to acts or omissions as follows:

a.  Filling out an online application twice using Kenneth Bramlett's personal information;

b.  Communicating with the perpetrator(s) of the fraud via telephone and electronic communication related to the fraudulent transactions;

c.  Making fraudulent/dishonest payments using Kenneth and Laurie Bramlett's check/account;

d.  Altering the UPS shipping instructions to redirect delivery from the original delivery location; and

e.  Physical taking/stealing the packages from the UPS facility in Alabama.

23.  Defendant Underwriters further assert that the cause of the alleged loss or damage were the fraudulent payments. The above chain of events started with the Plaintiff, when the Plaintiff deposited the fraudulent checks and waited for the checks to post or clear the bank before issuing the invoices and then arranging for transport of the insured property. But for the

fraudulent/stolen checks actually being posted to the account and/or clearing the bank, no property would have shipped for the criminal to subsequently intervene and take possession.

24.    Defendant Underwriters further assert that the Plaintiff's losses are the direct result of the receipt of fraudulent checks. Otherwise, the policy provisions are rendered meaningless.

25.    Defendant Underwriters assert that the Invalid Payments Exclusion Clause in the Policy applies to exclude coverage to the Plaintiff; but that the Financial Crime – Invalid Payments Extension Clause specifically identifies and sets forth an exception to the exclusion clause.

26.    Defendant Underwriters further plead that pursuant to "Section E - Policy's Standard Conditions applicable to this contract", titled "Due Diligence Clause", that Plaintiff failed to use due diligence in all things reasonably practicable to avoid or diminish the loss or damage herein alleged.

27.    Defendant Underwriters further plead that pursuant to "Section E - Policy's Standard Conditions applicable to this contract" titled "Non Contribution Clause", the insurance available to the Plaintiff in Policy No. EE1701590 shall not provide coverage when there is any other insurance which would attach if Policy NO. EE1701590 had not been issued, whether in the name of the insured or any third party. Additionally, if under the terms of the other insurance, the liability would be a less amount than would have been recoverable under Policy No. EE1701590, then Policy No. EE1701590 attaches on the difference.

28.    Defendant Underwriters plead the affirmative defenses of estoppel, waiver, and laches relative to any theory of recovery alleged by Plaintiff.

29.     Defendant Underwriters also plead the affirmative defenses of accord and satisfaction as to any theory of recovery alleged by Plaintiff.

30.     Defendant Underwriters further plead the one-satisfaction rule.

31.     While continuing to deny that Plaintiff's damages, if any, were proximately caused by Defendant's acts or omissions, Defendant Underwriters request, pursuant to Chapters 33 of the Texas Civil Practice and Remedies Code, a determination of whether Plaintiff's conduct and/or the conduct of other persons or parties (including any responsible third parties) proximately caused or produced the Plaintiff's purported injury and damage, and, if so, the percentage of such Defendant Underwriters further request that the Court reduce and/or apportion the judgment, if any, by the degree of such causation attributed or attributable to the Plaintiff, other persons, parties, entities or designated responsible third parties.

32.     Plaintiff's claims are barred, in whole or in part, due to Plaintiff's failure to mitigate its damages as would have been done by a person or entity of ordinary prudence, and this failure to mitigate damages has proximately caused or at least contributed to the claimed damages.

33.     Defendant Underwriters further deny that any of the alleged acts and/or omissions described by the Plaintiff were committed "intentionally" or "knowingly".

34.     Defendant Underwriters reserve the right to amend its Answer.

## IV.
### Prayer

Defendant Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 pray that all causes of action asserted by Plaintiff be dismissed, that Defendant recovers its costs, and that Defendant be awarded such other and further relief to which it is entitled.

Respectfully submitted,

HOLMAN FENWICK WILLAN

*/s/ Gerard J. Kimmitt*
**Gerard J. Kimmitt, II**
TBN: 11427500
jerry.kimmitt@hfw.com
5151 San Felipe, Suite 400
Houston, Texas  77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470

**ATTORNEY IN CHARGE FOR DEFENDANT
CERTAIN UNDERWRITERS AT LLOYD'S
SUBCRIBING TO POLICY NO. EE1701590**

**OF COUNSEL:**
**Holman Fenwick Willan USA LLP**
Susan Swanson, TBA 24038955; Fed. Id No. 37969
Susan.Swanson@hfw.com

**LOCAL COUNSEL:**
Michael C. Wright, TBA 22049807
RUSSELL & WRIGHT, PLLC
mwright@rwtrial.com

### CERTIFICATE OF SERVICE

A true and correct copy of this document was served via the Court's EC/MCF electronic filing services on the following counsel on this 5th day of November 2018:

Laura Fontaine
Jacob B. Kring
HEDRICK KRING, PLLC
1700 Pacific Ave., Suite 4650
Dallas, Texas 75201

Michael C. Wright
RUSSELL & WRIGHT, PLLC
15770 Dallas Parkway, Suite 1050
Dallas, Texas 75248

*/s/ Gerard J. Kimmitt, II*
Gerard J. Kimmitt, II

# EXHIBIT D



# CONTRACT DOCUMENTATION



UW000092



**JLT Specialty Limited**
The St Botolph Building
138 Houndsditch
London EC3A 7AW
Tel    +44 (0)20 7528 4000
Fax   +44 (0)20 7528 4500
Our contact Sarah Jane Breen

Date: 24 May 2017

The Whitmore Group Limited,
370 Old Country Road,
Garden City,
NY 11530,
United States of America.

EOC No. EE1701590

## Evidence of Cover

Dear Sirs,

| | |
|---|---|
| **Insured:** | Dillon Gage Incorporated Of Dallas and Daimond State Depository, LLC and International Depository Services of Canada, Inc as their respective rights and interests may appear. |
| **Period:** | From: 12 May 2017     at 00:01 hours Local Standard Time at the 'Address of the Insured' herein. |
| | To: 12 May 2018     at 00:01 hours Local Standard Time at the 'Address of the Insured' herein. |
| **TYPE:** | Insurance of: Coin Dealers USA. |
| **Order Hereon:** | 100% of 100% of the Limits of liability or to be advised to Slip Leader only. |

In accordance with your instructions, we have effected insurance in the attached Contract EE1701590 (34 pages),

Our Debit Note reflecting the premium due for the insurance is additionally enclosed for your attention. In order to meet the premium payment terms set by Insurers, the premium needs to be paid to us by no later than the date set out in the Debit Note.

Please note if individual Insurers impose their own line subjectivities these are expressed in the document below.

Page 1 of 5

Lloyd's Broker, Authorised and regulated by the Financial Conduct Authority
A member of the Jardine Lloyd Thompson Group  Registered Office  The St Botolph Building, 138 Houndsditch, London EC3A 7AW.
Registered in England No. 01536540. VAT No 244 2321 96



UW000093



Continuation of Evidence of Cover No. EE1701590 dated 24 May 2017

## Security Schedule

**Insured with:**

| | | |
|---|---|---|
| 50.00% | JLT LOWRY FACILITY 9634 | |
| | LLOYD'S SYNDICATE 1414 | 9.3383% |
| | AA1127414 | |
| | LLOYD'S SYNDICATE 2488 | 11.9854% |
| | AA1128488 | |
| | LLOYD'S SYNDICATE 1686 | 9.3382% |
| | LLOYD'S SYNDICATE 2012 | 8.8235% |
| | AA1128012 | |
| | LLOYD'S SYNDICATE 4020 | 9.2402% |
| | AA1120075 | |
| | LLOYD'S SYNDICATE 1861 | 9.6569% |
| | AA1127861 | |
| | LLOYD'S SYNDICATE 609 | 9.6323% |
| | AA1126609 | |
| | LLOYD'S SYNDICATE 5151 | 7.3529% |
| | AA1120080 | |
| | LLOYD'S SYNDICATE 1969 | 2.8431% |
| | AA1120106 | |
| | LLOYD'S SYNDICATE 2987 | 2.8431% |
| | AA1128987 | |
| | LLOYD'S SYNDICATE 2001 | 5.0490% |
| | AA1128001 | |
| | LLOYD'S SYNDICATE 4711 | 2.2794% |
| | AA1120090 | |
| | LLOYD'S SYNDICATE 4472 | 2.2059% |
| | AA1126006 | |
| | LLOYD'S SYNDICATE 2007 | 2.2794% |
| | AA1120071 | |
| | LLOYD'S SYNDICATE 3000 | 2.6471% |
| | AA1129000 | |

UW000094



Continuation of Evidence of Cover No. EE1701590 dated 24 May 2017

|          |                           |          |
|----------|---------------------------|----------|
|          | LLOYD'S SYNDICATE 2232    | 2.2794%  |
|          | LLOYD'S SYNDICATE 1084    | 2.2059%  |
|          | AA1127084                 |          |
| 50.00%   | JLT JUDD FACILITY 9632    |          |
|          | LLOYD'S SYNDICATE 780     | 8.3824%  |
|          | AA1126780                 |          |
|          | LLOYD'S SYNDICATE 2001    | 14.0931% |
|          | AA1128001                 |          |
|          | LLOYD'S SYNDICATE 1206    | 8.8235%  |
|          | AA1127206                 |          |
|          | LLOYD'S SYNDICATE 382     | 9.0441%  |
|          | AA1126382                 |          |
|          | LLOYD'S SYNDICATE 1221    | 8.8235%  |
|          | AA1127221                 |          |
|          | LLOYD'S SYNDICATE 3000    | 10.0001% |
|          | AA1129000                 |          |
|          | LLOYD'S SYNDICATE 1084    | 9.5589%  |
|          | AA1127084                 |          |
|          | LLOYD'S SYNDICATE 1301    | 7.3529%  |
|          | AA1127301                 |          |
|          | LLOYD'S SYNDICATE 1861    | 2.3039%  |
|          | AA1127861                 |          |
|          | LLOYD'S SYNDICATE 1969    | 2.8431%  |
|          | AA1120106                 |          |
|          | LLOYD'S SYNDICATE 2987    | 2.8431%  |
|          | AA1128987                 |          |
|          | LLOYD'S SYNDICATE 4711    | 2.2794%  |
|          | AA1120090                 |          |
|          | LLOYD'S SYNDICATE 4020    | 1.9608%  |
|          | AA1120075                 |          |
|          | LLOYD'S SYNDICATE 4472    | 2.2059%  |
|          | AA1126006                 |          |
|          | LLOYD'S SYNDICATE 2007    | 2.2794%  |

UW000095



Continuation of Evidence of Cover No. EE1701590 dated 24 May 2017

|  |  |
|---|---|
| AA1120071 | |
| LLOYD'S SYNDICATE 2488 | 2.6471% |
| AA1128488 | |
| LLOYD'S SYNDICATE 2232 | 2.2794% |
| LLOYD'S SYNDICATE 609 | 2.2794% |
| AA1126609 | |

100.00%

This Security Schedule has been prepared by us for your ease of reference to identify the subscribing insurers and their respective participations (as a percentage of our order) on the above referenced insurance contract. Please note that this schedule is not authorised by the subscribing insurers.

UW000096



Continuation of Evidence of Cover No. EE1701590 dated 24 May 2017

**Reminder : Duty of Disclosure**

Under the laws of England and Wales, Scotland and Northern Ireland, JLT Specialty Limited has a duty to remind you of a policyholder's (and its insurance agent's) duty to make a fair presentation of the risk, and to disclose all material circumstances, and the consequences of not doing so. It is necessary to disclose all information which would influence the judgement of a prudent insurer in determining whether or not to accept a risk, and upon what terms. Failure to comply with this duty may give the insurer the right to void the policy from its inception, or to impose different terms, or to reduce the amount paid on any claim. If your contract is not subject to such laws, your duty of disclosure and the consequences of its breach may vary from that stated above.

For further information please refer to our Business Protocol document which can be found on-line at https://www.jltspecialty.com/business-protocols and if any further material requires to be disclosed or if you have any question as to what should be disclosed please refer to your normal JLT Specialty Limited contact.

We would ask you to examine the enclosed documents carefully and if for any reason they are incorrect contact us immediately.

Yours faithfully
For and on behalf of JLT Specialty Limited

**Authorised Signatory**

**UW000097**



| Policy No | | | | | 901 |
| --- | --- | --- | --- | --- | --- |
| B0901EE1701590000 | | | | | JLT |

| **Market Reform Contract** | R/I | | BKR | LISTS | |
| | YES | NO | | YES | N.A. |
| | | | | | |
| | DATE | | DATE | DATE | |

**Insured / Reinsured**

**Dillon Gage Incorporated Of Dallas**

**Period**
**From 12 May 2017 Local Standard Time**
**To 12 May 2018 Local Standard Time**

**Risk**

**For XIS LLOYD's use**

**For XIS IUA use**

BBJ/L2T/18 May 2017/EE1701590SAB

UW000098

 **JLT**

**B0901EE1701590000**

**901
JLT**

Page 1 of 34

### RISK DETAILS

| | |
|---|---|
| **UNIQUE MARKET REFERENCE:** | B0901EE1701590000 |
| **TYPE:** | Insurance of: Coin Dealers USA |
| **INSURED:** | Dillon Gage Incorporated Of Dallas and Dalmond State Depository, LLC and International Depository Services of Canada, Inc as their respective rights and interests may appear. |
| | Hereinafter known as the Insured. |
| **CORRESPONDENCE ADDRESS OF THE INSURED:** | 15301 Dallas Parkway Suite 200 Addison, TX 75001-4668 United States of America |

**PERIOD OF INSURANCE:**

From: 12 May 2017   at 00:01 hours Local Standard Time at the 'Address of the Insured' herein.

To:   12 May 2018   at 00:01 hours Local Standard Time at the 'Address of the Insured' herein.

It is agreed that notwithstanding anything contained herein to the contrary that cover hereunder may be extended for up to three months, if required, subject to the agreement of the Slip Leader only, and such agreement shall be binding upon all subscribing Insurers hereon.

Cover hereunder may be cancelled in accordance with the Cancellation clause in the Conditions herein

**INTEREST:**

Stocks of:

Coins, numismatics, paper money and material of like kind and nature including but not limited to rare coins, bullion coins and the items of a numismatic interest, precious or semi-precious metals, metal bearing solvents, refinery scrap and 'in-process' metals and dust, items of a jewellery nature and the Insured's supplies and reference material, all being the property of the Insured or for which they are responsible or instructed to insure.

**NAMED RISK LOCATION(S):**

1) 15301 Dallas Parkway, #200, Addison, TX 75001
2) 12131 Gemini Lane, Dallas, TX 75229
3) Diamond State Depository, LLC, 406 West Basin Road, New Castle, DE 19720
4) International Depository Services, Canada, 3300 Caroga Drive, Mississauga, Ontario, L4V 1L4

BSJL27/16 May 2017/EE1701590SAB

(Internal Use Only)
ims

**UW000099**

 **JLT**

B0901EE1701590000

**901
JLT**

Page 2 of 34

**LIMITS OF
LIABILITY:**

**SECTION A – Static Coverage:**

**A1   Main named location(s)**

 (i) 406 West Basin Road, New Castle, DE 19720   **USD 460,000,000**
                   Each and every loss

   3300 Caroga Drive, Mississauga,   Ontario,
   L4V 1L4

   Automatic increase to:         **USD  650,000,000**
   Subject to monthly declaration of maximum  Each and every loss
   monthly exposure and additional premiums
   payable at expiry at rate 0.02% per annum on
   average maximum monthly values in excess
   of USD460,000,000

 (ii) 15301 Dallas Pkwy, #200, Addison, TX75001  **USD 100,000,000**
                   Each and every loss

   12131 Gemini Lane, Dallas, TX 75229

**A2   Bank Vaults** worldwide        **USD 1,000,000**
Whilst stored or housed within bank vault(s) being  Each and every loss
part of and not additional to the limit under item
A1 above.

**A3   Un-named locations** worldwide     **USD 15,000,000**
Whilst at unnamed locations, being part of and not  Each and every loss
additional to the limits of liability under A1 above.

**A4   Third party locations** worldwide     **USD 5,000,000**
Whilst at Grading houses as specifically defined  Each and every loss
herein) being part of and not additional to the
limits of liability under A1 above.

**UW000100**

 **JLT**

B0901EE1701590000

**901**
**JLT**
Page 3 of 34

## SECTION B – Show, Exhibition, Auction Coverage

Whilst at show, exhibition, auction venues whilst being displayed, shown, exhibited or any other associated action including any and all associated pre-shows or pre-viewings and any incidental temporary housing arising from each event. Conveyances to and from venues as defined in each sub-section below. Coverage includes stock consigned to or by you to third parties.

| | | |
|---|---|---|
| B1 | Whilst at events as described above | USD 750,000<br>Each and every loss |
| B2 | Personally conveyed to or from any event | USD 750,000<br>Each and every loss |
| B3 | Conveyances to or from events using:<br>Approved secure carrier, Brinks, Malca Amit,<br>Dunbar, Loomis Fargo, Ferrari Express, Via Mat,<br>Positive Protection Inc. | USD 750,000<br>Each and every loss |
| B4 | Transits by postal or Courier Services | Refer to section D |
| B5 | Exhibition / Convention Expense Extension | USD50,000<br>Any one loss |

### SECTION C - Personal Carryings coverage:

Whilst being personally carried worldwide by the insured or their representatives and shall include any incidental temporary housing arising from each occurrence.

| | | |
|---|---|---|
| C1 | Personal Carrying with a single carrier | USD 750,000<br>Each and every loss |
| C2 | Personal Carrying by two or more people | USD 1,500,000<br>Each and every loss |

## SECTION D - Shipping coverage:

Whilst being shipped via postal or courier transit by means detailed below including with Custom House Brokers within the normal course of transit. Limits stated are 'any one package' and include conveyances to and from insured shipping services.

| | | | |
|---|---|---|---|
| D1 | Regular Mail | USD | Not Covered |
| D2 | Certified Mail | USD | 2,500 |
| | Certified Mail Restricted service | USD | 2,500 |
| D3 | Priority Mail (with signature confirmation) | USD | 25,000 |
| | Priority Mail Adult signature service | USD | 25,000 |
| D4 | UPS | USD | 200,000 |
| | UPS Adult Signature Service | USD | 200,000 |
| D5 | Standard Airfreight | USD | 50,000 |
| D6 | Federal Express | USD | 175,000 |
| | Federal Express Adult Signature Service only | USD | 175,000 |
| D7 | Registered Mail | USD | 200,000 |
| | Registered Mail Restricted Service only | USD | 200,000 |
| D8 | Express Mail | USD | 175,000 |
| | Express Mail Adult Signature Service | USD | 175,000 |
| D9 | Approved Security carrier, Brinks, Malca Amit, | USD | 5,000,000 |

UW000101



B0901EE1701590000

|  |  | | |
|---|---|---|---|
| Dunbar, Loomis Fargo, Ferrari Express, Via Mat, Positive Protection Inc. | | | |
| Con-way | | USD | 5,000,000 |
| INKAS, Old Dominion, ABF | | USD | 5,000,000 |

**TERRITORIAL LIMITS:**

| | |
|---|---|
| Section A: | As detailed under section A |
| Section B: | Worldwide |
| Section C: | Worldwide |
| Section D: | Worldwide |

**DEDUCTIBLES:**

| | |
|---|---|
| Sections A, | USD 100,000 each and every loss |
| Sections B and C | USD 50,000 each and every loss |
| Section D only | USD 5,000 each and every loss |
| Increasing for UPS only | USD 10,000 each and every loss |

The application of the deductible will apply to any one loss or series of losses arising out of the same event. Only one deductible applies upon discovery of a loss.

**CONDITIONS:**
All terms and conditions as set forth in the wording, such as attached and incorporating the following:-

Appointed Loss Adjuster
It is agreed by Insurers that to appoint Mr Ryan Tocicki of Permier Insurance Services 1217 N. Garbo Lane, Hollywood, CA 90038 USA to adjust any claims under this contract.

**CONFORMITY CLAUSES**
Wherever, in the attached, reference is made to the "Assured" it shall be deemed to mean the "Insured".
Wherever, in the attached wording and clauses, reference is made to "Company" or "Underwriter(s)" it shall be deemed to mean the "Insurer(s)".
Wherever, in the attached, reference is made to the "Policy" it shall be deemed to mean the "Contract".

**SUBJECTIVITIES:**
It is hereby understood and agreed by any and all underwriters subscribing to this insurance that any subjectivity that has been raised within a quote slip or quote sheet shall be treated as having no application if not included within this final placement slip. It is incumbent on underwriters to ensure inclusion within the provisions of the final placement slip any subjectivity which they wish to apply to the cover.

**CHOICE OF LAW AND JURISDICTION:**
The choice of law and jurisdiction stated below takes precedence over any alternative choice of law and jurisdiction provisions which may be stated elsewhere in this contract including those which may be included in registered clauses attached hereto.

This insurance shall be governed by and construed in accordance with the law of Texas and each party agrees to submit to the exclusive jurisdiction of the Courts of United States of America in the event of a dispute arising hereunder.

UW000102



| B0901EE1701590000 |
|---|

901
JLT

Page 5 of 34

**PREMIUM:**  USD 292,200
TRPIRA not required (Separate contract)

The premium is payable in four (4) equal instalments.

15% Profit Commission Clause as more fully described in the attached wording payable at expiry

**PREMIUM PAYMENT TERMS:**  LSW 3001 Premium Payment Clause, as attached.

**TAXES PAYABLE BY INSURED AND ADMINISTERED BY INSURERS:**  This Contract is subject to the following taxes which are payable by the Insured and administered by Insurers.

**In respect of Ontario location:**

Ontario Retail Sales taxes in respect of Canadian location USD7,790.80 (Calculated at USD97,385 x 8.0%)

**TAXES PAYABLE BY INSURERS AND ADMINISTERED BY INSURED OR THEIR AGENT:**  This Contract is subject to the following taxes which are payable by the Insured and administered by Insurers.
None applicable.

**RECORDING, TRANSMITTING AND STORING INFORMATION:**  Where JLT Specialty Limited maintains risk and claims data/information/ documents JLT Specialty Limited may hold data/information/documents electronically.

