UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DILLON GAGE INCORPORATED OF DALLAS, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:18-CV-01555-X |
| CERTAIN UNDERWRITERS AT LLOYD'S, SUBSCRIBING TO POLICY NO. EE1701590, | § § § § § | |
| Defendant. | § § | |

# MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute stemming from fraudulent checks and a gold heist. A criminal used a stolen identity and paid for roughly $1.2 million worth of gold coins from Dillon Gage Incorporated of Dallas (Dillon Gage) with two fraudulent checks. He then altered the UPS delivery instructions and intercepted the packages. Dillon Gage filed an insurance claim, and the insurers (collectively Certain Underwriters at Lloyd's, Subscribing to Policy No. EE1701590; hereinafter "underwriters") determined only minimal coverage existed under an exception to an exclusion for fraudulent payments. Dillon Gage sued the underwriters for breach of contract and violations of Chapters 541 and 542 of the Texas Insurance Code.

Before the Court are cross motions for summary judgment from the underwriters and Dillon Gage on all three claims, based on stipulated facts but

1

diverging views of the law. Unfortunately for Dillon Gage, Texas law provides that concurrent causes of a loss (those that are related and interdependent) where one cause is covered and the other is excluded results in no coverage at all. Here, the two causes are the fraudulent checks and the interception of the packages, and they are related and interdependent—especially given that Dillon Gage only shipped the packages once the fraudulent checks cleared the payor's bank. As a result, there is no coverage due to the fraudulent payments exclusion—except that a nominal exception exists for coverage up to $12,500 thanks to an exception to the exclusion. But Dillon Gage waived any argument for that coverage by not advancing it in response to the underwriter's motion for summary judgment (and insureds have the burden to prove an exception to an exclusion exists).

As a result, the Court **GRANTS** the underwriters' motion for summary judgment [Doc. No. 36], **DENIES** Dillon Gage's motion for summary judgment [Doc. No. 37], and **DISMISSES WITH PREJUDICE** Dillon Gage's breach of contract claim. And because Dillon Gage has not alleged or argued an independent injury, the Court **GRANTS** the underwriters' motion for summary judgment, **DENIES** Dillon Gage's motion for summary judgment, and **DISMISSES WITH PREJUDICE** Dillon Gage's extra-contractual claims (for violations of Chapters 541 and 542 of the Texas Insurance Code). The Court also **DISMISSES AS MOOT** Dillon Gage's unopposed motion for leave to set oral argument [Doc. No. 54].

## I. Factual Background

The wrongdoing in this case seems to be a combination of the works of Auric Goldfinger and Frank Abagnale. Dillon Gage is a wholesale buyer of bullion coins

and precious metals. And because the world is a dangerous place, Dillon Gage purchased an all risk policy from the underwriters to cover risk from May 2017 to May 2018.

In January 2018, Dillon Gage received the first of two orders from whom it believed to be Kenneth Bramlett, an upstanding orthopedic surgeon in Alabama. The individual was neither Kenneth Bramlett nor upstanding. Unbeknownst to Dillon Gage, the criminal pretending to be Kenneth Bramlett had previously placed a hold on Kenneth and Laurie Bramlett's mail, obtained a box of checks, and harvested sufficient information to steal their identity.[1]

The criminal placed an order with Dillon Gage for $549,000 worth of gold coins, and the check ("signed" by Laurie Bramlett) cleared. So, Dillon Gage shipped the order via UPS and emailed the tracking information to the email address provided by the alleged customer. This procedure followed Dillon Gage policy of only shipping an order to a new customer once a check clears.[2]

Shortly after the origin scan, UPS received an instruction to hold the package at a UPS facility instead of delivering it to the designated address.[3] An unknown individual (neither Keith nor Laurie Bramlett) collected the package, some 15 days after initiating the order but only 3 minutes after it arrived at the facility.

---

[1] Laurie Bramlett alerted her bank to the fact that the checks never arrived, but the bank did not stop the checks or take other precautions.