UW000103



| B0901EE1701590000 |

**901
JLT**

Page 6 of 34

### ALL RISKS OF PHYSICAL LOSS OR DAMAGE

This Section insures against physical loss of or physical damage to the Insured Property as defined below and stated in the Risk Details, 'Sum Insured' while at the named location(s) and elsewhere within the territorial limits as specified in the Risk Details, 'Situation' occurring during the period of insurance, subject to the following Exclusions, Basis of Valuation and Conditions.

*Where to find your applicable conditions:*

Section A        Conditions Unique to YOUR contract

Section B        Contract Extensions

Section C        Transit, Shipping — Conditions and Exclusions

Section D        Standard General Exclusions applicable to the contract

Section E        Standard Conditions applicable to the contract

Section F        What to do in the event of a claim

UW000104



B0901EE1701690000

**901
JLT**

Page 7 of 34

---

## PART A – CONDITIONS TAILORED FOR YOU.

**Valuation Clause**

In respect of Owned Stock:
1) Bullion and Refinery Product:
Market Value as per 2nd London Fix on date of loss plus 2%

2) Finished Jewellery:
Cost Price plus 10% or Replacement Cost on date of loss whichever is the greater.

3) Numismatics, refinery scrap, including dust and residue:
Market Value at the time of loss to be agreed by any independent individual or organization mutually agreed by the underwriters and the insured.

Goods Consigned to the Insured:
Legal Liability to third party

Goods Sold but not delivered:
Invoice Value

It is understood and agreed that the settlement of any loss hereunder shall include replacement packaging freight and forwarding charges and any customs duty or taxes the insured may have paid or maybe liable to pay and which they are unable to recover from the Customs and/or Fiscal Authorities. Any expenses incurred in the payment and/or recovery of such duty or taxes shall be indemnified hereunder.

**Terrorism**

To be read in conjunction with the Terrorism Exclusion Clause contained within Section D of this contract.

**Terrorism Risk Insurance Program Reauthorization Act**
This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002" as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.
This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.
LMA5219
12/01/15

UW000105

 **JLT**

B0901EE1701590000

**Termination of transit clause (Terrorism) - Whilst in the Ordinary Course of Transit.**
It is understood and agreed that for insured property in the ordinary course of transit, this insurance covers loss of our damage to the insured property caused by any act of terrorism being an act of any person acting on behalf of, or in connection with, any organisation which carries out activities directed towards the overthrowing or influencing, by force or violence, of any government whether or not legally constituted or any person acting from a political, ideological or religious motive, and in any event, **SHALL TERMINATE:**

**either**

1.1  As per the transit clauses contained within the contract of insurance;

**or**

1.2  on completion of unloading from the carrying vehicle or other conveyance in or at the final warehouse or place of storage at the destination named in the contract of insurance;

1.3  on completion of unloading from the carrying vehicle or other conveyance in or at any other warehouse or place of storage, whether prior to or at the destination names in the contract of insurance, which the Assured or their employees elect to use either for storage other than in the ordinary course of transit or for allocation or distribution, or

1.4  when the Assured or their employees elect to use any carrying vehicle or other conveyance or any container for storage other than in the ordinary course of transit, or

1.5  on completion of unloading from the carrying vehicle or other conveyance in or at any other warehouse or place of storage, whether prior to or at the destination named in the Contract of insurance, which the Assured or their employees elect to use either for storage other than in the ordinary course of transit or for allocation or distribution; or

1.6  in respect of air transits, on the expiry of 30 days after unloading the subject matter insured from the aircraft at the final place of discharge;

**whichever shall first occur.**

2  If this contract of insurance or the Clauses referred to therein specifically provide cover for inland or other further transits following on from storage, or termination as provided for above, cover will re-attach, and continues during the ordinary course of that transit terminating again in accordance with clause 1

**UW000106**



B0901EE1701590000

**901**
**JLT**

Page 9 of 34

**Service of Suit**     This Service of Suit Clause will not be read to conflict with or override the obligations of
the parties to arbitrate their disputes as provided for in any Arbitration provision within
this policy. This Clause is intended as an aid to compelling arbitration or enforcing such
arbitration or arbitral award, not as an alternative to such Arbitration provision for
resolving disputes arising out of this contract of insurance (or reinsurance). It is agreed that
in the event of the failure of the Underwriters hereon to pay any amount claimed to be due
hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will
submit to the jurisdiction of a Court of competent jurisdiction within the United States.
Nothing in this Clause constitutes or should be understood to constitute a waiver of
Underwriters' rights to commence an action in any Court of competent jurisdiction in the
United States, to remove an action to a United States District Court, or to seek a transfer
of a case to another Court as permitted by the laws of the United States or of any State in
the United States.

It is further agreed that service of process in such suit may be made upon Mendes and
Mount, 750 Seventh Avenue, New York, NY 10019-6829 and that in any suit instituted
against any one of them upon this contract, Underwriters will abide by the final decision of
such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of
Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to
give a written undertaking to the Insured (or Reinsured) that they will enter a general
appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States
which makes provision therefor, Underwriters hereon hereby designate the
Superintendent, Commissioner or Director of Insurance or other officer specified for that
purpose in the statute, or his successor or successors in office, as their true and lawful
attorney upon whom may be served any lawful process in any action, suit or proceeding
instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder
arising out of this contract of insurance (or reinsurance), and hereby designate the above-
named as the person to whom the said officer is authorized to mail such process or a
true copy thereof.

UW000107



| B0901EE1701590000 |
|---|

**901**
**JLT**
Page 10 of 34

### CANADIAN ENDORSEMENT
(hereinafter referred to as the 'Canadian Endorsement'
attaching to the
**All Risks of Physical Loss Insurance contract**
commencing 12th May 2017
(hereinafter referred to as the 'Global Contract'
between

Dillon Gage Incorporated Of Dallas and Diamond State Depository, LLC and International Depository Services of Canada, Inc as their respective rights and interests may appear

as more particularly described in the Global Contract
(hereinafter referred to as the 'Insured')
and

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter referred to as 'Lloyd's Underwriters')

**Ref: B0901EE1701590**

The coverage provided under this Canadian Endorsement is intended to cover the Canadian portion of the risks that would otherwise be insured by the Lloyd's Underwriters under the Global Contract, for the period specified therein (the " Canadian risks" ) and for which the Underwriters have allocated a Premium of **97,385 U.S.Dollars**, part of the premium payable under the Global Contract.

The insurance of such Canadian risks has been effected for and on behalf of certain Lloyd's Underwriters, whose definitive numbers and the proportions underwritten by them can be ascertained by reference to the Global Contract.

The said Lloyd's Underwriters are hereby bound, severally and not jointly, to insure in accordance with the terms and conditions contained herein and within the Global Contract and this Canadian Endorsement shall incorporate all terms, conditions and limitations in the Global Contract relating to the operation of cover in respect of the Canadian risks.

It is hereby agreed that the interests and liabilities of the Lloyd's Underwriters for the Canadian risks insured under the Global Contract are as more particularly described in the Global Contract. Notwithstanding any provision to the contrary in the Global Contract, the total liability of the Lloyd's Underwriters under this Canadian Endorsement and the Global Contract shall not exceed their proportion of the total insurance coverage amount specified in the Global Contract and liability under this Canadian Endorsement for the Canadian risks remains limited by the provisions of the Global Contract.

Any payment by the Lloyd's Underwriters under this Canadian Endorsement shall reduce by that amount the total liability of the Lloyd's Underwriters under the Global Contract. Any payment by the Lloyd's Underwriters under the Global Contract shall reduce by that amount the total liability of the Lloyd's Underwriters under this Canadian Endorsement.

The governing law of this Canadian Endorsement shall be as determined by the Global Contract.
The provisions for service of suit under this Canadian Endorsement shall be as determined by the Global Contract.

References in this Canadian Endorsement to the " Global Contract" shall refer to the Global Contract identified by the UMR referenced above and shall include any subsequent issued insurer authorised evidence of cover.

UW000108



| B0901EE1701590000 |
| --- |

**Intention for AIF to Bind Clause**

Whereas Lloyd's Underwriters have been granted an order to insure in Canada risks under the Insurance Companies Act (Canada) and are registered in all provinces and territories in Canada to carry on insurance business under the laws of these jurisdictions or to transact insurance in these jurisdictions.

And whereas applicants for insurance coverage in respect of risks located in Canada and Canadian Cedants wish that Lloyd's insurance and reinsurance coverage be provided in a manner that requires Lloyd's Underwriters to vest assets in trust in respect of their risks pursuant to the Insurance Companies Act (Canada);

a) This Canadian Endorsement shall be in force and shall be the governing contract pending the decision by Lloyd's Underwriters' attorney and chief agent in Canada (the 'AIF') to confirm coverage in accordance with both terms and conditions set out in this Canadian Endorsement and applicable Canadian law;

b) The AIF shall confirm Lloyd's Underwriters' coverage by signing in Canada a policy that will contain the terms and conditions set out in this Canadian Endorsement (the 'Canadian Policy'), and by communicating from Canada the issuance of that policy to the policyholder or his broker;

c) This Canadian Endorsement shall cease to have effect upon the communication by the AIF from Canada of the Canadian Policy to the policyholder or his broker, and the Canadian Policy will replace and supersede this endorsement.

LMA5162

**Code of Consumer Rights and Responsibilities**

Insurers (including Lloyd's Underwriters), along with the brokers and agents who sell home, auto and business insurance are committed to safeguarding your rights both when you shop for insurance and when you submit a claim following a loss. Your rights include the right to be informed fully, to be treated fairly, to timely complaint resolution, and to privacy. These rights are grounded in the contract between you and your insurer and the insurance laws of your province. With rights, however, come responsibilities including, for example, the expectation that you will provide complete and accurate information to your insurer. Your policy outlines other important responsibilities. Insurers and their distribution networks, and governments also have important roles to play in ensuring that your rights are protected.

**Right to Be Informed**

You can expect to access clear information about your policy, your coverage, and the claims settlement process. You have the right to an easy-to-understand explanation of how insurance works and how it will meet your needs. You also have a right to know how insurers calculate price based on relevant facts. Under normal circumstances, insurers will advise an insurance customer or the customer's intermediary of changes to, or the cancellation of a policy within a reasonable prescribed period prior to the expiration of the policy, if the customer provides information required for determining renewal terms of the policy within the time prescribed, which could vary by province, but is usually 45 days prior to expiry of the policy.

You have the right to ask who is providing compensation to your broker or agent for the sale of your insurance. Your broker or agent will provide information detailing for you how he or she is paid, by whom, and in what ways.

You have a right to be told about insurers' compensation arrangements with their distribution networks. You have a right to ask the broker or agent with whom you deal for details of how and by whom it is being paid. Brokers and agents are committed to providing information relating to ownership, financing, and other relevant facts.

**Responsibility to Ask Questions and Share Information**

To safeguard your right to purchase appropriate coverage at a competitive price, you should ask questions about your policy so that you understand what it covers and what your obligations are under it. You can access information through one-on-one meetings with your broker or agent. You have the option to shop the marketplace for the combination of coverages and service levels that best suits your insurance needs. To maintain your protection against loss, you must promptly inform your broker or agent of any change in your circumstances.

 **JLT**

B0901EE1701590000

**901**
**JLT**

Page 12 of 34

**Right to Complaint Resolution**
Insurers, their brokers and agents are committed to high standards of customer service. If you have a complaint about the service you have received, you have a right to access Lloyd's Underwriters' complaint resolution process for Canada. Your agent or broker can provide you with information about how you can ensure that your complaint is heard and promptly handled. Consumers may also contact their respective provincial insurance regulator for information. Lloyd's is a member of an independent complaint resolution office, the General Insurance OmbudService.

**Responsibility to Resolve Disputes**
You should always enter into the dispute resolution process in good faith, provide required information in a timely manner, and remain open to recommendations made by independent observers as part of that process.

**Right to Professional Service**
You have the right to deal with insurance professionals who exhibit a high ethical standard, which includes acting with honesty, integrity, fairness and skill. Brokers and agents must exhibit extensive knowledge of the product, its coverages and its limitations in order to best serve you.

**Right to Privacy**
Because it is important for you to disclose any and all information required by an insurer to provide the insurance coverage that best suits you, you have the right to know that your information will be used for the purpose set out in the privacy statement made available to you by your broker, agent or insurance representative. This information will not be disclosed to anyone except as permitted by law. You should know that Lloyd's Underwriters are subject to Canada's privacy laws - with respect to their business in Canada.
10/12
LSW1565C

UW000110

 **JLT**

B0901EE1701590000

**901**
**JLT**
Page 13 of 34

---

## SECTION B – Contract Extensions

**Unattended Vehicle Extension**

This insurance extends to cover insured interest whilst in or upon any unattended vehicle under the control of any Principal and / or employee of the Insured. An Employee being defined as a natural person in the service of the Insured who is subject to the Insured's direction and control.

It is a condition precedent to Underwriters liability under this extension that when vehicles are left unattended;

i)   all doors, trunks and windows are secured and locked.
ii)  all keys are removed from the vehicle.
iii) all other security including the car alarm has been put into full and proper operation.
iv)  all insured interest is unidentifiable from outside the vehicle and if the vehicle has a separate trunk such insured interest is placed in the trunk at all times.
v)   the value carried shall not exceed the limit of liability stated under section B2 (Show - transits) or section C (Personal carrying coverage), as applicable

**Exhibition – Convention Expense Extension**

Subject to the limit of liability for Art Fair Expense Coverage specified in the risk details, this insurance is extended to cover any non-recoverable costs and/or expenses following the Insured's failure to participate in any declared fair due to reasons outside of the Insured's control.

Coverage will apply if such failure was caused by:

(i)   The non-delivery of stock or any related items prior to the commencement of the convention, which prevents the Insured from opening the stand.

(ii)  The cancellation of the convention in its entirety

(iii) Non-attendance at any declared fair due to unforeseen circumstances outside of the Insured's reasonable control.

Coverage will extend to the following non-recoverable costs and/or expenses:

(i)   Any rental charges for the stand space

(ii)  All costs associated with the transportation of stock to the convention

(iii) the Insured's and the Insured's employees travel costs, including hotel and/or other accommodation expenses.

(iv)  Any specific marketing or advertising costs directly related to the Insured's participation in the declared convention.

UW000111



| B0901EE1701590000 |

**901
JLT**

Page 14 of 34

**Good record /
Loyalty Bonus**

**Profit Commission**

It is understood and agreed that upon expiry of this Insurance, subject to the renewal with the same Underwriters, the Insured will be entitled to participate in profits as hereinafter defined, accruing to the Insurers from this Insurance.

Insurers profit shall be defined as the excess of income over outgo as defined below:

<u>INCOME</u>
Gross premium paid during the policy period taking into account all adjustments for additional and return premiums.

<u>OUTGO</u>
Less 35% of income defined above, for Insurers' expenses.
Less all paid and outstanding losses occurring during the policy year (such claims to be reduced by the amount of recoveries made, if any).

 <u>PROFIT</u>
12.0% of the balance remaining.

 For subsequent years the debit balance, if any, for the profit commission statement of previous years shall be carried forward but such debit balance shall not be carried forward longer than 3 years after the expiry of the year in which such loss or losses were sustained.

In the event that any Underwriter subscribing hereto decides not to offer renewal terms, such Underwriter shall be liable for their proportion of the expiring profit commission amount.

**Defective Title
Extension**

It is understood and agreed that coverage hereunder is afforded up to USD25,000 each and every loss and in the aggregate in respect of any Insured Interest acquired in good faith but where it is subsequently determined that there is no legal title of ownership and the law or a court order requires the goods to be relinquished. Cover extends to include:

(a)     Legal costs which the Insured may, with Underwriters consent, pay or become legally liable to pay by reason of lack of title or defective title;

(b)     Any charge or encumbrance placed on the item, prior to purchase, of which the Insured was unaware.

Provided always that:

(i)      cover is restricted to claims made against the Insured or discovery by the Insured of circumstances that might give rise to a claim during the policy period;

(ii)     Insurers will in all cases retain their rights of recourse against the perpetrator(s) of the loss or damage;

(iii)    The Insured must not admit liability or agree to give up ownership of the item

BSJLZ7/18 May 2017/EE1701590SAB

**UW000112**

 **JLT**

| B0901EE1701590000 |

**901**
**JLT**
Page 15 of 34

without first having written consent from Insurers.

This cover specifically excludes:
- Claims against the Insured of which it was aware before the period of validity of this insurance policy;
- Claims arising from the insolvency, bankruptcy, liquidation or the financial reorganization or financial difficulties of the Insured;
- Claims made against the Insured by an Associate Company, Parent Company or Subsidiary or any natural or legal person with a controlling interest or interest of any similar nature in the conduct of the Insured's business.
- Operating losses following loss or damage under this cover.

**Financial Crime**

**Invalid Payments Extension Clause**
Notwithstanding the Invalid Payment Exclusion Clause contained herein, it is understood and agreed that coverage hereunder is extended to cover physical loss of insured interest as a direct result of any fraudulent or dishonest payment(s). Underwriters liability hereunder is limited to USD12,500 each and every loss and in the aggregate during the policy period and subject to a deductible of USD1,000 each and every loss or series of losses.

UW000113

 **JLT**

B0901EE1701590000

**901**
**JLT**
Page 16 of 34

## SECTION C – Transits And Shipping - Conditions and Exclusions

**Personally Accompanied Transit Clause**
All personally accompanied transits insured hereunder are to be made by the Insured, an employee of the Insured or an individual personally known to the Insured (or to a responsible member of the Insured's staff) and appointed as their personal representative, but this shall be deemed NOT to include professional carriers or courier.

**Checked Baggage Clause**
When it is necessary for the material insured hereunder to travel as checked luggage as a result of airline procedure or any regulatory control, such material shall be contained within a suitcase (or similar container) of rigid construction which must be looked at all times unless airline regulations specify to the contrary.  It is a further condition that no flight changes shall be undertaken once the material is checked in unless the Insured or his appointed representatives has physical possession of all items of luggage whether checked or not.

It is understood that material travelling as checked luggage shall only be insured if the Insured or his appointed representative is travelling on the same flight as the checked items.

**Hotel / Motel Clause**
Material temporarily housed in a locked hotel/motel room shall be kept out of view and shall be contained within the room safe or principal hotel/motel safe at all times when the room is unattended. If, due to the size of the items, this is not possible, the Insured may keep said items within a locked suitcase or similar locked container which is to be kept out of view at all times

**Plain Wrapper Clause**
It is a condition precedent to Underwriters liability hereunder in respect of sending losses that the Insured shall not put markings on outbound sendings that may assist in identifying the contents. This clause shall not apply when statute, or common law, decrees that a declaration must be made.

**Postal Clause**
It is a condition precedent to Underwriters liability hereunder in respect of sending losses that when using any of the shipping methods insured as described under Section D, the Insured is obliged to utilise a service which provides for signatures to be obtained on delivery

**Federal Express Limitation Clause**
This clause may reduce your coverage in respect of package sent by Federal Express.
In respect of package(s) sent by Federal Express on a Friday, or on the last working day before a public holiday at the place of origin the limits stated herein for Federal Express coverage are halved. Therefore insurers will not pay more than 50% of the stated limit regardless of value sent.

UW000114

 **JLT**

| B0901EE1701590000 |
| --- |

## SECTION D – Standard General Exclusions

This contract shall not pay for losses arising from:

**General**

a) Theft or dishonesty committed by or in collusion with any principal shareholder (beneficial or otherwise), partner, or director of the Insured.

b) Wear and tear, deterioration, moth and vermin.

c) Any loss or shortage discovered on taking annual inventory, unless the loss can be proved by the Insured to be due to a peril covered hereunder.

d) Damage to the property insured which may be sustained whilst the same is being actually worked upon or is undergoing any process and directly resulting therefrom.

e) Loss of market or delay, no matter how occurring and any consequential losses.

f) Destruction or damage directly occasioned by pressure waves caused by aircraft and other aerial devices travelling at sonic or supersonic speeds.

g) Fading, creasing, tearing, thinning, transfer of colours, aridity, humidity and exposure to light or extremes of temperature unless a loss arises as a direct consequence of an event not excluded under this insurance.

**Cyber Attack Exclusion Clause**

1.1   Subject only to clauses 1.2 and 1.3 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system (collectively referred to as 'cyber attack').

1.2   Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, clause 1.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

1.3   It is understood and agreed that clause 1.1 shall not apply to otherwise covered physical loss and/or physical damage and/or destruction (collectively referred to as 'loss') occurring to the interest insured where a 'cyber attack' is used in the commission of the act of theft, robbery, burglary, hold-up or other criminal activity resulting in a loss and targeted at the insured as referenced hereunder and/or the interest insured hereunder and/or the building in which the interest insured is located.



| | B0901EE1701590000 | 901<br>JLT<br>Page 18 of 34 |

**Institute Radioactive Contamination Chemical Biological Bio-Chemical and Electromagnetic Weapons Exclusion Clause**

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith:

1. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to or arising from,

   1.1 ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel,

   1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof,

   1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter,

   1.4 The radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agriculture, medical, scientific or other peaceful purposes,

   1.5 any chemical, biological, bio-chemical, or electromagnetic weapon.

**Invalid Payments Exclusion Clause**

Notwithstanding anything contained herein to the contrary, this contract excludes any claim in respect of the property insured hereunder, where the loss has been sustained by the insured consequent upon handing over such insured property to any third party against payment by:

   – Cheque, Banker's Draft, or any other form of Money Order, where such Cheque, Banker's Draft or other form of Money Order, shall prove to be false, fraudulent or otherwise invalid or uncollectable for any reason whatsoever.

   – Cash, Currency or Bank Notes which prove to be counterfeit, false or otherwise invalid for any reason whatsoever.

   – Credit Card, where the use of the same has been false, fraudulent or invalid, or when payment of the amount due is uncollectable for any reason whatsoever.

**Sanction Limitation and Exclusion Clause**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

UW000116



| B0901EE1701590000 | **901**<br>**JLT**<br>Page 19 of 34 |

**Terrorism Exclusion Clause – Outside of the Ordinary Course of Transit**
*(This coverage maybe bought back under the Conditions Unique to your Contract section)*
Notwithstanding any provision to the contrary within the insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in force and effect.