[2] A declaration from the manager of Dillon Gage provides: "When we have a new customer account, it is the policy of Dillon Gage to wait until the funds provided clear the customer's bank account before Dillon Gage will ship the gold."

[3] Dillon Gage contends this violated the business relationship between UPS and Dillon Gage. For example, the high value stream Dillon Gage ships in is supposed to not allow rerouting without Dillon Gage's consent and is supposed to confirm the signatory is the recipient.

Emboldened by his success, the perpetrator placed another order the same day—this time for $655,000 worth of products. That check also cleared, and ten days later, the criminal intercepted the rerouted package.

Three days later, Laurie Bramlett signed an affidavit of fraud with her bank after she called the bank and learned their account was depleted. The net result was Dillon Gage being debited by its bank $1,204,000 for the return of the two fraudulent checks.[4] Dillon Gage filed a claim. The underwriters responded that fraudulent payments are excluded from coverage, but that limited coverage totaling $12,500 applied due to an extension of coverage (or an exception to the exclusion). The underwriters have not made a payment on the claim.

The million-dollar question is whether the policy covers the loss.

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[6] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both

---

[4] Dillon Gage claims the true value of the loss is the value of the coins and that its bank's handling of the debit violated the Uniform Commercial Code deadline to do so.

[5] FED. R. CIV. P. 56(a).

[6] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

4

parties have submitted evidence of contradictory facts."[7] Thus, "the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[8]

But here, both sides moved for summary judgment, and they did so on the legal interpretation of the policy. Under Texas law,[9] the insured has the burden of establishing that coverage is potentially provided by the insurance policy, but the insurer has the burden to prove the applicability of an exclusion (which allows it to deny coverage).[10] If the insurer proves an applicable exclusion, the burden shifts back to the insured to prove an applicable exception to the exclusion.[11] Courts resolve ambiguities in favor of the insured.[12]

### III. Application

The underwriters argue that the policy excludes coverage for the shipping fraud that occurred here, but that an extension or exception to the exclusion reinstates limited coverage. Dillon Gage argues that the proximate cause of the loss was the theft of the packages, not the fraudulent checks, and that full coverage exists.

As an initial matter, the policy covers loss of insured property, which includes shipping coverage for coins and money. But wait, there's more.

---

[7] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).

[8] *Hathaway v. Bazany*, 507 F.3d 312, 219 (5th Cir. 2007) (citations omitted).

[9] The policy's choice of law provision requires the application of Texas law.

[10] *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

[11] *Id.*

[12] *Id.*

5

## A. The Invalid Payments Exclusion Clause

The policy's Invalid Payments Exclusion Clause states:

**SECTION D – Standard General Exclusions**

**Invalid Payments Exclusion Clause**

Notwithstanding anything contained herein to the contrary, this contract excludes any claim in respect of the property insured hereunder, where the loss has been sustained by the Insured *consequent upon* handing over such Insured property to any third party against payment by:

- Cheque . . . where such Cheque . . . shall prove to be false, fraudulent or otherwise invalid or uncollectible for any reason whatsoever. (emphasis added).

What does "consequent upon" mean? The underwriters contend it means either 1) results "occasioned by" the initiating factor (quoting *Union Ins. Co. v. Smith*, 124 U.S. 405, 428 (1888)), or 2) "functionally closely related significant cause or contributing factor" (quoting *Sekel v. Aetna Life Ins. Co.*, 704 F.2d 1335, 1338 (5th Cir. 1983)). As a result, the underwriters argue that Dillon Gage would have never shipped the coins without nonfraudulent payment, so the loss was "consequent upon" the fraudulent payment and therefore excluded. Dillon Gage contends those authorities are irrelevant given this policy language and that "consequent upon" means proximate cause. Because the coins were taken without permission, the loss was not consequent upon the fraudulent checks, Dillon Gage's argument goes. Both sides, to their credit, came closer together in reply briefs.