**USA and Canada Endorsement for the Institute Radioactive Contamination Chemical Biological Bio-Chemical and Electromagnetic Weapons Exclusion Clause – 10/11/03**
This contract is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause 10/11/03 (RACCBE). The inclusion of RACCBE in this contract is material to Underwriters' willingness to provide coverage at the quoted terms, conditions and rates.

It is the intent of the parties to give maximum effect to RACCBE as permitted by law.

In the event that any portion of RACCBE may be found to be unenforceable in whole or in part under the law of any state, territory, district, commonwealth or possession of the USA, or any province or territory of Canada, the remainder shall remain in full force and effect under the laws of that state, territory, district, commonwealth or possession, province or territory. Further, any such finding shall not alter the enforceability of RACCBE under the laws of any state, territory, district, commonwealth or possession of the USA, or any province or territory of Canada, to the fullest extent permitted by applicable law.
USCAN B 29/01/04

**War and Civil War Exclusion Clause**
Notwithstanding anything to the contrary contained herein this Policy does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority

UW000117



| | B0901EE1701590000 | | **901**<br>**JLT**<br>Page 20 of 34 |

---

### SECTION E – Standard Conditions applicable to this contract

**Conformity Clauses**

Wherever, within the attached, reference is made to the 'Assured' it shall be deemed to mean the 'Insured'.

Wherever, within the attached wording and clauses, reference is made to the 'Company' or 'Underwriter(s)' it shall be deemed to mean the 'Insurer(s)'.

Wherever, within the attached, reference is made to the 'Policy' or 'Certificate' it shall be deemed to mean the 'contract'.

**Arbitration Clause**

In case the Insured and Underwriters shall fail to agree as to the amount of loss or damage the same shall be ascertained by two competent and disinterested appraisers, the Insured and Underwriters each selecting one, and the two so chosen shall first select a competent and disinterested umpire, the appraisers together shall then estimate and appraise the loss stating separately the sound values and damage, and falling to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of the loss, the parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expense of the appraisal and umpire.

**Automatic Reinstatement Clause**

It is agreed that the amount of Insurance hereunder shall be reduced by the amount of any loss covered by this Contract. Unless otherwise provided, Underwriters and the Insured shall be deemed to have agreed that the full amount insured be reinstated automatically as of the date of the loss.

**Breach of Warranty and No Control Clause**

If a breach of any warranty or condition in any form or endorsement attached to or made as part of this Insurance should occur, which breach, by the terms of such warranty or condition, shall operate to suspend or void this Insurance, it is agreed that such suspension or voidance due to such breach shall be effective only during the continuance of such breach, and then only as to the property therein or other separate location to which such warranty or condition has reference and in respect of which such breach occurs.

This insurance shall not be prejudiced by any act or neglect of the owner of any building if the Insured is not the owner thereof, or by any act, or neglect of any occupants (other than the Insured) of any building, when such act or neglect of the Owner or occupant is not within the control of the Insured, or by failure of the Insured to comply with any warranty or conditions contained in any form or endorsement attached to this Insurance with regard to any portion of the premises over which the Insured has no control. Notwithstanding anything contained herein, if technical faults to the insured's protection system occur that the insured does not have notice of or are immaterial to a loss, coverage shall be afforded.

**Cancellation Clause**

Notwithstanding anything contained in this Insurance to the contrary this insurance may be cancelled by the Insured at any time by written notice or by surrender of this contract of insurance. This insurance may also be cancelled by or on behalf of the Underwriters by delivering to the Insured or by mailing to the Insured, by registered, certified or other first class mail, at the Insured's address as shown in this Insurance, written notice stating when, not less than 30 days thereafter, or 15 days in respect of non-payment of premium, the

**UW000118**



cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and this insurance shall terminate at the date and hour specified in such notice.

If this insurance shall be cancelled by the insured, the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this insurance shall be cancelled by or on behalf of Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**Direct Adjustment Clause**
In case of loss of property of others (insured hereunder) held by the Insured, for loss of which claim is made upon Underwriters, the right to adjust such loss with the owner or owners of the property is reserved to Underwriters and the receipt of such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the insured for the loss of said property for which such payment has been made. If legal proceedings be taken to enforce claim against the Insured as respects any such loss, Underwriters reserve the right at their option without expense to the Insured, to conduct and control the defence on behalf of and in the name of the Insured. In no event is this Contract liable for more than the total amount of insurance granted hereunder.

**Due Diligence Clause**
The Insured shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss or damage to the property herein insured.

**Examination under Oath Clause**
The Insured shall, in case of loss or damage, give to the Underwriters or their duly authorized agents, all information they require for an evaluation of the loss. The loss payee or other individual or organization claiming an interest under the contract of insurance, shall submit, and so far as is within their power, shall cause all other individuals interested in the property and other members of the household and employees and agents, to examinations under oath by any persons authorized by Underwriters relative to any and all matters concerning the claim and subscribe to the same and shall produce for examination all books of account, bills, invoices and other vouchers or certified copies thereof if the originals be lost, at such reasonable time and place as may be designated by the Underwriters or their representatives and shall permit extracts and copies to be made thereof.

UW000119



B0901EE1701590000

901
JLT

Page 22 of 34

**Grading House Definition Clause**
Any reference to Grading Houses or Grading Service shall be defined as:

Professional Coin Grading Service (PCGS),
Professional Sports Authenticator (PSA),
Numismatic Guaranty Corp (NGC),
Sports Guaranty Corp (SGC),
Comic Guaranty Corp (CGC),
Numismatic Conservation Service (NCS),
Independent Coin Grading (ICG),
American Numismatic Certification Service (ANACS),
Certified Acceptance Corp (CAC).

**Lloyd's Compliance with the US Foreign Account Tax Compliance Act**
Information regarding Lloyd's Syndicates compliance with the Foreign Account Tax Compliance Act ("FATCA")
is available from the Lloyd's broker whose contact details are shown elsewhere in this contract.

It is understood and agreed that the provision of this information is sufficient for the purposes of any obligation in
this (re)insurance for Lloyd's syndicates to provide FATCA required documentation.
LMA9107
29 April 2015

**Non Contribution Clause**
It is understood and agreed that any insurance granted herein shall not cover (excepting as to the legal liability of
the insured) when there is any other insurance which would attach if this Contract had not been issued, whether
such insurance would be in the name of the insured or of any third party. It is however understood and agreed
that, if under the terms of such other insurance (in the absence of this Contract) the liability would be a less
amount than would have been recoverable under this Contract (in the absence of such other Contract) then this
Contract attaches on the difference. This insurance shall not inure directly or indirectly to the benefit of any carrier
or other bailee.

**Payment on Account Clause**
Underwriters hereby agree that where claim papers submitted demonstrate that only the quantum of the claim is
in question, they will make a payment on account equal to 100% of the lower of the amounts claimed by the
insured and agreed to by Underwriters.

**Premium Payment Terms**
If the premium due under this contract has not been so paid to Underwriters by the 60th day from the inception of
this contract (and, in respect of installment premiums, by the date they are due) Underwriters shall have the right
to cancel this contract by notifying the insured via the broker in writing. In the event of cancellation, premium is due
to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full contract premium shall
be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to
a valid claim under this contract.

It is also agreed that underwriters shall give not less than 15 days prior notice of cancellation to the insured via the
broker. If premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall

B0J/L27/16 May 2017/EE1701590SAB



B0901EE1701590000

automatically be revoked. If not, the contract shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Underwriter (and Agreement Parties if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provision in this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment Underwriters will be deemed to occur on the delivery of a premium advice note to the Bureau.
(LSW3001)

**Protection Maintenance Clause**
It is agreed that the protections provided for the safety of the insured property shall be maintained in good order throughout the currency of this insurance and shall be in use at all times out of business hours or when the insured's premises are left unattended and that such protections shall not be withdrawn or varied to the detriment of the interests of the Underwriters without their consent.

Notwithstanding anything contained herein it is noted and agreed that technical faults relating to the insured's alarm system which can be substantiated as being beyond the control of the insured shall not prejudice this insurance. Provided, however, that the insured shall take all reasonable care to protect the insured property whenever they become aware of such faults and that immediate notice is given to Underwriters.

**Subrogation Clause**
Underwriters may require from the insured an assignment of all rights of recovery against any party for loss or damage, to the extent that payment therefore is made by Underwriters. Notwithstanding, Underwriters will not be granted recourse against carriers, packers or other bailees except with the insured's and/or their Agents prior consent.



B0901EE1701690000

---

### SECTION F – What to do in the event of a claim

**Claims Notification Clause**

Following any happening likely to give rise to a claim, the Insured will as soon as reasonably practicable:

– inform the police, and offer them all reasonable assistance in apprehension of person(s) responsible and the recovery of the property stolen,

– give notification in writing to Underwriters,

– provide such information and assistance as Underwriters may reasonably require,

– use reasonable endeavors to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised,

– Contact Numismatic Crime Information Center (NCIC), Doug Davis – (Doug@numismaticcrimes.org) or 817 723 7231.
(This is a recommendation and not a Contract requirement.)

**How to make a Claim under this Insurance**

If you wish to make a claim under this Insurance, please contact:

Shahid Qaiser       Direct Dial: +44 (0) 20 7528 4475       Mobile: + 44 (0) 7600 920950
                    Email:  Shahid_Qaiser@JLTGroup.com

Nelson Macwan       Direct Dial: +44 (0) 20 7 466 6205
                    Email:  Nelson_Macwan@JLTGroup.com

as soon as possible.

At the time of making a claim, you will be asked the contract number stated on your Schedule and full details of the claim.

**Complaints Procedure**

If you have any complaint, please address this to:

JLT Specialty Ltd
The St Botolph Building
138 Houndsditch
London EC3A 7AW

We will acknowledge your complaint promptly, explain how it will be handled, and tell you what you need to do; and

We will consider and handle your complaint fairly, and tell you how it is progressing. If you are not satisfied with the result of our complaints procedure, you can ask the Complaints Department at Lloyd's to review your case; without prejudice to your rights at law.

---

93JL27/19 May 2017/EE17019905AB



B0901EE1701590000

We will tell you how to do this, but the relevant contact details are:

Complaints
Fidentia House
Walter Burke Way
Chatham Maritime
Chatham
Kent ME14 4RN

e-mail: complaints@lloyds.com
Tel:     +44 (0) 207 327 5693
Fax:    +44 (0) 207 327 5225

In all communications the policy and contract number should be quoted.
Complaints that cannot be resolved by the Complaints Department may be referred to the Financial Ombudsman Service. You must do this within six months of receiving a final response to your complaint from Lloyd's. Their address and telephone number is:
Financial Ombudsman Service
South Quay Plaza
183 Marsh Wall
London E14 9SR

**UW000123**



B0901EE1701590000

**901**
**JLT**
Page 26 of 34

## Texas Complaints Notice

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con del Departamento de Seguros de Texas para obtener informacion acerca de companies coberturas derechos o quejas al |
| 1-800-252-2439 | 1-800-252-3439 |
| You may write to the Texas Department of Insurance | Puede escribir al Departamento de Seguros de Texas |
| P.O. Box 149104 Austin, TX 78714-91404 Fax: (512) 475 1771 Web: http:/fiwww.tcli.state.tx.us Email: ConsumerProtectionPtdi.state.tx.us | P.O. Box 149104 Austin, TX 78714-91404 Fax: (512) 475 1771 Web: http:/fiwww.tcli.state.tx.us Email: ConsumerProtectionPtdi.state.tx.us |
| PREMIUM OR CLAIM DISPUTES Should you have a dispute concerning your premium or about a claim you should contact the agent first.  If the dispute is not resolved, you may contact the Texas Department of Insurance. | DISPUTAS SOBRE PRIMAS O RECLAMOS Tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero.  Si no se resuelve la disputa puede entonces comunicarse con el departamento (TDI). |
| ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part or condition of the attached documents. | UNA ESTE AVISO A SU POLIZA: Este aviso es solo para proposito de informacion y no se conviete en parte o condition del document adjunto |
| LSW1022A | |

UW000124

 JLT

| B0901EE1701590000 |
|---|

### INFORMATION

Information made available to and seen by leading Insurers hereon, as initialled by Slip Leader hereon, includes the following:

JLT renewal application received 11th April 2017 seen and noted by insurers.

Values per location at 11th April 2017 and 5th May 2017
| | |
|---|---|
| Addison, TX | $66,893,287 |
| Gemini Lane, TX | $5,761,985 |
| Delaware | $446,303,896 |
| Ontario | $448,043,840 |
| Unnamed locs | 28 locations between $200k and $4.8m |

For Taxation purposes, the allocation of premium by territory is as follows:

| | |
|---|---|
| Addison, TX | $52,016 |
| Gemini Lane, TX | $2,569 |
| Delaware | $99,889 |
| Ontario | $97,385 |
| Shipping | $40,141 does not attract taxation. |

**Excise Tax – Canada (Lloyd's Crystal)**
Excise Tax applies to Canadian resident Assureds where the insured risk is ordinarily in Canada and is not subject to any of the exemptions. However note that it remains due irrespective of who pays the insurance premium. In the case of non Canadian resident entity taking out a multinational or global policy that covers a Canadian entity's risk an excise tax demand will be sent to the Canada Revenue Agency (CRA) to the Canadian entity. Brokers should advise their clients of this fact and suggest they notify any Canadian entities covered by the policy to expect a demand from the CRA.



**UW000125**

 **JLT**

| B0901EE1701590000 |

## SECURITY DETAILS

**(RE)INSURERS LIABILITY:**

**(RE)INSURERS LIABILITY CLAUSE**
**(RE)INSURER'S LIABILITY SEVERAL NOT JOINT**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case the risk detail is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the risk details will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333

**ORDER HEREON:**      100% of 100% of the Limits of Liability or to be advised to Slip Leader only

**UW000126**

 **JLT**

B0901EE1701590000

**901**
**JLT**

Page 29 of 34

---

**BASIS OF WRITTEN LINES:**  Percentage of Order

**BASIS OF SIGNED LINES:**  As per Basis of Written Lines above

**SIGNING PROVISIONS:**  In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the Insurers.

However:

a) In the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;

b) the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the Insured and all Insurers whose lines are to be varied. The variation to the contracts will take effect only when all such Insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

**LINE CONDITIONS:**  None unless Insurers indicate otherwise here.

---

UW000127



| B0901EE1701590000 | **901**<br>**JLT**<br>Page 30 of 34 |

---

### WRITTEN LINES
### MODE OF EXECUTION CLAUSE

This contract and any changes to it may be executed by:

    a)    an original written ink signature of paper documents (or a true representation of a signature, such as a rubber-stamp);

    b)    an exchange of facsimile/scanned copies showing the original written ink signature of paper documents;

    c)    electronic signature technology employing computer software and a digital signature or digitiser pen pad to capture a person's handwritten signature in such a manner that the signature is unique to the person signing, is under the sole control of the person signing, is capable of verification to authenticate the signature and is linked to the document signed in such a manner that if the data is changed, such signature is invalidated;

    d)    a unique authorisation provided via a secure electronic trading platform;

    e)    a timed and dated authorisation provided via an electronic message/system.

The use of any one or a combination of these methods of execution shall constitute a legally binding and valid signing of this contract. This contract may be executed in one or more of the above counterparts, each of which, when duly executed, shall be deemed an original.

In a co-insurance placement following (re)insurers may, but are not obliged to, follow the premium charged by the lead (re)insurer.

(Re)insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.

**Written %**        **Signed and Dated Stamp**

                  **Incorporating Underwriting Reference**

---

BSJ/L2T/10 May 2017/EE1701590SAB

UW000128

 **JLT**

B0901EE1701590000

**901**
**JLT**
Page 31 of 34

---

<u>WRITTEN LINE %</u>

### JLT "LOWRY" Facility
B0901EE1600734

ⁱˣ⁹**9634**

## All Underwriters as per LPSO Registered No 9634

### SCHEDULE OF <u>VARIABLE REFERENCES</u>
### GS

**50%**
of order hereon

| 1414 ASC | SG17KA744J2X |
|----------|--------------|
| 2488 CGM | AXSZ3GLQ9598 |
| 2012 AAL | 041796032017 |
| 1686 AXS | 8269406217SP |


Lead Underwriter Sign
(ASC) (CG) (ARK) (AAL) (AXS)

| 9637 Schedule of Variable References | |
|--------------------------------------|--------------|
| 2001 AML | SCX1562717LB |
| 4711 ASP | SPA7GJX17B0D |
| 2488 CGM | AXSZ3GLQ5488 |
| 3000 MKL | CC8092C17MAA |

Genesis 2.0 Sign Here

For Bureaux Use Only: XIS technician must key FOUR decimal places after the point – NN.NNNN%

Schedule of participating Underwriters:

| Underwriter | Signed Line % of order |
|-------------|------------------------|
| Ascot Syndicate 1414 ASC | 9.3383% |
| Chubb Syndicate 2488 CGM | 9.3383% |
| Axis Syndicate 1686 AXS | 9.3382% |
| Arch Syndicate 2012 AAL | 8.8235% |
| Ark Syndicate 4020 ARK | 7.2794% |
| ANV Syndicate 1861 ANV | 7.3530% |
| Atrium Syndicate 609 AUW | 7.3529% |
| Endurance Syndicate 5151 ENH | 7.3529% |
| Genesis 2.0 per 9637 as scheduled below | 33.8235% |
|  | 100.0000% |
|  |  |
| **Genesis 2.0** |  |
| ANV Syndicate 1861 ANV | 2.3039% |
| Apollo Syndicate 1969 APL | 2.8431% |
| Brit Syndicate 2987 BRT | 2.8431% |
| MS Amlin Syndicate 2001 AML | 5.0490% |
| Aspen Syndicate 4711 ASP | 2.2794% |

BBJL27/16 May 2017/EE1701590SAB

**JLT**

B0901EE1701590000

| | |
|---|---|
| Ark Syndicate 4020 ARK | 1.9608% |
| Liberty Syndicate 4472 LIB | 2.2059% |
| Novae Syndicate 2007 NVA | 2.2794% |
| Chubb Syndicate 2488 CGM | 2.6471% |
| Markel Syndicate 3000 MKL | 2.6471% |
| Allied World Syndicate 2232 AWH | 2.2794% |
| Atrium Syndicate 609 AUW | 2.2794% |
| Chaucer Syndicate 1084 CSL | 2.2059% |
| | 33.8235% of |
| | 100.0000% |

UW000130

 **JLT**

B0901EE1701590000

**901**
**JLT**
Page 33 of 34

---

## JLT "Judd" Facility
### B0901EE1600733
### ʸ9632

## All Underwriters as per LPSO Registered No 9632

### SCHEDULE OF VARIABLE REFERENCES
### GS

**50%**
**of order hereon**

| 1221 NAV | CPP134CC2893 |
|---|---|
| 3000 MKL | CD6123B17MAA |
| 2001 AML | SCX1598017HA |

Lead Underwriter Sign

17/5/17
ADVI MITI ATL HDU NAV

### 9637 Schedule of Variable References

| 2001 AML | SCX1562717LB |
|---|---|
| 4711 ASP | SPA7GJX17B0D |
| 2488 CGM | AXSZ3GLQ5488 |
| 3000 MKL | CC8092C17MAA |

Genesis 2.0 Sign Here

17

For Bureaux Use Only: XIS technician must key FOUR decimal places after the point – NN.NNNN%

Schedule of participating Underwriters:

| Underwriter | Signed Line % of order |
|---|---|
| Advent Syndicate 780 ADV | 8.3824% |
| MS Amlin Syndicate 2001 AML | 9.0441% |
| AmTrust Syndicate 1206 ATL | 8.8235% |
| Hardy Syndicate 382 HDU | 9.0441% |
| Navigators Syndicate 1221 NAV | 8.8235% |
| Markel Syndicate 3000 MKL | 7.3530% |
| Chaucer Syndicate 1084 CSL | 7.3530% |
| Starstone Syndicate 1301 SCC | 7.3529% |
| Genesis 2.0 per 9637 as scheduled below | 33.8235% |
| | 100.0000% |

| Genesis 2.0 | |
|---|---|
| ANV Syndicate 1861 ANV | 2.3039% |
| Apollo Syndicate 1969 APL | 2.8431% |
| Brit Syndicate 2987 BRT | 2.8431% |
| MS Amlin Syndicate 2001 AML | 5.0490% |
| Aspen Syndicate 4711 ASP | 2.2794% |
| Ark Syndicate 4020 ARK | 1.9608% |
| Liberty Syndicate 4472 LIB | 2.2059% |

B8JLZ7/16 May 2017/EE1701590AB

**JLT**

B0901EE1701590000

**901
JLT**

| | |
|---|---|
| Novae Syndicate 2007 NVA | 2.2794% |
| Chubb Syndicate 2488 CGM | 2.6471% |
| Markel Syndicate 3000 MKL | 2.6471% |
| Allied World Syndicate 2232 AWH | 2.2794% |
| Atrium Syndicate 609 AUW | 2.2794% |
| Chaucer Syndicate 1084 CSL | 2.2059% |
| | 33.8235% of |
| | 100.0000% |

BSJ/L2T/10 May 2017/EE1701590SAB

UW000132

JLT Specialty Limited
The St Botolph Building
138 Houndsditch
London EC3A 7AW
Tel     +44 (0)20 7528 4000
Fax    +44 (0)20 7528 4500
www.jltspecialty.com



Lloyd's Broker. Authorised and regulated by the Financial Conduct Authority.
A member of the Jardine Lloyd Thompson Group. Registered Office:
The St Botolph Building, 138 Houndsditch, London EC3A 7AW.
Registered in England No. 01536540. VAT No. 244 2321 96.