The Court believes a proper interpretation of "consequent upon" is "a consequence of" or "because of"—in other words: but-for causation. For example, Black's Law Dictionary defines "consequent" as "[o]ccurring as the natural result or

necessary effect of a particular action, event, or situation; following as a natural result, a necessary effect, or a logical conclusion."[13] The underwriters' initially proposed definitions are a bridge too far. The policy phrase of "consequent upon" indicates that the loss flowed from the fraudulent check. Combining too many contributing factors could destroy the but-for causation the exclusion text contemplates. The Fifth Circuit authority the underwriters cite for their preferred definition also was construing the broader underlying term "or contributed to by," which explains the breadth of the Court's ultimate definition of that phrase.[14] And likewise, the Supreme Court case the underwriters cite for using "occasioned by" repeatedly refers to "arising from or caused by," indicating the Supreme Court believed some form of causation is required.[15]

But Dillon Gage's initial interpretation (proximate cause) seems too narrow. Proximate cause entails reasonable foreseeability,[16] and such language limiting causation to be proximate is nowhere in the invalid payment exclusion. For that matter, neither is "sole cause" or "superseding cause." To its credit, Dillon Gage admits that there can be more than one proximate cause.[17] This is all the more true

---

[13] BLACK'S LAW DICTIONARY, CONSEQUENT (11th ed. 2019).

[14] *See Sekel*, 704 F.2d at 1337–38 (5th Cir. 1983) (construing "any loss resulting from any injury caused or contributed to by, or as a consequence of" to mean "a functionally closely related significant cause or contributing factor of which is a noncovered risk").

[15] *Union Ins. Co. v. Smith*, 124 U.S. at 426.

[16] As Keeton and Prosser describe proximate cause,

> As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 264 (5th ed. 1984).

[17] "Even if the Court found that the fraudulent payment is *a* proximate cause of the loss in question, it

for but-for or actual causation, which we are dealing with here.

Here, the fraudulent checks are a but-for cause of the loss. Dillon Gage only shipped the two orders of coins after (and because) the bank checks cleared. And it did so pursuant to a company policy of ensuring checks clear before shipping to new customers.

Dillon Gage contends that, at a minimum, the fraudulent scheme of redirecting the packages were also a cause of the loss. As a result, the argument goes, one must look to the concurrent policy language (or lack thereof) in this particular exclusion. Here, other exclusions expressly exclude coverage of losses caused partly by an excluded risk and partly by a covered risk. There is no such language here that would exclude coverage for loss partly caused by fraudulent payments, so the risk is covered.

The underwriters' response is threefold. First, they contend that Dillon Gage would never have provided tracking numbers to the criminal had the fraudulent checks not cleared the bank first. And Texas law recognizes that concurrent cause with excluded and covered events cannot be separated, and the exclusion is therefore triggered. Here, the underwriters argue, the fraudulent checks led to the redirecting of the packages, so the causes cannot be separated and the exclusion controls. Second, the underwriters argue that Dillon Gage's causation argument hinges on what might have happened if the criminal had not redirected and intercepted the package, and that such arguments are speculative. Third, the underwriters contend that, if Dillon Gage is right, there could be no factual basis for the fraudulent payment exclusion, which renders the clause meaningless in violation of the canons of interpretation.

---

is not *the only* proximate cause of the loss in question."