UW000133

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DILLON GAGE INCORPORATED OF** | § | |
| **DALLAS** | § | |
| Plaintiff, | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:18-CV-1555-B** |
| | § | |
| **CERTAIN UNDERWRITERS AT** | § | |
| **LLOYD'S, SUBSCRIBING TO POLICY** | § | |
| **NO. EE1701590** | § | |
| Defendant. | § | |

---

### FEDERAL RULE OF CIVIL PROCEDURE 56(c)(1)(A) STIPULATIONS

Plaintiff Dillon Gage Incorporated of Dallas ("Dillon Gage"), and Defendant Certain

Underwriters at Lloyd's, Subscribing to Policy No. EE1701590 ("Underwriters"), agree to stipulate

to the following facts as part of the record in this lawsuit:

1. On January 28, 2018, Dillon Gage received a new customer online application submission with the name listed as Kenneth Bramlett. This online application also included a copy of an Alabama Driver's License of the alleged Kenneth Bramlett and other identifying information. Among the information provided was the home address of 2933 Canterbury Road, Mountain Brook, Alabama, 35223. (Dillon Gage 000335 – 000336).

2. On January 29, 2018, the first order (of two orders made) was placed with Dillon Gage by the alleged Kenneth Bramlett for $549,000.00 worth of gold coins.

3. On January 29, 2018, Dillon Gage received a PNC Bank check #121 (dated January 29, 2018), Account #50048121097025, in the amount of $549,000.00, from the joint account of Kenneth and Laurie Bramlett, signed by Laurie Bramlett (Dillon Gage 000317-000318).

4. On January 30, 2018, Dillon Gage deposited check #121 with its bank, BBVA Compass, and was given provisional credit by BBVA Compass. (CB000001-2).

5. On February 12, 2018, Dillon Gage received notice that Check #121 cleared Kenneth and Laurie Bramlett's account. Dillon Gage then created a Sales Invoice (Dillon Gage 000297), packaged, released, and shipped three (3) packages to Kenneth Bramlett at his home address via UPS. (Dillon Gage 000302-308). Dillon Gage assigned each package a tracking number via UPS, listed on the Sales Invoice. The three (3) packages were picked up at Dillon Gage's office in Addison, Texas by UPS, and scanned into the UPS high value

stream system between 7:30-7:31 pm as the "origin scan." (Dillon Gage 000400; Dillon Gage 000338-000340). On February 12, 2018, Dillon Gage provided the three (3) tracking numbers to the alleged Kenneth Bramlett via email. (Dillon Gage 000358).

6.   On February 12, 2018, and only minutes after the origin scan, at 7:43-7:44 pm, the UPS tracking history notes that "A UPS My Choice delivery change was requested for this package. / The receiver arranged to pick up the packages at a UPS facility." (Dillon Gage 000400; Dillon Gage 000338-000340).

7.   On February 13, 2018, three (3) packages were delivered to a UPS facility in Birmingham, Alabama at 8:25 am. Three (3) minutes later, at 8:28 am, an individual collected the packages from the UPS facility. (Dillon Gage 000400; Dillon Gage 000338-000340) (UPS 47-53).

8.   The individual who collected the three (3) packages from the UPS facility in Birmingham was not Kenneth Bramlett or Laurie Bramlett.

9.   On February 13, 2018, Dillon Gage received the second order placed by the alleged Kenneth Bramlett. (Dillon Gage 000374).

10.   On February 14, 2018, Dillon Gage received a PNC Bank check # 647 (dated February 13, 2018), Account #3121404582, from the joint account of Kenneth and Laurie Bramlett, in the amount of $655,000.00 and locked trade. (Dillon Gage 000313-000314).

11.   On February 14, 2018, Dillon Gage deposited check #647 with its bank, BBVA Compass, and was given provisional credit by BBVA Compass. (CB000015-16) (CB000152-000153).

12.   On February 22, 2018, Dillon Gage received notice that Check #647 cleared Kenneth and Laurie Bramlett's account. Dillon Gage then created a Sales Invoice (Dillon Gage 000298), packaged, released, and shipped five (5) packages to Kenneth Bramlett at his home address via UPS. (Dillon Gage 000302-000308). Dillon Gage assigned each package a tracking number via UPS, listed on the Sales Invoice. The five (5) packages were picked up at Dillon Gage's office in Addison, Texas by UPS, and scanned into the UPS high value stream system at 7:40 pm as the "origin scan." (Dillon Gage 000417; Dillon Gage 000320-000333). On February 22, 2018, Dillon Gage provided the five (5) tracking numbers to the alleged Kenneth Bramlett via email.

13.   On February 22, 2018, after the origin scan, at 8:50-8:54 pm, the UPS tracking history notes that "A UPS My Choice delivery change was requested for this package. / The receiver will pick up the packages at the UPS facility." (Dillon Gage 000417; Dillon Gage 000320-000333).

14.   On February 23, 2018, five (5) packages were delivered to a UPS facility in Birmingham, Alabama at 8:50 am. Following, an individual signed for and collected the five (5) packages from the UPS facility. (Dillon Gage 000320-000333) (UPS 47-53).

15.   The individual who collected the five (5) packages from the UPS facility in Birmingham was not Kenneth Bramlett or Laurie Bramlett. This is evidenced by CCTV video footage of the UPS facility in Birmingham, Alabama on February 23, 2018. The CCTV video footage is a fair and accurate depiction of the UPS facility in Birmingham, Alabama as it looked the morning of February 23, 2018.

16.   On February 26, 2018, Laurie Bramlett signed an affidavit of fraud related to Check #647 and provided it to PNC Bank. (Dillon Gage 000310).

17.   On March 1, 2018, Compass received a large dollar notification from its vendor indicating that Check #647 was unauthorized (forged counterfeit) and that PNC Bank would be sending it back; and that PNC Bank would receive a credit to its account and there would be a corresponding debit to BBVA Compass, which occurred. (CB000152-153; CB000024-27).

18.   On March 8, 2018, BBVA Compass received a large dollar notification from its vendor indicating that Check #121 was unauthorized (forged counterfeit), and that an additional item issued by the same customer to Dillon Gage would be returned to Compass for the same reasons. (CB000152-153; CB000004-7).

19.   On March 14, 2018, Laurie Bramlett signed an affidavit of fraud related to Check #121, and provided it to PNC Bank. (Dillon Gage 000309).

Respectfully submitted,

**HEDRICK KRING, PLLC**

*/s/Laura M. Fontaine*
Jacob B. Kring
Texas Bar No.: 24062831
Laura M. Fontaine
Texas Bar No. 24065239
1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
Telephone: (214) 880-9600
Facsimile: (214) 481-1844
Jacob@HedrickKring.com
Laura@HedrickKring.com
**ATTORNEY FOR PLAINTIFF,
DILLON GAGE INCORPORATED OF DALLAS**

HOLMAN FENWICK WILLAN

/s/ Gerard J. Kimmitt, II
Gerard J. Kimmitt, II
Texas Bar No.: 11427500; Federal ID No.: 08454
Susan H. Swanson
Texas Bar No.: 24038955; Federal ID No.:37969
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470
jerry.kimmitt@hfw.com
susan.swanson@hfw.com
**ATTORNEY FOR DEFENDANT,
CERTAIN   UNDERWRITERS   AT   LLOYD'S,
SUBSCRIBING TO POLICY NO. EE1701590**

RUSSELL & WRIGHT, PLLC

/s/ Michael C. Wright
Michael C. Wright
Texas Bar No. 22049807
mwright@rwtrial.com
RUSSELL & WRIGHT, PLLC
15770 Dallas Parkway, Suite 1050
Dallas, Texas 75248
Telephone: (972) 267-8400
Facsimile: (972) 267-8401
**ATTORNEY FOR DEFENDANT,
CERTAIN   UNDERWRITERS   AT   LLOYD'S,
SUBSCRIBING TO POLICY NO. EE1701590**

## CERTIFICATE OF SERVICE

A true and correct copy of this document was served via the Court's EC/MCF electronic filing services on the following counsel on this 22nd day of April 2019:

/s/ Gerard J. Kimmitt, II
Gerard J. Kimmitt, II

# EXHIBIT F

**Vicky Guthery**                                             Acct.#029977

| | |
|---|---|
| **From:** | no-reply@dillongage.com |
| **Sent:** | Sunday, January 28, 2018 1:38 PM |
| **To:** | newaccounts@dillongage.com; Dennis Herger |
| **Subject:** | New Online Application Submission |
| **Attachments:** | E0405013-A8D9-4282-8026-292C35DA7D52.jpeg |

| | |
|---|---|
| structure | A |
| accountClass | DLR |
| businessName | Kenneth Bramlett |
| address1 | 2933 Canterbury rd |
| city | Mountain Brk |
| state | AL |
| zip | 35223 |
| country | USA |
| email | Kenbramlett99@gmail.com |
| eNewsletter | 0 |
| contactFirstName | Kenneth |
| contactLastName | Bramlett |
| contactMobilePhone | 2052875906 |
| contactWorkPhone | 2053922658 |
| contactEmergencyPhone | 2052875906 |
| contactSSN | 421809543 |
| contactDrivesLicenseOrPassportNo | 3590239 |
| references_bankName | PNC BANK |
| references_bankCountry | USA |

1

DILLON GAGE 000335



DILLON GAGE 000336

ECS                                                                    Page 1 of 1

 

|                    | Today's<br>Date: | Mon, Jan<br>29, 2018 | Subscriber<br>ID: | DGG-<br>TRIAL | Total<br>Compliance Info | Trading<br>Partners |

## TOTAL COMPLIANCE ENGINE

**Screening Results**

**Compliance Country: US**

**Reference ID:**

**Party Name/Address: KENNETH BRAMLETT / 2933 CANTERBURY RD. (PASSED)**

**Contact Name: KENNETH BRAMLETT (PASSED)**

**Party Country: US**

===============

**Party Screening Summary: PASS**

----------------

| Print Results | Additional Resources | Back |

v4.2                          © 2017 BluJay Solutions Ltd. All rights reserved.

**Dear BluJay Solutions Total Compliance/ECS/RDPS Customer,**

In an ongoing effort to improve the integrity, stability, and resiliency of the Total Compliance, ECS, and applications, we will be migrating to a new data center in Feb 2018.

BluJay Solutions views this as an important operational enhancement to our Cloud offerings that provides greater security for our customers due to newer SSL certificates, which are not vulnerable to attacks. The new data center will also have increased redundancy across all aspects of the application, which will provide for greater system reliability with more a robust high-availability hardware infrastructure. In addition, performance will be improved by newer and more powerful hardware and faster network connectivity.

To receive email communications regarding the move please open a ticket through the portal https://blujaysolutions.force.com or call the 866-649-1900 number and ask to receive communications for ECSMOVE.

Regards

The BluJay Solutions Support Team

DILLON GAGE 000337
1/29/2018

# EXHIBIT G

1oz 180239/3307829 0000220 0000444 l=0000

*062001186*
03/07/2018
00000000000000

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.
RETURN REASON (5)

KENNETH W BRAMLETT
LAURIE W BRAMLETT
2933 CANTERBURY RD
MOUNTAIN BROOK AL 35223-1203

029977                                      121

1-29-18          8-71/430
                 Date

Pay to the order of  Dillon Gage          | $ 549, 000.00

Five hundred and forty nine thousand 00/100 Dollars

PNCBANK
PNC Bank, N.A.  060
Kentucky
For _____              Laur Bramlett

⑈043000711⑈ 5004812 10970 25⑈0121

4⑈043000711⑈ 5004812 10970 25⑈0121  ⑈0054900000⑈

DILLON GAGE 000317

Processed via Remote Deposit
Compass Bank >062001186<
6708694841
FOR DEPOSIT ONLY

↓ Do not endorse or write below this line ↓

*>0620011Ab<* 03/07/2018
0000000000000
>11301057< 01/30/2018
00000002177301.3

031000053 01/30/2018
0000000731942.01
031000146 03/06/2018
0000001933015693
11301057 03/08/2018
0000000627803644

DILLON GAGE 000318

# EXHIBIT H



# TEAM LEGAL

## The Leader in Litigation Support

-HEADQUARTERS-
13100 Wortham Center Drive, Suite 140
Houston, Texas 77065
(713) 937-4242   Fax (713) 937-9995
Toll Free 800-882-3376   www.teamlegal.net

## Dillon Gage Incorporated of Dallas vs. Certain Underwriters at Lloyd's, et al.

Records Regarding:   **Dillon Gage Incorporated of Dallas**
Records From:   **BBVA Compass**
Type of Records:   **Any & All Records**

**The custodian declined to complete the written deposition but did provide the attached affidavit.**

Order No. 23791.003

COURT REPORTING | VIDEO DEPOSITIONS | RECORD RETRIEVAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DILLON GAGE INCORPORATED OF   §
DALLAS   §
  §
V.   §     CIVIL ACTION NO. 3:18-CV-01555
  §
CERTAIN UNDERWRITERS AT   §
LLOYD'S SUBSCRIBING TO POLICY   §
NO. EE1701590   §

### BUSINESS RECORDS AFFIDAVIT

THE STATE OF ALABAMA   §
  §
COUNTY OF JEFFERSON   §

BEFORE ME, the undersigned authority, personally appeared Kara Price, who, being by me duly sworn, deposed as follows:

1. My name is Kara Price. I am over the age of 21 years, of sound mind, and capable of making this affidavit.

2. I am an employee of Compass Bank d/b/a BBVA Compass ("BBVA Compass"). My title is Paralegal. I am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

3. Attached are 291 pages of records of BBVA Compass. These records are the exact duplicates of the original records (with privileged portions redacted). The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. It is the regular practice of BBVA Compass for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them.

4. The records were kept in the course of regularly conducted business activity. It is the regular practice of the business activity to make the records.

Printed name: Kara Price

SWORN TO AND SUBSCRIBED before me by Kara Price on the 15th day of November, 2018.

Notary Public, State of Alabama

930505.20180752/3164039.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## DALLAS DIVISION

DILLON GAGE INCORPORATED OF DALLAS      :
          :
          :
**vs.**                                 :      CIVIL ACTION NO. **3:18-CV-01555**
          :
**CERTAIN UNDERWRITERS AT LLOYD'S**    :
**SUBSCRIBING TO POLICY NO. EE1701590**    :

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Plaintiff by and through their attorney(s) of record: **Jacob B. Kring and Laura M. Fontaine**
To other party/parties by and through their attorney(s) of record: **Michael C. Wright**

You will please take notice that twenty-four (24) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

(3)    **BBVA Compass (Any & All Records)**
        **701 32nd Street South, Birmingham, AL 35233**

before a Notary Public for **TEAM LEGAL**
                 **13100 Wortham Center Dr., Suite 140, Houston, TX 77065**
                 **713-937-4242,  Fax 713-937-9995,  www.teamlegal.net**

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rules 31 and 45, Federal Rules of Civil Procedure, and in accordance with Texas Finance Code §59.006, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:  **Dillon Gage Incorporated of Dallas**

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.



**T E A M   L E G A L**

The Leader in Litigation Support

*Gerard J. Kimmitt, II*
Gerard J. Kimmitt, II
SBA # 11427500
Federal ID # 08454
Susan H. Swanson
SBA # 24038955
Federal ID # 37969
Holman Fenwick Willan USA LLP
5151 San Felipe, Suite 400
Houston, TX 77056
713-917-0888   Fax 713-953-9470
Attorneys for Defendant

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, fax, email, and/or certified mail, return receipt requested, on this day.

Dated: August 16, 2018                           by

Order No. **23791**

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# United States District Court
## FOR THE NORTHERN DISTRICT OF
## DALLAS DIVISION

**DILLON GAGE INCORPORATED OF DALLAS**

**vs.**                                    Civil Action No.  **3:18-CV-01555**

**CERTAIN UNDERWRITERS AT LLOYD'S
SUBSCRIBING TO POLICY NO. EE1701590**

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

**TO:**     Custodian of Records for:     **BBVA Compass
(Attn: Research Department - Demetra Pitts)
701 32nd Street South
Birmingham, AL 35233 205-297-6548**

☑   *Testimony:*  **YOU ARE COMMANDED**  to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE: The office of the custodian:   **701 32nd Street South Birmingham, AL 35233** | DATE AND TIME **24th day after receipt** |
|---|---|

The deposition will be recorded by this method:     upon written questions.

☑   *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: **any and all records (on paper and/or in electronic format) as described in the attached Exhibit 'A'**

**Pertaining To:  Dillon Gage Incorporated of Dallas**

The following provisions of Fed. R. Civ. P. 45 are attached - Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **August 16, 2018**

CLERK OF COURT

_____        OR        *Gerard J. Kimmitt II/SR*
*Signature of Clerk or Deputy Clerk*                      *Attorney's Signature*

The name, address, e-mail address, and telephone number of the attorney representing (name of party), **Defendant, Certain Underwriters at Lloyd's subscribing to Policy No. EE1701590**, who issues or requests this subpoena, are:

Gerard J. Kimmitt, II
Susan H. Swanson
Holman Fenwick Willan USA LLP
5151 San Felipe, Suite 400
Houston, TX 77056
713-917-0888

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).
Order No. **23791.003**

*Order # 152996*

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:18-CV-01555

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* BBVA Compass' Research Dept

on *(date)* August 24, 2018 .

☑ I served the subpoena by delivering a copy to the named individual as follows: Tim Poe

_____ on *(date)* August 24, 2018 ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$_____ .

My fees are $_____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true.

Date: August 24, 2018

_____
*Server's signature*

Pamela Denise Williams Notary Public
*Printed name and title*

2028 29th St Ensley Birmingham, AL 35208
*Server's address*

Additional information regarding attempted service, etc.:

Order No. 23791.003

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required - and also, after a motion is transferred, the issuing court - may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
DALLAS DIVISION

| | | |
|---|---|---|
| DILLON GAGE INCORPORATED OF DALLAS | : | |
| | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. **3:18-CV-01555** |
| | : | |
| CERTAIN UNDERWRITERS AT LLOYD'S | : | |
| SUBSCRIBING TO POLICY NO. EE1701590 | : | |

## EXHIBIT A

### DEFINITIONS

1. The term "<u>records</u>" means a document or other thing constituting a piece of evidence about an event, including an account of an act or occurrence kept in writing or some other permanent form.

2. The term "<u>communications</u>" mean the transmittal of information in the form of facts, ideas, inquires, opinions, or otherwise, and includes both written correspondence (including electronic mail) and oral or verbal communications.

3. The term "<u>documents</u>" includes but is not limited to all tangible and intangible electronically stored information, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained directly or, if necessary, after translation by the responding party into a reasonably usable form.

4. The term "<u>Dillon Gage</u>" means Dillon Gage Incorporated of Dallas.

### DOCUMENTS TO BE PRODUCED

1. All records related to Compass Bank's processing of the following checks:
   a. Check No. 121; Address: Kenneth W. and Laurie W. Bramlett, 2933 Centerbury Rd., Mountain Brook, AL 35223-1203; Dated: January 29, 2018; Made payable to: Dillon Gage; Amount: $549,000.00; Routing No.: 043000711; Account No.: 50048121097025.
   b. Check No. 647; Address: Kenneth W. and Laurie W. Bramlett, 2933 Centerbury Rd., Mountain Brook, AL 35223-1203; Dated: February 13, 2018; Made payable to: Dillon Gage; Amount: $655,000.00; Routing No. 083000108; Account No.: 3121404582.

2. All records related to Compass Bank's internal investigation performed related to the two (2) checks identified above in No. 1.

3. All documents evidencing communications (including email) between Compass Bank and Kenneth W. or Laurie W. Bramlett related to the two (2) checks identified in No. 1.

4. All documents evidencing communications (including email) between Compass Bank and Dillon Gage related to the two (2) checks identified in No. 1.

5. All documents evidencing communications (including email) between Compass Bank and PNC Bank related to the two (2) checks identified in No. 1.

6. All documents evidencing communications (including email) between Compass Bank and any other person or entity related to the two (2) checks identified in No. 1.

7. Any reports or other documents issued by or directed to Compass Bank related to the two (2) checks identified in No. 1.

8. All policies and procedures of Compass Bank related to processing checks, including verification, clearing and posting funds, as applicable to processing the two (2) checks indentified in No. 1.

9. All witness statements and reports related to the two (2) checks identified above in No. 1.

Amount:  $549,000.00
Account #: ████████4841

Credit Date:  20180130
User:  taylorfittz
Location:  Dillon Gage Inc of Dallas
Item Count:  1

**BBVA** Compass

Deposit Ticket

CB000001

**KENNETH W BRAMLETT**
**LAURIE W BRAMLETT**
2933 CANTERBURY RD
MOUNTAIN BROOK AL 35223-1203

029977

121

8-71/430

1-29-18

Date

Pay to the order of _Dillon Gage_  $ 549,000.00

Five hundred and forty nine thousand 00/100 Dollars

**PNC BANK**

PNC Bank, N.A.   050
Kentucky
For

Ken Bramlett

MP

70 25 0121

Processed via Remote Deposit
Compass Bank >062001186<
4841
FOR DEPOSIT ONLY

# EXHIBIT I



Dillon Gage Inc. of Dallas
15301 Dallas Parkway, Suite 200
Addison , TX 75001 USA

| | |
|---|---|
| **Page:** | 1 of 1 |
| **Invoice Date:** | 2/12/2018 |
| **Invoice Number:** | 10-DI023852 |
| **Fiztrade Number:** | FIZ00356244 |
| **Sales Order:** | 10-SO612722 |
| **Your Reference:** | |
| **Payment Reference:** | |

## SALES INVOICE

**Sold to: 029977**

Kenneth Bramlett
2933 Canterbury rd
Mountain Brk, AL 35223 USA

**Ship to:**

Kenneth Bramlett
2933 Canterbury rd
Mountain Brk, AL 35223 USA

| Quantity | Item Number | Description | Unit Price | Total |
|---|---|---|---|---|
| 400.0000 ea | 1GE | 1 OZ AMERICAN GOLD EAGLE | 1,367.50 | 547,000.00 |
| 2.0000 ea | 5LIBN63 | $5 U.S. GOLD LIBERTY NGC63 | 455.00 | 910.00 |
| 1.0000 ea | 10LIBN64 | $10 U.S. GOLD LIBERTY NGC64 | 1,090.00 | 1,090.00 |

**Tracking Number(s):**
UPS-NDAS: 1Z7153392998219547
UPS-NDAS: 1Z7153392998545533
UPS-NDAS: 1Z7153392999987751

| | |
|---|---|
| **Currency:** | USD |
| **Subtotal:** | 549,000.00 |
| **Total Charges:** | 0.00 |
| **Tax:** | 0.00 |
| **Shipping:** | 0.00 |
| **Advance Payment:** | 0.00 |
| **Net Due:** | 549,000.00 |

Backordered merchandise will be shipped immediately upon availability.