While this area of the law was once confusing, the Texas Supreme Court clarified it in *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597 (Tex. 2015). There, the Court recognized that the common law treats multiple causes (when one is covered and another is excluded) differently depending on whether they are concurrent or independent.[18] As the Court explained,

> [W]hen "excluded and covered events combine to cause" a loss and "the two causes cannot be separated," concurrent causation exists and "the exclusion is triggered" such that the insurer has no duty to provide the requested coverage. But when a covered event and an excluded event "each independently cause" the loss, "separate and independent causation" exists, "and the insurer must provide coverage despite the exclusion."[19]

But that common-law default can be confirmed or displaced by contract with an anti-concurrent-causation clause. Such clauses tend to state that the insurer will not pay for any "loss or damage caused directly or indirectly by any" excluded cause or event, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."[20] The Fifth Circuit and Texas Supreme Court agree that reading exclusions and anti-concurrent-causation clauses together excludes from coverage losses caused by both a covered risk and an excluded risk.[21]

But it is not true, as Dillon Gage suggests, that "[f]or an insurance policy exclusion to apply if it is *a* cause of the injury, regardless of whether there are other

---

[18] *JAW The Pointe, L.L.C.*, 460 S.W.3d at 608.

[19] *Id.* (quoting *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 204 (Tex. 2004)).

[20] *Id.* at 607.

[21] *Id.* at 608 ("We agree with the Fifth Circuit that, under Texas law, the anti-concurrent-causation clause and the exclusion for losses caused by flood, 'read together, exclude from coverage any damage caused by a combination of wind and water.'" (quoting *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429–31 (5th Cir. 2007))).

9

separate and independent causes, the policy must have, under Texas law, included an anti-concurrent-causation clause with respect to the exclusion. *See, e.g., JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 604 (Tex. 2015)." But *JAW The Pointe* said no such thing. Instead, the Courts look to anti-concurrent-causation clauses and give them meaning. And if there are no such clauses, they exclude coverage for concurrent causes but confirm coverage if there are separate and independent causes.

Here, there is no anti-concurrent-causation clause in the fraudulent payment exclusion. Other exclusions, like the Terrorism Exclusion Clause and the Institute Radioactive Contamination Chemical Biological Bio-Chemical and Electromagnetic Weapons Exclusion Clause (hereinafter, the "Bond villains exclusion clause"),[22] have such language.[23] The fraudulent payments exclusion does not. Under *JAW The Pointe*, we need the bigger boat of common law analysis to determine whether the multiple causes were concurrent and excluded or separate/independent and covered.

The Court concludes the causes of the loss (the fraudulent checks and the intercepting of the packages of coins) are concurrent. The Texas Supreme Court has framed concurrent causes as being when "excluded and covered events combine to cause the plaintiff's injuries."[24] The Court approvingly cited *Burlington Insurance*

---

[22] *Cf.* All 25 James Bond films. The count of 25 does not include non-Eon films such as *Casino Royale* (the 1967 film and not the 2006 version—which could be viewed as an exception to an exclusion that brings the film back in the scope of Bond films) and *Never Say Never Again*).

[23] The terrorism exclusion excludes coverage "directly or indirectly caused by, resulting from or in connection with any act of terrorism, regardless of any other cause or event contributing concurrently or in any other sequence to the loss." And the Bond villains clause excludes coverage "directly or indirectly caused by or contributed to or arising from ionizing radiations[.]"

[24] *Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 204.

10

*Co. v. Mexican American Unity Council*, 905 S.W.2d 359, 363 (Tex. App.—San Antonio 1995, no writ), for the proposition that "because negligent supervision of [a] youth home resident and the assault and battery which caused her injuries were not 'separate and independent,' an assault and battery exclusion applied."[25]

The facts of this case fit Texas Supreme Court's test for concurrent causes. The fraudulent checks, once they cleared, led Dillon Gage to ship the coins. So the fraudulent checks and the interception of the packages "combine[d] to cause the plaintiff's injuries" and were connected and interrelated. The checks established the ability of the criminal to steal the coins from the UPS facility, just as the negligent supervision of the youth who left the youth home in *Burlington* allowed the assault and battery to occur off the premises.[26] In short, the parties could have placed anti-concurrent-causation language in the fraudulent payments exclusion. They did not. As a result, the concurrent causes here result in triggering the exclusion under Texas law and no coverage for the claims, unless an exception applies.