**Questions?  Call 800-375-4653 or email DGTransport@DillonGage.com**

**Terms:**
The merchandise described above remains the property of Dillon Gage Inc. of Dallas until paid for, and is subject to our order and shall be returned to us on demand.  This merchandise, until returned to us and actually received, is at your own risk from all hazards.  No right or power is given to you to sell, pledge, hypothecate, or otherwise dispose of this merchandise until paid for in full.  In the event that Dillon Gage Inc. of Dallas should fail to receive payment when due, Dillon Gage Inc. of Dallas may, at its option, charge interest on the monies owed at its prevailing rates.  The parties acknowledge that the contract relating to this invoice was made in good faith.

v170516

DILLON GAGE 000297

# EXHIBIT J

Packaging for SO612722, a sealed inner padded packing envelope placed inside a box with space filler:





Summary of containers, box types, closing date & time:

| Shipment ID | Modified by | Close container date and time | Container ID | Container type | Weight | Tracking number |
|---|---|---|---|---|---|---|
| 10-019182 | amercado | 2/22/2018 13:30 | 10-000020058 | 7X5X3 | 9.00 | 1Z7153392997916858 |
| 10-019182 | amercado | 2/22/2018 13:32 | 10-000020060 | 7X5X3 | 9.00 | 1Z7153392999865267 |
| 10-019182 | amercado | 2/22/2018 13:35 | 10-000020062 | 7X5X3 | 9.00 | 1Z7153392998555871 |
| 10-019182 | amercado | 2/22/2018 13:38 | 10-000020065 | 7X5X3 | 9.00 | 1Z7153392997912683 |
| 10-019182 | amercado | 2/22/2018 13:40 | 10-000020068 | 7X5X3 | 7.00 | 1Z7153392998320909 |

Packaging for SO612722, a sealed inner cardboard box placed inside a second box with space filler:





Summary of containers, box types, closing date & time:

| Shipment ID | Modified by | Close container date and time | Container ID | Container type | Weight | Tracking number |
|---|---|---|---|---|---|---|
| 10-017661 | wtierney | 2/12/2018 17:27 | 10-000018317 | 7X5X3 | 12.00 | 1Z7153392998545533 |
| 10-017661 | wtierney | 2/12/2018 17:28 | 10-000018318 | 7X5X3 | 12.00 | 1Z7153392998219547 |
| 10-017661 | wtierney | 2/12/2018 17:28 | 10-000018319 | 7X5X3 | 12.00 | 1Z7153392999987751 |

DILLON GAGE 000303

Fulfillment
15301 Dallas Pkwy ste200
Addison, TX 75001
P: 972-386-2901

S
H
I
P

Kenneth Bramlett

2933 Canterbury
rdMountain Brk, AL 35223
USA

T
O

Item
1GE

Order Number
10-SO616218

Qty

Container ID:     10-000020062
Shipment ID:      10-019182

---

Fulfillment
15301 Dallas Pkwy ste200
Addison, TX 75001
P: 972-386-2901

S
H
I
P

Kenneth Bramlett

2933 Canterbury
rdMountain Brk, AL 35223
USA

T
O

Item
1GE

Order Number
10-SO616218

Qty

Container ID:     10-000020065
Shipment ID:      10-019182

DILLON GAGE 000304

**Fulfillment**
15301 Dallas Pkwy ste200
Addison, TX 75001
P: 972-386-2901

S
H
I
P

T
O

**Kenneth Bramlett**

2933 Canterbury
rdMountain Brk, AL 35223
USA

**Order Number**
10-S0616218

Qty
475.00

Item
1GE

**Container ID:**   10-000020058
**Shipment ID:**   10-019182

---

**Fulfillment**
15301 Dallas Pkwy ste200
Addison, TX 75001
P: 972-386-2901

S
H
I
P

T
O

**Kenneth Bramlett**

2933 Canterbury
rdMountain Brk, AL 35223
USA

**Order Number**
10-S0616218

Qty
475.00

Item
1GE

**Container ID:**   10-000020060
**Shipment ID:**   10-019182

DILLON GAGE 000305

Fulfillment
15301 Dallas Pkwy ste200
Addison, TX 75001
P: 972—386—2901

S
H
I   Kenneth Bramlett
P
    2933 Canterbury
T   rdMountain Brk, AL 35223
O   USA

Item          Order Number          Qty
1GE           10—S0616218           475.00   75

Container ID:     10—000020068
Shipment ID:      10—019182

DILLON GAGE 000306

Fulfillment
15301 Dallas Pkwy ste200
Addison, TX 75001
P: 972-386-2901

S
H
I
P

Kenneth Bramlett

2933 Canterbury
rdMountain Brk, AL 35223
USA

T
O

| Item | Order Number | Qty |
|------|--------------|-----|
| 5LIBN63 | 10 - S0612722 | 2.00 |
| 1GE | 10 - S0612722 | 400.00 |
| 10LIBN64 | 10 - S0612722 | 1.00 |

Container ID:  10 - 000018319
Shipment ID:   10 - 017661

SEE VEHICLE INVENTORY regarding UPS Terms, and notice of limitation of liability. Neither allowed by law, shipper authorizes UPS (or act as forwarding agent for export customs are customs, exports. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the US Export Administration Regulations. Diversion contrary to law is prohibited.  800 672 1112

DILLON GAGE 000307

Fulfillment
15301 Dallas Pkwy ste200
Addison, TX 75001
P: 972-386-2901

S
H
I
P

Kenneth Bramlett

2933 Canterbury
rdMountain Brk, AL 35223
USA

T
O

| Item | Order Number | Qty |
|------|--------------|-----|
| 1GE  | 10-S0612722  | 400.00 |

Container ID:   10-000018318
Shipment ID:    10-017661

Fulfillment
15301 Dallas Pkwy ste200
Addison, TX 75001
P: 972-386-2901

S
H
I
P

Kenneth Bramlett

2933 Canterbury
rdMountain Brk, AL 35223
USA

T
O

| Item | Order Number | Qty |
|------|--------------|-----|
| 1GE  | 10-S0612722  | 400.00 |

Container ID:   10-000018317
Shipment ID:    10-017661

DILLON GAGE 000308

# EXHIBIT K

PRE/\\IER

We confirmed that the Insured complied with the Plain Wrapper and Postal Clauses listed in the Policy in respect of the UPS shipments.

We confirmed that UPS assigned the following Tracking Numbers to the 3 (three) subject packages:

- **1Z7153392998219547**
- **1Z7153392998545533**
- **1Z7153392999987751**

We tracked the subject packages with UPS and attach a sample of the tracking details that documents the re-routing of the packages:

| Birmingham, AL, United States | 02/13/2018 | 8:28 A.M. | As requested, the UPS My Choice® delivery change was completed. / The receiver has picked up their package. |
| | 02/13/2018 | 8:25 A.M. | Delivered |
| | 02/13/2018 | 6:38 A.M. | As requested, the UPS My Choice® delivery change was completed. / The receiver arranged to pick up the package at a UPS facility. Pickup must be made within 5 business days. |
| | 02/13/2018 | 6:09 A.M. | Arrival Scan |
| | 02/13/2018 | 5:45 A.M. | Departure Scan |
| | 02/13/2018 | 4:51 A.M. | Arrival Scan |
| Louisville, KY, United States | 02/13/2018 | 4:54 A.M. | Departure Scan |
| | 02/13/2018 | 12:22 A.M. | Arrival Scan |
| DFW Airport, TX, United States | 02/12/2018 | 9:35 P.M. | Departure Scan |
| | 02/12/2018 | 8:59 P.M. | Arrival Scan |
| Dallas, TX, United States | 02/12/2018 | 8:20 P.M. | Departure Scan |
| | 02/12/2018 | 7:44 P.M. | A UPS My Choice® delivery change was requested for this package. / The receiver arranged to pick up the package at a UPS facility. |
| Dallas, TX, United States | 02/12/2018 | 7:31 P.M. | Origin Scan |
| | 02/12/2018 | 4:18 P.M. | Pickup Scan |
| United States | 02/12/2018 | 5:27 P.M. | Order Processed: Ready for UPS |

12

DILLON GAGE 000400

# EXHIBIT L

.

2/27/2018                                        Tracking: UPS

**QUICK START** ▼                                          🔍  ☰



Home (/us/en/Home.page?) > Tracking (/us/en/services/tracking.page?) > Track & Tracking History

# Tracking

| Tracking Number | Track | View Tracking History (/WebTracking/track?loc=en_US) | Other Trac |
|---|---|---|---|

# Tracking Summary

Select a tracking number to see the full tracking detail.

**1Z7153392998545533**        Add Description

                                                                    ⊘        —

**Special Instructions:**

**Signature Required** ⊙

**Scheduled Delivery:**

Scheduled delivery information is not available at this time. Please check back later.

**Last Location:**

Birmingham, AL, United States, Tuesday, 02/13/2018

**Notify me with Updates**

**Change Delivery**

**Report a Claim**

**1Z7153392998219547**        Add Description

                                                                              ⊘

DILLON GAGE 000338

2/27/2018                                   Tracking: UPS

**Special Instructions:**

Signature Required ⑦

**Scheduled Delivery:**

Scheduled delivery information is not available at
this time. Please check back later.

**Notify me with Updates**

**Last Location:**

Birmingham, AL, United States, Tuesday, 02/13/2018

**Change Delivery**

**Report a Claim**

---

**1Z7153392999987751**          **Add Description**

⊘

**Special Instructions:**

Signature Required ⑦

**Scheduled Delivery:**

Scheduled delivery information is not available at
this time. Please check back later.

**Notify me with Updates**

**Last Location:**

Birmingham, AL, United States, Tuesday, 02/13/2018

**Change Delivery**

**Report a Claim**

Tracking results provided by UPS: 02/27/2018 6:28 P.M. Eastern Time          **DILLON GAGE 000339**

**QUICK START** ▼                                    🔍  ☰

Home (/us/en/Home.page?) > Tracking (/us/en/services/tracking.page?) > Track & Tracking History

# Tracking

| Tracking Number | Track | View Tracking History (/WebTracking/track?loc=en_US) | Other Trac |
| --- | --- | --- | --- |

# Tracking Summary

Select a tracking number to see the full tracking detail.

**1Z7153392998320909**          **Add Description**

⊘      —

| Special Instructions: |
| --- |
| Signature Required ⓘ |

**Delivered On:**

Friday, 02/23/2018 at 8:50 A.M.          **Notify me with Updates**

**Left At:**

Front Desk                              **Report a Claim**

**Received By:**

BRAMLETT



**Proof of Delivery** ↗

DILLON GAGE 000340

# EXHIBIT M

**Taylor Hutson**

| | |
|---|---|
| **From:** | Brian Carnahan <bcarnahan@dillongage.com> |
| **Sent:** | Monday, February 12, 2018 5:41 PM |
| **To:** | Kenneth Bramlett |
| **Subject:** | Dillon Gage Tracking # SO612722 |

Let me know if you have any questions or problems I can help with Ken.

1Z7153392998545533
1Z7153392998219547
1Z7153392999987751

Brian Carnahan
Trading
Dillon Gage Metals
15301 Dallas Parkway, Suite 200
Addison, TX 75001
bcarnahan@dillongage.com
Ph 800-375-4653, Ext. 1104
Fax 972-490-3218



DILLON GAGE 000358

**EXHIBIT N**



# TEAM LEGAL

The Leader in Litigation Support

-HEADQUARTERS-
13100 Wortham Center Drive, Suite 140
Houston, Texas 77065
(713) 937-4242   Fax (713) 937-9995
Toll Free 800-882-3376   www.teamlegal.net

## Dillon Gage Incorporated of Dallas vs. Certain Underwriters at Lloyd's, et al.

| | |
|---|---|
| Records Regarding: | **Dillon Gage Incorporated of Dallas** |
| Records From: | **United Parcel Service, Inc.** |
| Type of Records: | **Any & All Records** |

**The custodian declined to complete the written deposition but did provide the attached certification.**

**Order No. 23791.001**

**COURT REPORTING | VIDEO DEPOSITIONS | RECORD RETRIEVAL**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
### DALLAS DIVISION

DILLON GAGE INCORPORATED OF DALLAS      :
     :
     :
**vs.**      :      CIVIL ACTION NO. 3:18-CV-01555
     :
CERTAIN UNDERWRITERS AT LLOYD'S      :
SUBSCRIBING TO POLICY NO. EE1701590      :

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Plaintiff by and through their attorney(s) of record: **Jacob B. Kring and Laura M. Fontaine**
To other party/parties by and through their attorney(s) of record: **Michael C. Wright**

You will please take notice that fourteen (14) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

(1) **United Parcel Service, Inc. (Any & All Records)**
     **c/o Corporation Service Company d/b/a CSC-Lawyers, Inc., 211 East 7th Street, Suite 620, Austin, TX 78701**

before a Notary Public for **TEAM LEGAL**
         **13100 Wortham Center Dr., Suite 140, Houston, TX 77065**
         **713-937-4242,  Fax 713-937-9995,  www.teamlegal.net**
or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rules 31 and 45, Federal Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to: **Dillon Gage Incorporated of Dallas**
and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.



**TEAM LEGAL**

*The Leader in Litigation Support*

*Gerard J. Kimmitt, II/SR*
Gerard J. Kimmitt, II
SBA # 11427500
Federal ID # 08454
Susan H. Swanson
SBA # 24038955
Federal ID # 37969
Holman Fenwick Willan USA LLP
5151 San Felipe, Suite 400
Houston, TX 77056
713-917-0888   Fax 713-953-9470
Attorneys for Defendant

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, fax, email, and/or certified mail, return receipt requested, on this day.

Dated: August 16, 2018          by _____

Order No. **23791**

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# United States District Court
## FOR THE NORTHERN DISTRICT OF
## DALLAS DIVISION

DILLON GAGE INCORPORATED OF DALLAS

vs.
                                                    Civil Action No.  3:18-CV-01555

CERTAIN UNDERWRITERS AT LLOYD'S
SUBSCRIBING TO POLICY NO. EE1701590

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

TO:      Custodian of Records for:      **United Parcel Service, Inc.**
                                         **c/o Corporation Service Company d/b/a CSC-Lawyers, Inc.**
                                         **211 East 7th Street, Suite 620**
                                         **Austin, TX 78701 404-853-1542**

☑   *Testimony:*  **YOU ARE COMMANDED**  to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE:                          |                                | DATE AND TIME |
|---------------------------------|--------------------------------|---------------|
| The office of the custodian:    | **55 Glenlake Parkway NE**     |               |
|                                 | **Atlanta, GA 30328**          | Instanter     |

        The deposition will be recorded by this method:      upon written questions.

☑   *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: **any and all records (on paper and/or in electronic format) as described in the attached Exhibit 'A'**

**Pertaining To:  Dillon Gage Incorporated of Dallas**
        The following provisions of Fed. R. Civ. P. 45 are attached - Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **August 16, 2018**

                CLERK OF COURT
                                            OR      *Gerard J. Kimmitt, II/SK*

_____                    _____
        *Signature of Clerk or Deputy Clerk*                *Attorney's Signature*

The name, address, e-mail address, and telephone number of the attorney representing (name of party), **Defendant. Certain Underwriters at Lloyd's subscribing to Policy No. EE1701590**, who issues or requests this subpoena, are:

**Gerard J. Kimmitt, II**
**Susan H. Swanson**
**Holman Fenwick Willan USA LLP**
**5151 San Felipe, Suite 400**
**Houston, TX 77056**
**713-917-0888**

                **Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).
Order No. **23791.001**

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:18-CV-01555

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* United Parcel Service, Inc

on *(date)* August 24th, 2018

☒ I served the subpoena by delivering a copy to the named individual as follows: Vanessa Hernandez
C/o Corporate Service Company 211 E. 7th Street Suite 620
Austin, Tx 78701                on *(date)* August 24th, 2018 ; or

☐ I returned the subpoena unexecuted because: _____

_____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: August 24, 2018

_____
*Server's signature*

Stephen Caruso  Notary Public
*Printed name and title*

PO Box 40021, Austin, Tx 78704
*Server's address*

Additional information regarding attempted service, etc.:

Order No. 23791.001

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

    **(i)** is a party or a party's officer; or

    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:

  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**

  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;

    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    **(iv)** subjects a person to undue burden.

  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:

  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**

  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and

    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required - and also, after a motion is transferred, the issuing court - may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Order No. **23791.001**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
DALLAS DIVISION

DILLON GAGE INCORPORATED OF DALLAS      :

     :

vs.      :      CIVIL ACTION NO.  3:18-CV-01555

     :

CERTAIN UNDERWRITERS AT LLOYD'S      :
SUBSCRIBING TO POLICY NO. EE1701590      :

## EXHIBIT A

## DEFINITIONS

1. The term "records" means a document or other thing constituting a piece of evidence about an event, including an account of an act or occurrence kept in writing or some other permanent form.

2. The term "communications" mean the transmittal of information in the form of facts, ideas, inquires, opinions, or otherwise, and includes both written correspondence (including electronic mail) and oral or verbal communications.

3. The term "documents" includes but is not limited to all tangible and intangible electronically stored information, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained directly or, if necessary, after translation by the responding party into a reasonably usable form.

4. The term "Dillon Gage" means Dillon Gage Incorporated of Dallas.

## DOCUMENTS TO BE PRODUCED

1. All records related to packages shipped by Dillon Gage via the following three (3) tracking numbers on/about February 12, 2018:
   a. 1Z7153392998219547
   b. 1Z7153392998545533
   c. 1Z7153392999987751

2. All records related to packages shipped by Dillon Gage via the following five (5) tracking numbers on/about February 22, 2018:
   a. 1Z7153392997912683
   b. 1Z7153392997916858
   c. 1Z7153392998320909
   d. 1Z7153392998555871
   e. 1Z7153392999865267

3. All records related to the delivery change requested and made for the three (3) packages with the following tracking numbers:
   a. 1Z7153392998219547
   b. 1Z7153392998545533
   c. 1Z7153392999987751

4. All records related to the delivery change requested and made for the five (5) packages with the following tracking numbers:
   a. 1Z7153392997912683
   b. 1Z7153392997916858
   c. 1Z7153392998320909
   d. 1Z7153392998555871
   e. 1Z71533392999865267

5. All records related to the pick-up of the three (3) packages from the UPS facility in Birmingham, Alabama on February 13, 2018, including any video or other recording made and/or collected by UPS related to the following tracking numbers:
   a. 1Z7153392998219547
   b. 1Z7153392998545533
   c. 1Z7153392999987751

6. All records related to the pick-up of the five (5) packages from the UPS facility in Birmingham, Alabama on February 23, 2018, including any video or other recording made and/or collected by UPS related to the following tracking numbers:
   a. 1Z7153392997912683
   b. 1Z7153392997916858
   c. 1Z7153392998320909
   d. 1Z7153392998555871
      1Z7153392999865267

7. All witness statements and reports related to the tracking numbers referenced above in Nos. 1 (a-c) and 2 (a-e).

8. A copy of all UPS policies, procedures and features related to membership in UPS My Choice, including any information differentiating between membership levels.

9. A copy of all UPS policies and procedures related to shipping and/or deliveries made via UPS My Choice.

10. A copy of all UPS policies and procedures related to making delivery changes to packages shipped via UPS My Choice, including the ability to authorize only specific persons to make delivery changes.

11. A copy of any document(s) or other communication evidencing specific authorization to Dillon Gage employees or personnel to make delivery changes to packages sent under Dillon Gage's UPS account.

12. A copy of all UPS policies and procedures related to delivery or pick-up of packages shipped via UPS My Choice.



## CERTIFICATION

I am an employee in the Legal Department of United Parcel Service, Inc. (UPS). Through my employment, I am familiar with the business practices of UPS, the records created and maintained by UPS, and how UPS searches for and collects records in response to subpoenas and other requests for records. I certify the following regarding the records regarding the subpoena issued by Defendant Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590 in the matter identified as *Dillon Gage Incorporated of Dallas v. Certain Underwriters at Lloyd's Subscribing to Policy No. EE1701590*, Civil Action No.: 3-18-CV-01555, dated August 16, 2018:

1.    The records are true and correct copies of UPS records.

2.    The records were made at or near the time of the occurrence(s) reflected in the records.

3.    The records were made by a person (or persons) with knowledge, or from information transmitted by a person (or persons) with knowledge, of the matters contained in the records.

4.    It was a regular practice of UPS to make and maintain the records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  ~~November~~ / 30 / 2018



Arlette D. Willis
Supervisor, Service of Process
United Parcel Service, Inc.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal on  November / 30 / 2018 .