### B. The Invalid Payments Extension Clause

Of course, if an exception to an exclusion applies, it would reinstate coverage to the extent of the exception. That could be the case here, albeit in very limited fashion. The relevant exception provides:

> **SECTION B – Contract Extensions**
> **Financial Crime – Invalid Payments Extension Clause**
>
> Notwithstanding the Invalid Payment Exclusion Clause contained herein, it is understood and agreed that coverage hereunder is extended to cover physical loss of insured interest as a direct result of any

---

[25] *Id.*

[26] *Burlington Ins. Co.*, 905 S.W.2d at 360.

fraudulent or dishonest payment(s). Underwriters liability hereunder is limited to USD $12,500 each and every loss and in the aggregate during the policy period and subject to a deductible of USD 1,000 each and every loss or series of losses.

This is the position the underwriters took before this litigation. But Dillon Gage rejected that coverage and filed suit, and the underwriters never paid.

The burden is on Dillon Gage to prove an exception that allows coverage.[27] Open questions remain regarding the interpretation of "direct result," its application to the facts, and whether the loss is one event, one for each fraudulent check, or a loss for each package. Because Dillon Gage failed to brief this issue in response to the underwriters' motion for summary judgment, it failed to carry its burden to prove an exception to the exclusion provides coverage. As a result, the underwriters are entitled to summary judgment on Dillon Gage's breach of contract claim.

## C. Extra Contractual Claims

But Dillon Gage brought more than a breach of contract claim. It also brought a claim for various violations of Chapter 541 of the Texas Insurance Code and a claim for a Prompt Pay Act violation under Chapter 542 of the Texas Insurance Code. The issue with these extra-contractual claims is that Dillon Gage did not demonstrate policy coverage under its contract claim. As a result, the Texas Insurance Code "does not create insurance coverage or a right to payment of benefits that does not otherwise exist under the policy."[28] As the Texas Supreme Court recently clarified, "[t]he general rule is that an insured cannot recover policy benefits for an insurer's statutory

---

[27] *Guar. Nat'l Ins. Co.*, 143 F.3d at 193. This is especially true when the underwriters moved for summary judgment on all of Dillon Gage's claims, including its breach of contract claim.

[28] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018).

12

violation if the insured does not have a right to those benefits under the policy."[29] The rationale is that "[w]hen an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits."[30]

Here, Dillon Gage has not pled an independent injury but instead has claims predicated on a loss covered by the policy. And Dillon Gage has not asserted in summary judgment briefing that its extracontractual claims should swim even if its contract claim sinks.[31] Accordingly, the underwriters are entitled to summary judgment on Dillon Gage's extra-contractual claims.

## IV. Conclusion

The Court holds that the multiple causes of Dillon Gage's loss were related and interdependent and therefore concurrent under Texas law. As a result, the excluded risk of the fraudulent checks brings the loss outside the scope of the policy's coverage. The Court **GRANTS** the underwriters' motion for summary judgment and **DISMISSES WITH PREJUDICE** Dillon Gage's breach of contract claim. And because Dillon Gage has not alleged or argued an independent injury, the Court **GRANTS** the underwriters' motion for summary judgment and **DISMISSES WITH PREJUDICE** Dillon Gage's claims for violations of Chapters 541 and 542 of the Texas Insurance Code. The Court also **DISMISSES AS MOOT** Dillon Gage's unopposed motion for

---

[29] *Id.*, at 490.

[30] *Id.* at 500.

[31] Dillon Gage's response to this summary judgment argument from the underwriters is that, "[a]s explained above, Dillon Gage's losses are covered under the Insurance Policy and the Invalid Payment Exclusion Clause does not apply. *See supra.* Therefore, Dillon Gage's extracontractual claims are valid and should not be dismissed as a matter of law."

13

leave to set oral argument.[32]

    **IT IS SO ORDERED** this 19th day of February.

                                                  BRANTLEY STARR
                                                UNITED STATES DISTRICT JUDGE

---

[32] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.