Michelle L. Mira
Notary Public

My commission expires: April 19, 2019
Fulton County, Georgia

| 1Z Track Num | Shipper Num | CC | Delv SLIC | Delivery Date | Delivery Time | PKG Result Code |
|---|---|---|---|---|---|---|
| 1Z715339299791268 | 715339 | US | 3523 | 2018-02-23 | 08.50.16 | DEL |
| 1Z715339299791685 | 715339 | US | 3523 | 2018-02-23 | 08.50.16 | DEL |
| 1Z715339299821954 | 715339 | US | 3523 | 2018-02-13 | 08.25.24 | DEL |
| 1Z715339299832090 | 715339 | US | 3523 | 2018-02-23 | 08.50.16 | DEL |
| 1Z715339299854553 | 715339 | US | 3523 | 2018-02-13 | 08.25.24 | DEL |
| 1Z715339299855587 | 715339 | US | 3523 | 2018-02-23 | 08.50.16 | DEL |
| 1Z715339299986526 | 715339 | US | 3523 | 2018-02-23 | 08.50.16 | DEL |
| 1Z715339299998775 | 715339 | US | 3523 | 2018-02-13 | 08.25.24 | DEL |

| Activity Status Code | Consignee Name | Street Number | Street Prefix Name | Street Name | ST Suffix | ST Type | BDG FLR Num |
|---|---|---|---|---|---|---|---|
| KB | | 2933 | | CANTERBURY | SW | RD | |
| KB | | 2933 | | CANTERBURY | SW | RD | |
| KB | | 2933 | | CANTERBURY | SW | RD | |
| KB | | 2933 | | CANTERBURY | SW | RD | |
| KB | | 2933 | | CANTERBURY | SW | RD | |
| KB | | 2933 | | CANTERBURY | SW | RD | |
| KB | | 2933 | | CANTERBURY | SW | RD | |
| KB | | 2933 | | CANTERBURY | SW | RD | |

| Suite Num Name | City | State | Postal Code | Package Release Location | Clarified Signature | PKG WGT ( |
|---|---|---|---|---|---|---|
| | BIRMINGHAM | AL | 35223 | FRONT DESK | BRAMLETT | 0 |
| | BIRMINGHAM | AL | 35223 | FRONT DESK | BRAMLETT | 0 |
| | BIRMINGHAM | AL | 35223 | FRONT DESK | BRAMLETT | 0 |
| | BIRMINGHAM | AL | 35223 | FRONT DESK | BRAMLETT | 0 |
| | BIRMINGHAM | AL | 35223 | FRONT DESK | BRAMLETT | 0 |
| | BIRMINGHAM | AL | 35223 | FRONT DESK | BRAMLETT | 0 |
| | BIRMINGHAM | AL | 35223 | FRONT DESK | BRAMLETT | 0 |
| | BIRMINGHAM | AL | 35223 | FRONT DESK | BRAMLETT | 0 |

Employee Num
COUNTER
COUNTER
COUNTER
COUNTER
COUNTER
COUNTER
COUNTER
COUNTER







# EXHIBIT O

**Taylor Hutson**

| | |
|---|---|
| **From:** | Brian Carnahan |
| **Sent:** | Friday, March 9, 2018 3:52 PM |
| **To:** | Scott Dagen |
| **Subject:** | FW: Order |

**From:** Kenneth Bramlett [mailto:kenbramlett99@gmail.com]
**Sent:** Tuesday, February 13, 2018 12:36 PM
**To:** Brian Carnahan <bcarnahan@dillongage.com>
**Subject:** Order

Hey good afternoon, Gave you a call today .Wax told you left the office early. Just wanted to place another order since I am so pleased with my first order. I will be sending you guys my payment today. Thanks.

1

**DILLON GAGE 000374**

# EXHIBIT P

*062001186*
02/28/2018
0000000000000000

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON (5)

KENNETH W BRAMLETT
LAURIE W BRAMLETT
2933 CANTERBURY RD
BIRMINGHAM, AL 36223-1203

029977

02-13-18

647

21-10/830
724

Pay to the
Order of    Dillon Gage                    $ 655,000.00

Six hundred and fifty five thousand 00/100   Dollars

PNCBANK

PNC Bank, N.A.    050

For _____

⑆083000108⑆ 3121404582⑈ 0647

⑆083000108⑆3121404582⑈0647        ⑈0065500000⑆

DILLON GAGE 000313

Processed via Remote Deposit
Compass Bank >062001186<
6708694841
FOR DEPOSIT ONLY

↓ Do not endorse or write below this line. ↓

*>062001186<*
>11303030547< 02/14/2018
0000000000000
00000002487134

031000053 02/14/2018
00000007485946
0610000146 02/01/2018
000001969061B2
1130107547 02/01/2018
000000B78607353

DILLON GAGE 000314

# EXHIBIT Q

KENNETH W BRAMLETT
LAURIE W BRAMLETT
2933 CANTERBURY RD
BIRMINGHAM, AL 36223-1203

029977

647
21-10/830
724

02-13-18

Date

CHECK

Pay to the
Order of **Dillon Gage**                                    $ 655,000.00

Six hundred and fifty five thousand 00/100 Dollars

**PNCBANK**

PNC Bank, N.A.   050

For

⑆ .58 2⑈   0647

Processed via Remote Deposit
Compass Bank >062001186<
4841
FOR DEPOSIT ONLY

CB000015

Amount:  $816,479.58
Account #:  ████4841
Credit Date:  20180214
User:  taylorfittz
Location:  Dillon Gage Inc of Dallas
Item Count:  10

**BBVA** Compass

Deposit Ticket



CB000016

# EXHIBIT R

(BBVA Compass draft as of 3/8/2018)

Dillon Gage ("DG") -- $655,000.00 Check Deposited at Compass Bank ("Compass") by Remote Capture

- A check dated 2/13/18 was purportedly drawn on a personal account (the "Customer") at PNC Bank for $655,000 payable to Dillon Gage ("DG").

- The check was received from DG by Compass in remote deposit capture for DG on 2/14/18 as part of a deposit totaling $816,479.58.

- On 2/14/18, Compass transmitted the image and associated data to Wells Fargo as part of a customary collection process and Compass received provisional credit on or about 2/15/18. The image was then transmitted to PNC via customary methods. PNC retained a right to pursue chargeback/warranty claim according to applicable clearinghouse rules. The Electronic Check Clearing House Organization operating rules permit PNC to make a claim within 15 business days of receipt of an affidavit from its customer so long as its customer delivers such affidavit within 60 days of the date of the statement reflecting the unauthorized item.

- On or about 2/14/18, DG was given provisional credit in good faith by Compass.

- The Customer provided an affidavit of forgery to PNC dated 2/26/18. The affidavit states that the Customer did not sign the check, authorize the signing of the check or ratify the signature. The affidavit was previously provided to you.

- As of 2/26/18, it does not appear that the Customer (the purported drawer of the check) had received any goods from DG. The check was purportedly in payment for the purchase of precious metals or other goods. It is unclear how DG obtained the check on or about 2/14/18, from whom it obtained the check or to whom DG delivered precious metals or other goods in connection with receipt of the check.

- On 3/1/18, Compass received a large dollar notification from its vendor indicating that the item was unauthorized and that PNC would be sending it back. The consequence is that PNC would receive a credit to its account and there would be a corresponding debit to Compass's account.

- DG was notified by Compass's relationship support specialist on 3/1/18 regarding the issue and the lack of authorization.

- Compass's account was charged by the Federal Reserve Bank of Atlanta for the amount of the item on 3/1/2018.

- Accordingly, Compass revoked the credit previously, and provisionally, given for the item and debited DG's account in the amount of the check. Compass has acted in accordance with

Compass's indemnity and setoff rights as well as other provisions of its agreements and applicable law.

- On 3/8/18 Compass received notice that an additional item purportedly issued by the same Customer to DG would be returned to Compass for the same reasons.

Note:  Compass Bank reserves all rights and remedies with regard to both items and all other matters.

CB000153

# EXHIBIT S



| | |
|---|---|
| **Page:** | 1 of 1 |
| **Invoice Date:** | 2/22/2018 |
| **Invoice Number:** | 10-DI025939 |
| **Fiztrade Number:** | FIZ00361278 |
| **Sales Order:** | 10-SO616218 |
| **Your Reference:** | |
| **Payment Reference:** | |

Dillon Gage Inc. of Dallas
15301 Dallas Parkway, Suite 200
Addison , TX 75001 USA

## SALES INVOICE

**Sold to: 029977**

Kenneth Bramlett
2933 Canterbury rd
Mountain Brk, AL 35223 USA

**Ship to:**

Kenneth Bramlett
2933 Canterbury rd
Mountain Brk, AL 35223 USA

| Quantity | Item Number | Description | Unit Price | Total |
|---|---|---|---|---|
| 475.0000 ea | 1GE | 1 OZ AMERICAN GOLD EAGLE | 1,378.94 | 654,996.50 |

**Tracking Number(s):**
UPS-NDAS: 1Z7153392997912683
UPS-NDAS: 1Z7153392997916858
UPS-NDAS: 1Z7153392998320909
UPS-NDAS: 1Z7153392998555871
UPS-NDAS: 1Z7153392999865267

| | |
|---|---|
| **Currency:** | USD |
| **Subtotal:** | 654,996.50 |
| **Total Charges:** | 0.00 |
| **Tax:** | 0.00 |
| **Shipping:** | 0.00 |
| **Advance Payment:** | 0.00 |
| **Net Due:** | 654,996.50 |

Backordered merchandise will be shipped immediately upon availability.

**Questions?  Call 800-375-4653 or email DGTransport@DillonGage.com**

**Terms:**
The merchandise described above remains the property of Dillon Gage Inc. of Dallas until paid for, and is subject to our order and shall be returned to us on demand.  This merchandise, until returned to us and actually received, is at your own risk from all hazards.  No right or power is given to you to sell, pledge, hypothecate, or otherwise dispose of this merchandise until paid for in full.  In the event that Dillon Gage Inc. of Dallas should fail to receive payment when due, Dillon Gage Inc. of Dallas may, at its option, charge interest on the monies owed at its prevailing rates.  The parties acknowledge that the contract relating to this invoice was made in good faith.

v170516

**DILLON GAGE 000298**

**EXHIBIT 1**

PRE<span>M</span>IER

| LOCATION | DATE | LOCAL TIME | ACTIVITY |
|---|---|---|---|
| BIRMINGHAM, AL, US | 02/23/2018 | 8:50 A.M. | Delivered |
| | 02/23/2018 | 7:29 A.M. | As requested, the UPS My Choice® delivery change was completed. / The receiver arranged to pick up the package at a UPS facility. Pickup must be made within 5 business days. |
| | 02/23/2018 | 6:58 A.M. | Destination Scan |
| | 02/23/2018 | 6:11 A.M. | Arrival Scan |
| | 02/23/2018 | 5:47 A.M. | Departure Scan |
| | 02/23/2018 | 5:07 A.M. | Arrival Scan |
| Louisville, KY, United States | 02/23/2018 | 4:53 A.M. | Departure Scan |
| | 02/22/2018 | 8:50 P.M. | A UPS My Choice® delivery change was requested for this package. / The receiver will pick up the package at a UPS facility. |
| Dallas, TX, United States | 02/22/2018 | 7:40 P.M. | Origin Scan |
| | 02/22/2018 | 4:24 P.M. | Pickup Scan |
| United States | 02/22/2018 | 1:39 P.M. | Order Processed: Ready for UPS |

Based on the UPS tracking information above, it is clear that the imposters were closely monitoring the movement of the packages closely and arrived at the UPS facility in Birmingham less than 90 minutes after they were scanned to collect the packages.

During our meeting with the Insured, Dillon Gage executives confirmed that their UPS account is "blocked" and the only persons authorized to re-route a package are select Dillon Gage employees.    We confirmed that Dillon Gage did not authorize the re-routing of the subject packages.

We previously contacted the Birmingham, Alabama UPS facility where the packages were re-routed to and collected.  We again asked to speak with the employee who was working when the packages were collected and requested a copy of the CCTV footage. The UPS facility advised that the Mountain Brook Police Department obtained a copy of the CCTV footage and a subpoena would be required for our office to obtain a copy.

As previously outlined in our Report No. 1 for the first incident, we researched Kenneth Bramlett on the Internet and confirmed that the picture on the Driver's License provided to Dillon Gage is not Kenneth Bramlett, the orthopedic surgeon in Mountain Brook, Alabama.

11

DILLON GAGE 000417

# EXHIBIT U

3/7/2018                                Tracking: UPS          *from Robert*
                                                              *Wednesday 3/7/18* ⊗

1/1

**Severe Weather Impacting Areas of Pennsylvania  ...More (/us/en/service-alerts.page?id=alert1)**

*tracking for packages*
*shipped 2/22/18*

QUICK START  ▼                                                🔍  ☰

Home (/us/en/Home.page?) >  Tracking (/us/en/services/tracking.page?) >  Track & Tracking History

# Tracking

| Tracking Number | Track | View Tracking History (/WebTracking/track?loc=en_US) | Other Trac |
|---|---|---|---|

# Tracking Summary

Select a tracking number to see the full tracking detail.

**1Z7153392997916858**          **Add Description**

Delivered ⊘

| Special Instructions: |
|---|
| Signature Required ⓘ |

**Delivered On:**

Friday, 02/23/2018 at 8:50 A.M.                **Notify me with Updates**

**Left At:**

Front Desk                                      **Report a Claim**

**Received By:**

BRAMLETT

**DILLON GAGE 000320**                1/5

3/7/2018 .                                              Tracking: UPS

**Proof of Delivery** [↗]

**1Z7153392999865267**      **Add Description**

Delivered ⊘

Special Instructions:

Signature Required ⓘ

**Delivered On:**

Friday,  02/23/2018 at 8:50 A.M.

**Left At:**                              **Notify me with Updates**

Front Desk
                                        **Report a Claim**
**Received By:**

BRAMLETT

**Proof of Delivery** [↗]

**1Z7153392998555871**      **Add Description**

Delivered ⊘

Special Instructions:

                              **DILLON GAGE 000321**

3/7/2018 .                                    Tracking: UPS

Signature Required ⓘ

**Delivered On:**

Friday, 02/23/2018 at 8:50 A.M.              **Notify me with Updates**

**Left At:**

Front Desk                                   **Report a Claim**

**Received By:**

BRAMLETT

**Proof of Delivery** ↗

---

**1Z7153392997912683**      **Add Description**

                                             Delivered ⊘

| Special Instructions: |
| --- |
| Signature Required ⓘ |

**Delivered On:**

Friday, 02/23/2018 at 8:50 A.M.              **Notify me with Updates**

**Left At:**

Front Desk                                   **Report a Claim**

**Received By:**

BRAMLETT

**Proof of Delivery** ↗

DILLON GAGE 000322

3/7/2018                                Tracking: UPS

**1Z7153392998320909**        **Add Description**

Delivered ✓

| Special Instructions: |
| :--- |
| Signature Required ⑦ |

**Delivered On:**

Friday, 02/23/2018 at 8:50 A.M.              **Notify me with Updates**

**Left At:**

Front Desk                                **Report a Claim**

**Received By:**

BRAMLETT

**Proof of Delivery** ⬏

Tracking results provided by UPS: 03/07/2018 10:49 A.M. Eastern Time

⑦ Customer Service                                                    +

This Site                                                            +

Company Info                                                         +

Other UPS Sites                                                      +

Connect with Us                                                      +

                                                    **DILLON GAGE 000323**

3/7/2018 .                                    Tracking: UPS

1/ 1                                                                    

**Severe Weather Impacting Areas of Pennsylvania  ...More (/us/en/service-alerts.page?id=alert1)**

**QUICK START** ▼                                    🔍  ☰

Home (/us/en/Home.page?) > Tracking (/us/en/services/tracking.page?) > Track & Tracking History

# Tracking



| Tracking Number | Track | View Tracking History (/WebTracking/track?loc=en_US) | Other Trac |
|---|---|---|---|

**1Z7153392997916858**        **Add Description**

Delivered ⊘

Special Instructions:

Signature Required ⊙

**Delivered On:**

Friday,  02/23/2018 at 8:50 A.M.          **Notify me with Updates**

**Left At:**

Front Desk                                **Report a Claim**

**Received By:**

BRAMLETT                                            DILLON GAGE 000324

https://wwwapps.ups.com/WebTracking/summary                                    1/3

3/7/2018                                                    Tracking: UPS



**Proof of Delivery** ⬈

▼ Shipment Progress                                    What's This? ⓘ

| LOCATION | DATE | LOCAL TIME | ACTIVITY |
|---|---|---|---|
| BIRMINGHAM, AL, US | 02/23/2018 | 8:50 A.M. | Delivered |
| | 02/23/2018 | 7:57 A.M. | As requested, the UPS My Choice® delivery change was comp |
| | 02/23/2018 | 6:58 A.M. | Destination Scan |
| | 02/23/2018 | 6:11 A.M. | Arrival Scan |
| | 02/23/2018 | 5:47 A.M. | Departure Scan |
| | 02/23/2018 | 5:07 A.M. | Arrival Scan |
| Louisville, KY, United States | 02/23/2018 | 4:53 A.M. | Departure Scan |
| | 02/22/2018 | 8:53 P.M. | A UPS My Choice® delivery change was requested for this pac |
| Dallas, TX, United States | 02/22/2018 | 7:40 P.M. | Origin Scan |
| | 02/22/2018 | 4:24 P.M. | Pickup Scan |
| United States | 02/22/2018 | 1:30 P.M. | Order Processed: Ready for UPS |

▼ Additional Information

| | |
|---|---|
| **Reference Number(s):** | 10-000020058 |
| | 10-SO616218 |
| **Shipment Category:** | Package |
| **Shipped/Billed On:** | 02/22/2018 |
| **Weight:** | 9.00 lbs |

ⓘ Customer Service                                        **+**

DILLON GAGE 000325

3/7/2018                                        Tracking: UPS

1/ 1                                                                    

**Severe Weather Impacting Areas of Pennsylvania  ...More (/us/en/service-alerts.page?id=alert1)**

**QUICK START** ▼                                        🔍  ≡

Home (/us/en/Home.page?) > Tracking (/us/en/services/tracking.page?) > Track & Tracking History

# Tracking



| Tracking Number | Track | View Tracking History (/WebTracking/track?loc=en_US) | Other Trac |
|---|---|---|---|

**1Z7153392999865267**     **Add Description**

---

Delivered ⊘

Special Instructions:

Signature Required ⦵

**Delivered On:**

Friday, 02/23/2018 at 8:50 A.M.            **Notify me with Updates**

**Left At:**

Front Desk                                **Report a Claim**

**Received By:**

BRAMLETT                                        DILLON GAGE 000326

3/7/2018                                      Tracking: UPS



**Proof of Delivery** [↗]

▼ Shipment Progress                                      What's This? ⓘ

| LOCATION | DATE | LOCAL TIME | ACTIVITY |
| --- | --- | --- | --- |
| BIRMINGHAM, AL, US | 02/23/2018 | 8:50 A.M. | Delivered |
| | 02/23/2018 | 8:24 A.M. | As requested, the UPS My Choice® delivery change was comp |
| | 02/23/2018 | 6:58 A.M. | Destination Scan |
| | 02/23/2018 | 6:11 A.M. | Arrival Scan |
| | 02/23/2018 | 5:47 A.M. | Departure Scan |
| | 02/23/2018 | 5:07 A.M. | Arrival Scan |
| Louisville, KY, United States | 02/23/2018 | 4:53 A.M. | Departure Scan |
| | 02/22/2018 | 8:54 P.M. | A UPS My Choice® delivery change was requested for this pac |
| Dallas, TX, United States | 02/22/2018 | 7:40 P.M. | Origin Scan |
| | 02/22/2018 | 4:24 P.M. | Pickup Scan |
| United States | 02/22/2018 | 1:32 P.M. | Order Processed: Ready for UPS |

▼ Additional Information

| | |
| --- | --- |
| **Reference Number(s):** | 10-000020060 |
| | 10-SO616218 |
| **Shipment Category:** | Package |
| **Shipped/Billed On:** | 02/22/2018 |
| **Weight:** | 9.00 lbs |

ⓘ Customer Service                                      ✛

DILLON GAGE 000327

3/7/2018                                          Tracking: UPS

1/ 1                                                                    

**Severe Weather Impacting Areas of Pennsylvania  ...More (/us/en/service-alerts.page?id=alert1)**

QUICK START  ▼                                          🔍  ☰

Home (/us/en/Home.page?) > Tracking (/us/en/services/tracking.page?) > Track & Tracking History

# Tracking

| Tracking Number | Track | View Tracking History (/WebTracking/track?loc=en_US) | Other Trac |
|---|---|---|---|

**1Z7153392998555871**      **Add Description**



Delivered ⊘

Special Instructions:

Signature Required ⓘ

**Delivered On:**

Friday,  02/23/2018 at 8:50 A.M.                    **Notify me with Updates**

**Left At:**

Front Desk                                          **Report a Claim**

**Received By:**

BRAMLETT                                            DILLON GAGE 000328

3/7/2018 .                                          Tracking: UPS



**Proof of Delivery** ↗

▼ Shipment Progress                                    What's This? ⓘ

| LOCATION | DATE | LOCAL TIME | ACTIVITY |
|---|---|---|---|
| BIRMINGHAM, AL, US | 02/23/2018 | 8:50 A.M. | Delivered |
| | 02/23/2018 | 7:55 A.M. | As requested, the UPS My Choice® delivery change was comp |
| | 02/23/2018 | 6:58 A.M. | Destination Scan |
| | 02/23/2018 | 6:11 A.M. | Arrival Scan |
| | 02/23/2018 | 5:47 A.M. | Departure Scan |
| | 02/23/2018 | 5:07 A.M. | Arrival Scan |
| Louisville, KY, United States | 02/23/2018 | 4:53 A.M. | Departure Scan |
| | 02/22/2018 | 8:53 P.M. | A UPS My Choice® delivery change was requested for this pac |
| Dallas, TX, United States | 02/22/2018 | 7:40 P.M. | Origin Scan |
| | 02/22/2018 | 4:24 P.M. | Pickup Scan |
| United States | 02/22/2018 | 1:36 P.M. | Order Processed: Ready for UPS |

▼ Additional Information

| | |
|---|---|
| **Reference Number(s):** | 10-000020062 |
| | 10-SO616218 |
| **Shipment Category:** | Package |
| **Shipped/Billed On:** | 02/22/2018 |
| **Weight:** | 9.00 lbs |

ⓘ Customer Service                                        ✚

DILLON GAGE 000329

3/7/2018                                   Tracking: UPS

1/ 1                                                            

**Severe Weather Impacting Areas of Pennsylvania  ...More (/us/en/service-alerts.page?id=alert1)**

**QUICK START** ▼                                    🔍   ☰

Home (/us/en/Home.page?) > Tracking (/us/en/services/tracking.page?) > Track & Tracking History

# Tracking

| Tracking Number | Track | View Tracking History (/WebTracking/track?loc=en_US) | Other Trac |
| --- | --- | --- | --- |

**1Z7153392997912683**        **Add Description**

Delivered ⊘

| Special Instructions: |
| --- |
| Signature Required ⓘ |

**Delivered On:**

Friday,  02/23/2018 at 8:50 A.M.                    **Notify me with Updates**

**Left At:**

Front Desk                                          **Report a Claim**

**Received By:**

BRAMLETT                                      DILLON GAGE 000330

3/7/2018                                      Tracking: UPS



**Proof of Delivery** [↗]

▼ Shipment Progress                                            What's This? ⑦

| LOCATION | DATE | LOCAL TIME | ACTIVITY |
|---|---|---|---|
| BIRMINGHAM, AL, US | 02/23/2018 | 8:50 A.M. | Delivered |
| | 02/23/2018 | 7:29 A.M. | As requested, the UPS My Choice® delivery change was comp |
| | 02/23/2018 | 6:58 A.M. | Destination Scan |
| | 02/23/2018 | 6:11 A.M. | Arrival Scan |
| | 02/23/2018 | 5:47 A.M. | Departure Scan |
| | 02/23/2018 | 5:07 A.M. | Arrival Scan |
| Louisville, KY, United States | 02/23/2018 | 4:53 A.M. | Departure Scan |
| | 02/22/2018 | 8:50 P.M. | A UPS My Choice® delivery change was requested for this pac |
| Dallas, TX, United States | 02/22/2018 | 7:40 P.M. | Origin Scan |
| | 02/22/2018 | 4:24 P.M. | Pickup Scan |
| United States | 02/22/2018 | 1:39 P.M. | Order Processed: Ready for UPS |

▼ Additional Information

| Reference Number(s): | 10-000020065 |
|---|---|
| | 10-SO616218 |
| Shipment Category: | Package |
| Shipped/Billed On: | 02/22/2018 |
| Weight: | 9.00 lbs |

⑦ Customer Service                                                  ＋

**DILLON GAGE 000331**



3/7/2018                                    Tracking: UPS

1/ 1                                                                    

**Severe Weather Impacting Areas of Pennsylvania  ...More (/us/en/service-alerts.page?id=alert1)**

QUICK START  ▼                                  🔍  ☰

Home (/us/en/Home.page?) > Tracking (/us/en/services/tracking.page?) > Track & Tracking History

# Tracking

| Tracking Number | Track | View Tracking History (/WebTracking/track?loc=en_US) | Other Trac |
|---|---|---|---|

**1Z7153392998320909**          **Add Description**



                                                        Delivered ⊘

Special Instructions:

Signature Required ⓘ

**Delivered On:**

Friday,  02/23/2018 at 8:50 A.M.              **Notify me with Updates**

**Left At:**

Front Desk                                    **Report a Claim**

**Received By:**

BRAMLETT                                       DILLON GAGE 000332

3/7/2018                                           Tracking: UPS



**Proof of Delivery** [↗]

▼ Shipment Progress                                          What's This? ⊙

| LOCATION | DATE | LOCAL TIME | ACTIVITY |
|----------|------|------------|----------|
| BIRMINGHAM, AL, US | 02/23/2018 | 8:50 A.M. | Delivered |
| | 02/23/2018 | 8:47 A.M. | As requested, the UPS My Choice® delivery change was comp |
| | 02/23/2018 | 6:58 A.M. | Destination Scan |
| | 02/23/2018 | 6:11 A.M. | Arrival Scan |
| | 02/23/2018 | 5:47 A.M. | Departure Scan |
| | 02/23/2018 | 5:07 A.M. | Arrival Scan |
| Louisville, KY, United States | 02/23/2018 | 4:53 A.M. | Departure Scan |
| | 02/22/2018 | 8:51 P.M. | A UPS My Choice® delivery change was requested for this pac |
| Dallas, TX, United States | 02/22/2018 | 7:40 P.M. | Origin Scan |
| | 02/22/2018 | 4:24 P.M. | Pickup Scan |
| United States | 02/22/2018 | 1:41 P.M. | Order Processed: Ready for UPS |

▼ Additional Information

| | |
|---|---|
| **Reference Number(s):** | 10-000020068 |
| | 10-SO616218 |
| **Shipment Category:** | Package |
| **Shipped/Billed On:** | 02/22/2018 |
| **Weight:** | 7.00 lbs |

▶

⊙ Customer Service                                                    +

**DILLON GAGE 000333**

# EXHIBIT V

## Affidavit

**PNC BANK**

*Check the type of claim that is being made:*

☒ Forged/Unauthorized Maker Signature
☐ Forged/Unauthorized Endorsement

☐ Counterfeit Check
☐ Unauthorized Remotely Generated Check

State/Commonwealth/District of **Alabama**
County/Parish **Jefferson**
I, **Laurie Bramlett**, being duly sworn according to law, state that I have examined:

| Check # | Check date | Amount |
|---|---|---|
| 647 | | $ 655,000.00 |
| Payee and/or endorsed by DILLON GAGE | | LAURIE Maker KENNETH BRAMLETT |
| (Use a separate affidavit for each check.) | | |

drawn on PNC Bank, N.A. and state that the signature of my name or other name was not made by me or authorized or ratified by me and the withdrawal, deposit, transfer or receipt of funds of said item was authorized and was made without my knowledge or consent.

I further state that the withdrawal, deposit, transfer or receipt of funds was made by some person other than myself, and that I have in no manner whatsoever received any proceeds or benefit from the payment of the foregoing check or item. I have no knowledge or information concerning the origination, endorsement or negotiation of such check or item except as follows (if none, state "none").

I will, if necessary, voluntarily assist PNC Bank and law enforcement in any investigation and participate as a witness in any civil or criminal actions relating to this matter.

I further state that this affidavit may be furnished to third parties, including other banks in the check collection process and/or the person that created/signed the unauthorized as part of its investigation.

I understand that false statements in this affidavit may be punishable under criminal law.

Mailing Address and Phone Number of Authorized Signer:

Name **Laurie Bramlett**
Street **2933 Canterbury**
City **Birmingham**   State **AL**   Zip Code **35223**
Tel:

*Laurie Bramlett*
Signature of Authorized Signer

*Laurie Bramlett*
Print Name (and Title, if applicable)

SUBSCRIBED AND SWORN before me on this **26th**
day of **February**, **2018**.
Notary Public My Commission expires **10/20/19**
SEAL.

Name of Business (if applicable)

*Please mail this original & any other supporting documents to:*
PNC BANK, N.A.
EFG K1-K201-06-1
101 South Fifth Street
Louisville, KY 40202

[Notary Seal: CHRISTOPHER HESLER / NOTARY PUBLIC / ALABAMA STATE AT LARGE]

RDASMS07A-0218

DILLON GAGE 000310

# EXHIBIT W

## Advice for Unpaid Deposited Items

For Account No ████ 4841

03/01/2018

0

The following items have been returned

We are charging your account for items
returned unpaid as listed below.
Applicable service fees will appear on
your monthly analysis statement.

# Items:     1
Total:       655,000.00

(*) Indicates Redeposited Item

DILLON GAGE INCORPORATED OF DALLAS
15301 DALLAS PKWY STE 200
ADDISON, TX 75001-4668

COMPASS BANK
RETURNS DEPARTMENT      ***(TX21)***
PO BOX 10566
BIRMINGHAM AL 35296

| AMOUNT | SEQUENCE | ITEM ACCOUNT | CHECK# | RETURN REASON: | ITEM R/T | MAKER: |
|--------|----------|--------------|--------|----------------|----------|--------|
| 655000.00 | 0067880353 | ████ 1582 | 0000000000 | FORGED COUNTERFEIT WB | 08300010 | |

1/1

13

CB000024

*062001186*
02/28/2018
0000000000000000

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

RETURN REASON (5)

↑

**KENNETH W BRAMLETT**
**LAURIE W BRAMLETT**
2933 CANTERBURY RD
BIRMINGHAM, AL 36223-1203

029977

647

21-10/830
724

02-13-18

Date   ☑CHECK xxxx

Pay to the
Order of _____ Dillon Gage _____ | $ 655,000.00

Six hundred and fifty five thousand 00/100 Dollars

**PNCBANK**
PNC Bank, N.A.   050

For _____

Laurie Bramlett

4582ıı  0647

4582ıı0647   ıı0065500000ı

14



Deposit

PNC
Fed
COMPASS

Processed via Remote Deposit
Compass Bank >062001186<
4841
FOR DEPOSIT ONLY

↓Do not endorse or write below this line.↓

*>062001186<* 02/26/2016
0000000000000
>1130105472< 02/14/2016
00000000224B4133b

031000053 02/14/2016
0000007469746
062001186 03/01/2016
00001896906186
1130105472 03/01/2016
0000006786D353

15

| | |
|---|---|
| **From:** | VERONICA MALIAN |
| **To:** | accountingmetalsgr@dillongage.com |
| **Date:** | Thursday, March 01, 2018 1:06:00 PM |

I have a Large $ notice to report. This is for notification purposes only.

Account # :4841

Amount $ :655,000.00

Reason :Unauthorized check

Check # :647

Maker :Kenneth Bramlett

Client :Dillon Gage

Bank :PNC Philadelphia

Maker's account # : ████4582

Thank you

Veronica



--
Veronica Malian
Middle Market Banking Group
Relationship Support Specialist
8080 N Central Expressway Suite 1500
Dallas, TX 75206
Ph. 972-705-8968 Fax 9727353518
veronica.malian@bbva.com

"Alone we can do so little, together we can do so much"

For immediate assistance or pay downs on lines of credit please contact
Business Relationship Services at 866-876-4922 or

NTexasBRSclientservices.us@bbva.com 

For Line of Credit Advance requests please contact
ldfccandiadvancespayoffs.us@bbva.com

CB000027

# EXHIBIT X

**KENNETH W BRAMLETT**
**LAURIE W BRAMLETT**
2933 CANTERBURY RD
MOUNTAIN BROOK AL 35223-1203

029977

121

1-29-18

8-71/430

Date

Pay to the order of _Dillon Gage_                        $ 549,000.00

_Five hundred and forty nine thousand 00/100_ Dollars

## PNC BANK

PNC Bank, N.A.   050
Kentucky

For _____

_Laurie Bramlett_                        MP

7025"0121

Processed via Remote Deposit
Compass Bank >062001186<
4841
FOR DEPOSIT ONLY

CB000004



Report ID: V1EX_0101
Business Date: 2018-01-30
Instance name: PROD

Forward Send Item Detail Report
Sending Site: 062001186 - Compass AL
Receiving Site: 824000040 - Wells Fargo Mixed

Page: 98
Date: 2018-01-30
Time: 13:36:38 CST

| Sender Seq# | AuxOnUs | EPC | RTN | On Us Field | Amount | Item Type |
|---|---|---|---|---|---|---|
| 0021773013 | | | 043000711 | 50049121097025/0121 | 549,000.00 | DEBIT |

 **BBVA**                                      MELISSA BELL <mbell@bbva.com>

## Large $
1 message

**TOMIKO MOORE** <tomiko.moore@bbva.com>                              Thu, Mar 8, 2018 at 10:18 AM
To: STACEY JUDD <stacey.judd@bbva.com>, DEBRA H BAILEY --- <debra.bailey@bbva.com>
Cc: AVALYN S HOWARD --- <avalyn.howard@bbva.com>, JAMIE R PATE --- <jamie.pate@bbva.com>, MELISSA A BELL ---
<mbell@bbva.com>, RACHAEL D BEACH --- <rachael.beach@bbva.com>, TRACY L JENNINGS ---
<tracy.jennings@bbva.com>, W QUEEN SMITH DIGGINS --- <queen.smith@bbva.com>

I have a Large $ notice to report. This is for notification purposes only.

Account # : ████4841

Amount $ :549,000.00

Reason :Forged counterfeit  W/B

Check # :11

Maker :Kenneth & Laurie Bramlett

Client :Dillon Gage

Bank :PNC Bank

Maker's account # ████████7025

**BBVA Compass**

Tomiko Moore

**Engineering Operations - Risk & Control - Returns**
**Sr Reconcilement Clerk**
Tel. 205-297-5173 - tomiko.moore@bbva.com
**Brock Center - 701 32nd Street South, Birmingham, AL 35233**
AL-BI-SC-RET

CB000006

3/8/2018          EARNS Items Received - Batch R00700833

| | |
|---|---|
| Maker: | Depositor: |
| kenneth w & laurie w bramlett | dillon gage |
| Payee:          dillon gage | |
| Drawee MICR:    043000711 | First Dep. MICR:    062001186 |
| Drawee Bank:    PNC BANK | Branch:             na |
| Maker Acct #:    ███████7025 | Deposit Date:       Tuesday, March 06, 2018 |
| Check Number:   0121 | Depositor Acct #:   na |
| Check Amount:   $549,000.00 | Trace/Proof:        na |
| Reason:         REFER TO MAKER | Transaction #:      114652 |
| Bank to Notify: 062001186 | Contact:            RETURN ITEM DEPT. |
| Remarks:        *Forged Counterfeit WD* | Contact Phone:      215-749-7483 |

# EXHIBIT Y

 **PNC**

Forged Signature / Endorsement
Unauthorized Signature
Counterfeit Check
Unauthorized Remotely Generated Check

# AFFIDAVIT

*Check the type of claim that is being made:*

☒ Forged/Unauthorized Maker Signature     ☐ Counterfeit Check
☐ Forged/Unauthorized Endorsement     ☐ Unauthorized Remotely Generated Check

State/Commonwealth/District of _Alabama_    County/Parish _Jefferson_

I, _Laurie Bramlett_ , being duly sworn according to law, state that I have examined:

| Check # | Date on Check | Amount | Payee and/or Endorsed by | Maker |
|---|---|---|---|---|
| 121 | 1-29-18 | 549,000.00 | Dillon Gage | Laurie Bramlett |

*(\*Please use a separate Affidavit for each check/item)*

drawn on PNC Bank, and state that the signature of my name or other name was not made by me or authorized or ratified by me and the withdrawal, deposit, transfer or receipt of funds of said item was unauthorized and was made without my knowledge or consent.

I further state that the withdrawal, deposit, transfer or receipt of funds was made by some person other than myself, and that I have in no manner whatsoever received any proceeds or benefit from the payment of the foregoing check or item. I have no knowledge or information concerning the origination, endorsement or negotiation of such check or item except as follows (if none, state "none").

I will, if necessary, voluntarily assist PNC Bank and law enforcement in any investigation and participate as a witness in any civil or criminal actions relating to this matter.

I further state that this affidavit may be furnished to third parties, including other banks in the check collection process and/or the person that created/signed the unauthorized check, as part of its investigation.

I understand that false statements in this affidavit may be punishable under criminal law.

Mailing Address and Phone Number of authorized Signer:

Name _Laurie Bramlett_

Street _2933 Canterbury Road_

City _Mountain Brook_ , State _AL_ Zip Code _35223_

Tel: _(205) 492-2151_

_Laurie Bramlett_
Signature of Authorized Signer

_Laurie Bramlett_
Print name (and Title, if applicable)

SUBSCRIBED AND SWORN before me on
this _14_ day of _March_ , _2018_
Notary Public My Commission expires: _July 07, 2021_

Name of Business (if applicable)

_Shelby Nicole Wargin_

SEAL

*(Notary Seal:)* SHELBY NICOLE WARGIN — NOTARY PUBLIC — ALABAMA STATE AT LARGE

EFORM107283-01

\*Please mail this original & any other supporting documents to:
PNC BANK, N.A.
DRU/WOE K1-KHDQ-05-1
500 W. Jefferson Street
Louisville, KY 40202

**DILLON GAGE 000309**

# EXHIBIT Z



1700 Pacific Avenue
Suite 4650
Dallas, Texas 75201
P: 214.880.9600
F: 214.481.1844
www.HedrickKring.com

April 16, 2018

**VIA E-MAIL**

JLT Specialty Limited
Shahid_Qaiser@JLTGroup.com
Nelson_Macwan@JLTGroup.com

     Re:    *Bramlett packages claim.*

Dear Mr. Qaiser and Mr. Macwan:

     My firm has been retained by Dillon Gage Incorporated of Dallas ("Dillon Gage") in connection with its claim against Insurers at interest, subscribing to Policy No. B0901EE1701590000 (the "Insurers")[1] for ten packages containing gold coins shipped via UPS to Kenneth Bramlett but diverted and stolen by an unknown criminal before reaching their addressee. The claim arises under the Market Reform Contract covering period 12 May 2017 to 12 May 2018.

     I understand from your correspondence with Dillon Gage's broker that the Insurers have taken the position that Dillon Gage's coverage is limited to the endorsement under the Invalid Payments Extension Clause on page 15 of 34 for $12,500 of liability. However, that endorsement as well as the Invalid Payments Exclusion Clause on page 18 of 34 are inapplicable to these losses. The forged checks drawn on the accounts of Kenneth and Laurie Bramlett are neither the "direct" nor "consequential" cause of Dillon Gage's losses. Dillon Gage incurred losses because an unknown criminal or criminals 1) logged into UPS' system and diverted the deliveries from Kenneth Bramlett's residence to a UPS store, and then 2) stole the packages addressed to Kenneth Bramlett from the Alabama UPS location.[2]

     Dillon Gage would have incurred the same loss even had the checks been truly drawn on the Bramletts' joint account, because risk of loss remained with Dillon Gage until the customer took possession. In other words, Dillon Gage was required to ship the product to Kenneth Bramlett, and would have suffered no loss except that an unknown criminal, not Kenneth Bramlett, took the packages. Texas law recognizes an insurer's liability when a covered and excluded perils

---

[1] This revised letter is made at the request of JLT Specialty Limited but without waiver of Dillon Gage's rights against it under Texas law.

[2] Dillon Gage has a copy of Kenneth Bramlett's driver's license. He appears to be a male of Caucasian ancestry. The unknown criminal who stole the 10 packages of Dillon Gage's product appears on videotape at the UPS office to be of African ancestry. Therefore, Dillon Gage can show with a certainty that the addressee of the packages did not obtain them by means of a forged check.

JLT Specialty Limited
April 16, 2018
Page 2

separately and independently cause a loss. *See Guar. Nat. Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990). The unknown criminal's actions in diverting the UPS packages from Kenneth Bramlett's home and then stealing them from the UPS store were separate and independent causes of Dillon Gage's "physical loss" of the ten packages. Dillon Gage has $200,000 of coverage under Section D for each of the ten packages, subject to a $10,000 deductible. Dillon Gage will cooperate with the Insurers to determine the Market Values as per 2nd London Fix on February 12, 2018 and February 22, 2018 plus 2% of the lost product, but requires that the Insurers admit coverage under the Section D Shipping endorsement for the losses.

Please contact me promptly if you would like to discuss this matter further.

Sincerely,

*/s/ Laura M. Fontaine*

Laura M. Fontaine

cc: Alisa Moen (via e-mail)
    Jon Christiansen (via e-mail)

**UW000218**

# EXHIBIT AA



26th April 2018

Mr Shahid Qaiser
JLT Specialty Ltd
St Botolph Building
138 Houndsditch
London
EC3A 7AW
(sent via email only: Shahid_Qaiser@jltgroup.com)

Re:     Insured:      Dillon Gage Incorporated of Dallas (Dillon Gage)
        Policy No.:   B0901EE1701590000 ("Policy")
        Matter:       Theft of Gold Coins
        UCR's:        B0901EF1701590004 & B0901EF1701590007

Dear Mr Qaiser,

We write in response to Hedrick Kring PLLC's letter dated 16th April 2018, regarding the above referenced matter. Underwriters respectfully disagree with the coverage position set forth in said letter.

As you are aware, the events leading to and resulting in the theft of eight gold coin packages included the following:

- The filling out of an online application twice using Kenneth Bramlett's personal information;
- The making of fraudulent/dishonest payments using Kenneth and Laurie Bramlett's cheque/account;
- Altering of the UPS shipping instructions to redirect delivery from the original delivery location; and
- The physical taking/stealing the packages from the UPS facility in Alabama.

Underwriters' position is that the *Invalid Payments Exclusion Clause* on page 18 of the policy applies to exclude coverage for this claim. The exclusion reads in pertinent part as follows:

**SECTION D – Standard General Exclusions**
**Invalid Payments Exclusion Clause**
Notwithstanding anything contained herein to the contrary, this contract excludes any claim in respect of the property insured hereunder, where the loss has been sustained by the Insured consequent upon handling over such Insured property to any third party against payment by:

- Cheque…where such Cheque…shall prove to be false, fraudulent or otherwise invalid or uncollectible for any reason whatsoever.

…

**Ark Syndicate Management Limited**

30 Fenchurch Avenue,
London EC3M 5AD

Telephone    +44 203 023 4020
Fax          +44 203 023 4000
Email        info@arkunderwriting.com
Website      www.arkunderwriting.com

Registered in England and Wales. No. 05887810
Registered Office: 30 Fenchurch Avenue, London, EC3M 5AD

**UW000134**



However, Underwriters recognize that the Policy includes the *Financial Crime – Invalid Payments Extension Clause* on page 15 of the policy, which specifically identifies and sets forth an exception to the Exclusion Clause, as follows:

### SECTION B – Contract Extensions
### Financial Crime – Invalid Payments Extension Clause

Notwithstanding the Invalid Payment Exclusion Clause contained herein, it is understood and agreed that coverage hereunder is extended to cover physical loss of insured interest as a direct result of any fraudulent or dishonest payment(s). Underwriters liability hereunder is limited to USD $12,500 each and every loss and in the aggregate during the policy period and subject to a deductible of USD 1,000 each and every loss or series of losses.

Texas courts interpret insurance policies according to general rules of contract construction. If policy language can be given a definite or certain legal meaning, it is not considered ambiguous and is construed as a matter of law. All parts of the contract must be read together, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative or meaningless and to ascertain the true intent of the parties as expressed in the instrument.

Our understanding of the 16th April 2018 letter, is that Dillon Gage takes the position that neither the exclusion clause nor the extension clause apply here because the forged cheques did not cause or result in the loss. Underwriters disagree though, and believe that in taking this position, Dillon Gage fails to give effect to each provision, therefore rendering the language meaningless. Underwriters disagree with Dillon Gage's argument as regards causation – that the forged cheques drawn on the accounts of Kenneth and Laurie Bramlett are neither the "direct" nor "consequential" cause of Dillon Gage's losses, and that there were other independent and separate causes.

The events involved in the theft of the coins at issue clearly demonstrate a continuing course of conduct, and did not occur in a vacuum. Each of the events, most specifically the fraudulent or dishonest payments, caused and contributed to the ultimate losses. In fact, Dillon Gage originally provided that pursuant to its own policies and procedures, it would not have sent the coins via UPS had it not first confirmed that the fraudulent cheques had posted. The fraudulent payments, in addition to the delivery changes and then the actual, physical taking of the packages, must all be considered together under the circumstances. Just because Dillon Gage was not originally aware that the payments were fraudulent or dishonest does not remove that cause from the course/chain of events which led to the losses or somehow take the fraudulent payments out of the scope of the causation analysis.

Dillon Gage waited many days after receipt of the online applications and the fraudulent cheques before issuing invoices and preparing the coins for transport. Nothing would have been shipped if Dillon Gage had not assured itself of payment first. But for the stolen cheques actually being posted to the account

**Ark Syndicate Management Limited**

30 Fenchurch Avenue,
London EC3M 5AD

| | |
|---|---|
| Telephone | +44 203 023 4020 |
| Fax | +44 203 023 4000 |
| Email | info@arkunderwriting.com |
| Website | www.arkunderwriting.com |

Registered in England and Wales. No. 05887810
Registered Office: 30 Fenchurch Avenue, London, EC3M 5AD

**UW000135**



and/or clearing the bank, no insured property would have been shipped for the thief to subsequently take possession. Therefore the proximate cause of the losses were the fraudulent payments.

The interpretation of the policy put forward in the Hedrick Kring's letter would render the Invalid Payments provisions meaningless, which would clearly not be the intent of Underwriters, and would not be consistent with the law in Texas.

As we have previously stated, we accept that Dillon Gage has limited coverage for these claims under the Financial Crime – Invalid Payments Extension clause. Regretfully the policy can not provide any further indemnity in this instance. Should you have any further information you believe may alter our position, please forward to us for our review.


Yours sincerely,


Philip Christian
Senior Claims Adjuster


**Ark Syndicate Management Limited**

30 Fenchurch Avenue,
London EC3M 5AD

Telephone    +44 203 023 4020
Fax          +44 203 023 4000
Email        info@arkunderwriting.com
Website      www.arkunderwriting.com

Registered in England and Wales. No. 05887810
Registered Office: 30 Fenchurch Avenue, London, EC3M 5AD

**UW000136**

# EXHIBIT BB

Page 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

DILLON GAGE INCORPORATED
OF DALLAS,
        Plaintiff,


V.                                    CIVIL ACTION NO.
                                      3:18-cv-01


CERTAIN UNDERWRITERS AT LLOYD'S
SUBSCRIBING TO POLICY No. EE1701590,
        Defendants.


VIDEOTAPED DEPOSITION
OF
LAURIE BRAMLETT

STIPULATIONS

        IT IS STIPULATED AND AGREED, by and
between the parties, through their respective
counsel, that the deposition of LAURIE
BRAMLETT, may be taken before Dena W. Campbell
at the offices of Cory Watson, 2131 Magnolia
Avenue, Suite 200, Birmingham, Alabama, on the
26 day of February 2019, commencing at 4:39
p.m.

        IT IS FURTHER STIPULATED AND AGREED
that the signature to and the reading of the
deposition by the witness is WAIVED said
deposition to have the same force and effect as



```
                                                          Page 2
 1    if full compliance had been had with all laws

 2    and rules of court relating to taking of

 3    depositions.

 4            IT IS FURTHER STIPULATED AND AGREED

 5    that it shall not be necessary for any

 6    objections to be made by counsel to any

 7    questions, except as to form or leading

 8    questions, and that counsel for the parties may

 9    make objections and assign grounds at the time

10    of the trial, or at the time said deposition is

11    offered in evidence, or prior thereto.

12

13

14

15

16

17

18

19

20

21

22

23
```



Page 32

1     Q.    If you'll look at Exhibit No. 1 for me

2   again, did you fill out an online application

3   with Dillon Gage?

4     A.    No.

5     Q.    Okay.  If you look at the top, the

6   subject says, "New Online Application

7   Submission."  Do you see that?

8     A.    Uh-huh.

9     Q.    Did you fill out that information on

10  the Dillon Gage website or on any type of

11  application through Dillon Gage?

12     A.    No.

13     Q.    Okay.

14     A.    Never heard of Dillon Gage.

15     Q.    So is it your position that somebody

16  used your husband's and/or your identifying

17  information to fill this out?

18     A.    Yes.

19     Q.    Let's look at -- let's look at Exhibit

20  No. 5 again.  It's the two affidavits, correct?

21     A.    Okay.

22     Q.    At the top, it says, on both of them

23  -- have you read through these?



Page 33

1      A.     Have I read these?

2      Q.     Yes.

3      A.     I looked at them when they gave them

4    to me to sign.

5      Q.     So you looked at them -- you read them

6    before you signed them, correct?

7      A.     Yes.  They're just saying that we

8    didn't write these checks.

9      Q.     Okay.  And is that the truth?

10      A.     Yes.

11      Q.     Up at the top, it says, "Check the

12    type of claim that is being made," and what is

13    checked on there?

14      A.     "Forged unauthorized maker signature."

15      Q.     Is that what happened?  That's the

16    truth?

17      A.     Yes.

18      Q.     Okay.  And both of the affidavits read

19    similarly in saying -- down at the bottom, it

20    says that the signature -- hold on.  It says

21    that the check, Check 121 -- let's look at 309

22    first, the first page.  It says Check 121, date

23    of check 1-29-18, in the amount of $549 paid to



Page 34

1    Dillon Gage, and the maker is Laurie Bramlett.

2    Did I read that correctly?

3        A.    549,000.

4        Q.    549,000, excuse me.  Did I read that

5    correctly other than that, with that

6    correction?

7        A.    I think so.

8        Q.    And then it says, "Drawn on PNC Bank."

9    It states that, "The signature of my name or

10   other name was not made by me or authorized or

11   ratified by me, and the withdrawal, deposit,

12   transfer, or receipt of funds of said item was

13   unauthorized and made without my knowledge or

14   consent."  Did I read that correctly?

15       A.    I think so.

16       Q.    Is that true?

17       A.    Yes.

18       Q.    Okay.  And that it says you further

19   state the withdrawal, deposit, transfer,

20   receipt of funds was made by some other person

21   other than myself.  Did I read that correctly?

22       A.    Yes.

23       Q.    And is that true?



Page 35

```
1      A.    Yes.

2      Q.    And that, "I have in no manner

3  whatsoever received any proceeds or benefit

4  from the payment of the foregoing check or

5  item."  Is that true?

6      A.    Yes.

7      Q.    And last sentence, "I have no

8  knowledge or information concerning the

9  origination, endorsement, or negotiation of

10  such check or item except as follows.  If none,

11  state none."  Is that -- did I read that

12  correctly?

13      A.    Yes.

14      Q.    And is that true?

15      A.    Yes.

16      Q.    And was -- these affidavits were made

17  at the request of PNC Bank?

18      A.    Yes.

19      Q.    And you did ultimately get money back

20  into both accounts?

21      A.    Yes.

22      Q.    Right?

23      A.    Yes.
```



Page 36

1      Q.     The $549 went back into one account,

2   and the $655,000 went back into another

3   account; is that right?

4      A.     Yes.

5      Q.     Sitting here today, do you intend to

6   make any changes to either of these

7   affidavits --

8      A.     No.

9      Q.     -- in Exhibit 5?

10     A.     No.

11     Q.     Did you communicate by email with

12  anyone from Dillon Gage ever?

13     A.     No.

14     Q.     And did you authorize anybody to

15  change a delivery location on any packages sent

16  by Dillon Gage?

17     A.     Never ordered anything from Dillon

18  Gage.

19     Q.     Okay.  So is it your position,

20  Mrs. Bramlett, that there was a perpetrator or

21  a criminal that used your identifying

22  information to perpetrate a crime here?

23     A.     Yes.



# EXHIBIT CC

KRISTOPHER VECCHIO - 3.25.19

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DILLON GAGE INCORPORATED       *
DALLAS                         *
                               *
VS.                            *   CAUSE NO. 3:18-CV-01555
                               *
CERTAIN UNDERWRITERS AT        *
LLOYD'S SUBSCRIBING TO         *
POLICY NO. EE1590 AND UPS      *
CAPITAL INSURANCE AGENCY,      *
INC.                           *

*************************************

ORAL AND VIDEOTAPED DEPOSITION OF KRISTOPHER VECCHIO

MARCH 25, 2019

*************************************

ANSWERS AND DEPOSITION OF KRISTOPHER VECCHIO,
produced as a witness at the instance of the Plaintiff,
taken in the above-styled and -numbered cause on the
25th day of March, 2019, at 9:11 a.m., before Susan M.
Foreman, a Certified Shorthand Reporter in and for the

KRISTOPHER VECCHIO - 3.25.19

Page 41

1    Dillon Gage's office; is that correct?

2         A.  If Dillon Gage hasn't prepared any shipments

3    that day, then you're correct, there would be nothing

4    for UPS to pick up from Dillon Gage.

5         Q.  Okay.

6              Has UPS ever had a situation where packages

7    are intercepted?

8         A.  Yes.

9         Q.  And you testified earlier that there have been

10   some issues involving Dillon Gage with -- with signature

11   issues, correct?

12        A.  Correct.

13        Q.  Where a package was delivered without a

14   signature?

15        A.  That's correct.

16        Q.  Okay.  And do you recall those circumstances

17   specifically?

18        A.  I recall some of the circumstances, yes.

19        Q.  And do those involve deliveries to certain

20   locations where signatures weren't required by the

21   consignee?

22        A.  I recall they were shipments that were being

23   delivered to a residence.

24        Q.  Okay.  And, specifically, there -- packages

25   were left without a signature at a residence?

KRISTOPHER VECCHIO - 3.25.19

Page 42

1      A.   That's correct.

2      Q.   So it's true that even in situations where

3  signature is required, it has occurred that packages

4  have been left on a doorstep on occasion, true?

5      A.   The request -- what I testified to earlier was

6  the request for a signature to be obtained was not being

7  relayed to UPS when the shipments were being manifested.

8      Q.   So were there any packages being left at the

9  residence?

10      A.   There were.  They were being left, in part,

11  because the labels did not indicate a signature was

12  required at the time of delivery.  That was one of

13  the --

14      Q.   And Dillon Gage -- I'm sorry.

15      A.   No, please, go ahead.

16      Q.   And the labels are prepared by Dillon Gage,

17  correct?

18      A.   Yes.

19      Q.   So assume with me, Mr. Vecchio, that that

20  situation occurred and the package is left at a

21  residence and the consignee is not home.  Have you ever

22  seen where a package has been intercepted and stolen in

23  that situation?

24      A.   I have seen examples of where a package was

25  left without a signature at a residence and was claimed

ON-THE-RECORD REPORTING
214.956.9950

KRISTOPHER VECCHIO - 3.25.19

Page 43

1    to not be received by the consignee.  However, the term

2    "intercept" refers to a shipper-initiated action.  So I

3    think it's important to clarify that an intercept does

4    not mean that the package went missing or was not

5    delivered successfully.  But if your question is --

6        Q.  Okay.

7        A.  -- have I seen examples of a package being

8    released and the consignee stating that they have not

9    received it, yes, I have seen that.

10       Q.  That was a bad question.  Thank you.

11           So it is a possibility that a package could

12   be released or has been in the past released to the

13   consignee at their residence, and then the package

14   disappears and the consignee does not receive the

15   package.  Is that fair?

16       A.  Yes, ma'am, it is.

17       Q.  Okay.

18           Mr. Vecchio, I'll represent to you that

19   here, regarding the Bramlett packages, we understand

20   that someone was tracking these packages in question

21   carefully.  Do you have any knowledge of that?

22       A.  Can you be specific who was tracking them?

23       Q.  Well, I don't have the name of anybody.  But do

24   you have -- if you don't have any personal knowledge

25   regarding the tracking -- the tracking of these

KRISTOPHER VECCHIO - 3.25.19

Page 44

1   packages, that's okay.  Just let me know.  I'm just

2   asking you if you do have personal knowledge of the

3   tracking of the Bramlett packages.

4       A.  I don't have any personal knowledge of tracking

5   them, no.

6       Q.  Okay.

7           In general, Mr. Vecchio, tracking a package

8   is fairly simple and easy to accomplish if you have the

9   tracking number.  Is that fair?

10      A.  Yes, that's correct.

11      Q.  Okay.

12          And a person tracking a package at issue,

13  the Bramlett packages, for example, if they have the

14  tracking number, they would know where in -- in the

15  shipping process the packages were at any given time.

16  Is that fair?

17      A.  Yes, it is.

18      Q.  Okay.  And, in fact, that is the purpose of

19  track -- of having a tracking number, correct?

20      A.  Yes, ma'am, it is.

21      Q.  Okay.

22          So a person tracking a package would know

23  exactly where the package was going to be delivered,

24  correct?

25      A.  A person tracking the package would have

KRISTOPHER VECCHIO - 3.25.19

Page 45

1    visibility to the delivery address, yes.

2       Q.   And they would also know when the package would

3    be delivered, correct?

4       A.   They would know what the anticipated delivery

5    date is, that's correct.

6       Q.   Okay.  What about time, would they have an idea

7    of approximate time of delivery?

8       A.   If the package is a next-day air service level,

9    it has a guaranteed commit time of 10:30 a.m.

10              A next-day air saver has a guaranteed

11   delivery time of 3:00 p.m. to a commercial address or

12   end of day to a residence.

13              If the package is not next-day air or

14   next-day air saver, there is no time-definitive delivery

15   window that one would be able to look at.

16      Q.   Okay.

17              So, Mr. Vecchio, just to clarify, you were

18   discussing some issues of packages being able to be

19   changed via the My Choice system, the Dillon Gage

20   packages being able to be changed within My Choice

21   system earlier, correct?

22      A.   Correct.

23      Q.   And you looked -- you were shown and -- and

24   looked through several e-mails, several exhibits,

25   earlier showing communications with Dillon Gage

KRISTOPHER VECCHIO - 3.25.19

Page 46

1    regarding some of these issues, correct?

2         A.  That's correct.

3         Q.  And it seems like there was an issue with UPS

4    involving redirection even up until September of 2018;

5    is that -- is that correct?

6         A.  There was an issue where a consignee was able

7    to request a hold for pickup, which was something that

8    we had tried to prohibit.

9         Q.  Okay.

10             And during this time, obviously, by your

11   communications, Dillon Gage was aware that this was

12   occurring and was in contact with you directly at UPS to

13   try to correct the issue, correct?

14        A.  That's correct.

15        Q.  And you were trying to assist them and trying

16   to sort it out and get it corrected to their

17   satisfaction, correct?

18        A.  That's correct.

19        Q.  Okay.

20             MS. SWANSON:  I think those are all the

21   questions I have for you.  Thank you, Mr. Vecchio.  I

22   appreciate your time.

23             THE WITNESS:  You're very welcome.  Thank

24   you.

25             MS. FONTAINE:  Could we take a five-minute

KRISTOPHER VECCHIO - 3.25.19

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DILLON GAGE INCORPORATED          *
DALLAS                            *
                                  *
VS.                               *   CAUSE NO. 3:18-CV-01555
                                  *
CERTAIN UNDERWRITERS AT           *
LLOYD'S SUBSCRIBING TO            *
POLICY NO. EE1590 AND UPS         *
CAPITAL INSURANCE AGENCY,         *
INC.                              *

*************************************

ORAL AND VIDEOTAPED DEPOSITION OF KRISTOPHER VECCHIO

MARCH 25, 2019

*************************************

ANSWERS AND DEPOSITION OF KRISTOPHER VECCHIO,
produced as a witness at the instance of the Plaintiff,
taken in the above-styled and -numbered cause on the
25th day of March, 2019, at 9:11 a.m., before Susan M.
Foreman, a Certified Shorthand Reporter in and for the

KRISTOPHER VECCHIO - 3.25.19

Page 41

1    Dillon Gage's office; is that correct?

2         A.   If Dillon Gage hasn't prepared any shipments

3    that day, then you're correct, there would be nothing

4    for UPS to pick up from Dillon Gage.

5         Q.   Okay.

6              Has UPS ever had a situation where packages

7    are intercepted?

8         A.   Yes.

9         Q.   And you testified earlier that there have been

10   some issues involving Dillon Gage with -- with signature

11   issues, correct?

12        A.   Correct.

13        Q.   Where a package was delivered without a

14   signature?

15        A.   That's correct.

16        Q.   Okay.  And do you recall those circumstances

17   specifically?

18        A.   I recall some of the circumstances, yes.

19        Q.   And do those involve deliveries to certain

20   locations where signatures weren't required by the

21   consignee?

22        A.   I recall they were shipments that were being

23   delivered to a residence.

24        Q.   Okay.  And, specifically, there -- packages

25   were left without a signature at a residence?

KRISTOPHER VECCHIO - 3.25.19

Page 42

1      A.   That's correct.

2      Q.   So it's true that even in situations where

3  signature is required, it has occurred that packages

4  have been left on a doorstep on occasion, true?

5      A.   The request -- what I testified to earlier was

6  the request for a signature to be obtained was not being

7  relayed to UPS when the shipments were being manifested.

8      Q.   So were there any packages being left at the

9  residence?

10     A.   There were.  They were being left, in part,

11 because the labels did not indicate a signature was

12 required at the time of delivery.  That was one of

13 the --

14     Q.   And Dillon Gage -- I'm sorry.

15     A.   No, please, go ahead.

16     Q.   And the labels are prepared by Dillon Gage,

17 correct?

18     A.   Yes.

19     Q.   So assume with me, Mr. Vecchio, that that

20 situation occurred and the package is left at a

21 residence and the consignee is not home.  Have you ever

22 seen where a package has been intercepted and stolen in

23 that situation?

24     A.   I have seen examples of where a package was

25 left without a signature at a residence and was claimed

KRISTOPHER VECCHIO - 3.25.19

Page 43

1   to not be received by the consignee.  However, the term
2   "intercept" refers to a shipper-initiated action.  So I
3   think it's important to clarify that an intercept does
4   not mean that the package went missing or was not
5   delivered successfully.  But if your question is --
6       Q.  Okay.
7       A.  -- have I seen examples of a package being
8   released and the consignee stating that they have not
9   received it, yes, I have seen that.
10      Q.  That was a bad question.  Thank you.
11              So it is a possibility that a package could
12  be released or has been in the past released to the
13  consignee at their residence, and then the package
14  disappears and the consignee does not receive the
15  package.  Is that fair?
16      A.  Yes, ma'am, it is.
17      Q.  Okay.
18              Mr. Vecchio, I'll represent to you that
19  here, regarding the Bramlett packages, we understand
20  that someone was tracking these packages in question
21  carefully.  Do you have any knowledge of that?
22      A.  Can you be specific who was tracking them?
23      Q.  Well, I don't have the name of anybody.  But do
24  you have -- if you don't have any personal knowledge
25  regarding the tracking -- the tracking of these

ON-THE-RECORD REPORTING
214.956.9950

KRISTOPHER VECCHIO - 3.25.19

Page 44

1  packages, that's okay.  Just let me know.  I'm just

2  asking you if you do have personal knowledge of the

3  tracking of the Bramlett packages.

4      A.  I don't have any personal knowledge of tracking

5  them, no.

6      Q.  Okay.

7          In general, Mr. Vecchio, tracking a package

8  is fairly simple and easy to accomplish if you have the

9  tracking number.  Is that fair?

10     A.  Yes, that's correct.

11     Q.  Okay.

12         And a person tracking a package at issue,

13 the Bramlett packages, for example, if they have the

14 tracking number, they would know where in -- in the

15 shipping process the packages were at any given time.

16 Is that fair?

17     A.  Yes, it is.

18     Q.  Okay.  And, in fact, that is the purpose of

19 track -- of having a tracking number, correct?

20     A.  Yes, ma'am, it is.

21     Q.  Okay.

22         So a person tracking a package would know

23 exactly where the package was going to be delivered,

24 correct?

25     A.  A person tracking the package would have

KRISTOPHER VECCHIO - 3.25.19

Page 45

1   visibility to the delivery address, yes.

2        Q.   And they would also know when the package would

3   be delivered, correct?

4        A.   They would know what the anticipated delivery

5   date is, that's correct.

6        Q.   Okay.   What about time, would they have an idea

7   of approximate time of delivery?

8        A.   If the package is a next-day air service level,

9   it has a guaranteed commit time of 10:30 a.m.

10              A next-day air saver has a guaranteed

11   delivery time of 3:00 p.m. to a commercial address or

12   end of day to a residence.

13              If the package is not next-day air or

14   next-day air saver, there is no time-definitive delivery

15   window that one would be able to look at.

16        Q.   Okay.

17              So, Mr. Vecchio, just to clarify, you were

18   discussing some issues of packages being able to be

19   changed via the My Choice system, the Dillon Gage

20   packages being able to be changed within My Choice

21   system earlier, correct?

22        A.   Correct.

23        Q.   And you looked -- you were shown and -- and

24   looked through several e-mails, several exhibits,

25   earlier showing communications with Dillon Gage

KRISTOPHER VECCHIO - 3.25.19

Page 46

1   regarding some of these issues, correct?

2       A.  That's correct.

3       Q.  And it seems like there was an issue with UPS

4   involving redirection even up until September of 2018;

5   is that -- is that correct?

6       A.  There was an issue where a consignee was able

7   to request a hold for pickup, which was something that

8   we had tried to prohibit.

9       Q.  Okay.

10          And during this time, obviously, by your

11  communications, Dillon Gage was aware that this was

12  occurring and was in contact with you directly at UPS to

13  try to correct the issue, correct?

14      A.  That's correct.

15      Q.  And you were trying to assist them and trying

16  to sort it out and get it corrected to their

17  satisfaction, correct?

18      A.  That's correct.

19      Q.  Okay.

20          MS. SWANSON:  I think those are all the

21  questions I have for you.  Thank you, Mr. Vecchio.  I

22  appreciate your time.

23          THE WITNESS:  You're very welcome.  Thank

24  you.

25          MS. FONTAINE:  Could we take a five-minute